# EXHIBIT K

UNCLASSIFIED
~~SECRET/NOFORN~~
UNCLASSIFIED WHEN SEPARATED FROM ATTACHMENT

# Working Group Report
## on
## Detainee Interrogations in the Global War on Terrorism:
## Assessment of Legal, Historical, Policy, and Operational Considerations



April 4, 2003

Classified by: Secretary Rumsfeld
Reason: 1.5(C)
Declassify on: 10 years

Declassify Under the Authority of Executive Order 12958
By Executive Secretary, Office of the Secretary of Defense
William P. Marriott, CAPT, USN
June 21, 2004

UNCLASSIFIED
~~SECRET/NOFORN~~
UNCLASSIFIED WHEN SEPARATED FROM ATTACHMENT

from Illana Davic
DTF 50016-6

UNCLASSIFIED
SECRET//NOFORN

# DETAINEE INTERROGATIONS IN THE GLOBAL WAR ON TERRORISM:
## Assessment of Legal, Historical, Policy and Operational Considerations

## I.    Introduction

(S/NF)· On January 15, 2003, the Secretary of Defense (SECDEF), directed the General Counsel of the Department of Defense (DOD GC) to establish a working group within the Department of Defense (DOD) to assess the legal, policy, and operational issues relating to the interrogations of detainees held by the United States Armed Forces in the war on terrorism. Attachment 1.

(S/NF) On January 16, 2003, the DOD GC asked the General Counsel of the Department of the Air Force to convene this working group, comprised of representatives of the following entities: the Office of the Undersecretary of Defense (Policy), the Defense Intelligence Agency, the General Counsels of the Air Force, Army, and Navy and Counsel to the Commandant of the Marine Corps, the Judge Advocates General of the Air Force, Army, Navy, and Marines, and the Joint Staff Legal Counsel and J5. Attachment 2. The following assessment is the result of the collaborative efforts of those organizations, after consideration of diverse views, and was informed by a Department of Justice opinion.

(S/NF) In preparing this assessment, it was understood that military members, civilian employees of the United States, and contractor employees currently participate in interrogations of detainees. Further, those who participate in the decision processes are comprised of military personnel and civilians.

(U) Our review is limited to the legal and policy considerations applicable to interrogation techniques applied to unlawful combatants in the Global War on Terrorism interrogated outside the sovereign territory of the United States by DOD personnel in DOD interrogation facilities. Interrogations can be broadly divided into two categories, strategic and tactical. This document addresses only strategic interrogations that are those conducted: (i) at a fixed location created for that purpose; (ii) by a task force or higher level component; and (iii) other than in direct and immediate support of on-going military operations. All tactical interrogations, including battlefield interrogations, remain governed by existing doctrine and procedures and are not directly affected by this review.

(U) In considering interrogation techniques for possible application to unlawful combatants in the "strategic" category, it became apparent that those techniques could be divided into three types: (i) routine (those that have been ordinarily used by interrogators for routine interrogations), (ii) techniques comparable to the first type but not formally recognized, and (iii) more aggressive counter-resistance techniques than would be used in routine interrogations. The third type would only be appropriate when presented with a resistant detainee who there is good reason to believe possesses critical intelligence.



SECRET//NOFORN
UNCLASSIFIED

or threats thereof. The Department of Justice has determined that this Convention applies only to civilians but does not apply to unlawful combatants.[72]

### 4. International Criminal Court

U
(S/NF) The Rome Statute of the International Criminal Court (ICC),[73] which the U. S. has made clear it opposes and to which it has no intention of becoming a party, contains provisions prohibiting the infliction of severe physical or mental pain or suffering (including for such purposes as obtaining information). These violations are considered by the signatories to be war crimes of torture and of inhuman treatment (Article 8) and crimes against humanity (Article 7). The affected persons must be protected under one or more of the Geneva Conventions in order for the prohibition to be applicable. Other governments could take a position contrary to the U.S. position on this point. For those State Parties to the ICC that take the position that the ICC grants universal jurisdiction to detain individuals suspected of committing prohibited acts, if these countries obtain control over U.S. personnel, they may view it as within their jurisdiction to surrender such personnel to the ICC. In an effort to preclude this possibility, the United States is currently negotiating "Article 98" agreements with as many countries as possible to provide for protection of U.S. personnel from surrender to the ICC.[74]

U
(S/NF) States with whom the United States has not concluded Article 98 agreements, and that perceive certain interrogation techniques to constitute torture or inhuman treatment, may attempt to use the Rome Statute to prosecute individuals found in their territory responsible for such interrogations.[75] In such cases, the U.S. Government will reject as illegitimate any attempt by the ICC, or a state on its behalf, to assert the jurisdiction of the Rome Statute over U.S. nationals without the prior express consent of the United States.

## V. Techniques

(U) The purpose of all interviews and interrogations is to get the most information from a detainee with the least intrusive method, always applied in a humane and lawful manner with sufficient oversight by trained investigators or interrogators.

---

[72] (U) Other nations, which, unlike the United States, have accepted Article 75, may argue that since the Taliban and al-Qaida detainees are not entitled to POW status under the Geneva Conventions, Article 75 should be applicable as customary international law, notwithstanding their status as unlawful combatants.

[73] (U) Rome Statute of the International Criminal Court, July 17, 1998, U.N. Doc. A/CONF. 183/9 (1998).

[74] (U) Parties to the Rome Statute are obligated to surrender individuals at the request of the ICC for prosecution, unless such surrender would be inconsistent with the requested state's obligations "under an international agreement pursuant to which the consent of the sending state is required to surrender a person of that state to the ICC." (Rome Statute, Article 98 (2)). While the U.S. is not a party to the Rome Statute, Article 98 agreements would provide an exception to an ICC party's general obligation to surrender persons.

[75] (U) Article 25(3) of the Rome Statute provides individual criminal responsibility for a person who, *inter alia*, "orders, solicits, or induces" or otherwise facilitates through aiding, abetting, or assisting in the commission of a crime.



SUNCLASSIFIEDORN

Operating instructions must be developed based on command policies to insure uniform, careful, and safe application of any interrogations of detainees.

(S/NF) Interrogations must always be planned, deliberate actions that take into account numerous, often interlocking factors such as a detainee's current and past performance in both detention and interrogation, a detainee's emotional and physical strengths and weaknesses, an assessment of possible approaches that may work on a certain detainee in an effort to gain the trust of the detainee, strengths and weaknesses of interrogators, and augmentation by other personnel for a certain detainee based on other factors.

(S/NF) Interrogation approaches are designed to manipulate the detainee's emotions and weaknesses to gain his willing cooperation. Interrogation operations are never conducted in a vacuum; they are conducted in close cooperation with the units detaining the individuals. The policies established by the detaining units that pertain to searching, silencing, and segregating also play a role in the interrogation of a detainee. Detainee interrogation involves developing a plan tailored to an individual and approved by senior interrogators. Strict adherence to policies/standard operating procedures governing the administration of interrogation techniques and oversight is essential.

(S/NF) Listed below are interrogation techniques all believed to be effective but with varying degrees of utility. Techniques 1-19, 22-26 and 30, applied singly, are purely verbal and/or involve no physical contact that could produce pain or harm and no threat of pain or harm. It is important that interrogators be provided reasonable latitude to vary techniques depending on the detainee's culture, strengths, weaknesses, environment, extent of training in resistance techniques as well as the urgency of obtaining information that the detainee is known to have. Each of the techniques requested or suggested for possible use for detainees by USSOUTHCOM and USCENTCOM is included. Some descriptions include certain limiting parameters; these have been judged appropriate by senior interrogators as to effectiveness.

(S/NF) *While techniques are considered individually within this analysis, it must be understood that in practice, techniques are usually used in combination; the cumulative effect of all techniques to be employed must be considered before any decisions are made regarding approval for particular situations.* The title of a particular technique is not always fully descriptive of a particular technique. With respect to the employment of any techniques involving physical contact, stress or that could produce physical pain or harm, a detailed explanation of that technique must be provided to the decision authority prior to any decision.

Note: Techniques 1-17 are further explained in Field Manual 34-52.

1. (S/NF) Direct: Asking straightforward questions.

SHUNCLASSIFIEDRN

2. (S/NF) Incentive/Removal of Incentive: Providing a reward or removing a privilege, above and beyond those that are required by the Geneva Convention, from detainees, (Privileges above and beyond POW-required privileges).

3. (S/NF) Emotional Love: Playing on the love a detainee has for an individual or group.

4. (S/NF) Emotional Hate: Playing on the hatred a detainee has for an individual or group.

5. (S/NF) Fear Up Harsh: Significantly increasing the fear level in a detainee.

6. (S/NF) Fear Up Mild: Moderately increasing the fear level in a detainee.

7. (S/NF) Reduced Fear: Reducing the fear level in a detainee.

8. (S/NF) Pride and Ego Up: Boosting the ego of a detainee.

9. (S/NF) Pride and Ego Down: Attacking or insulting the ego of a detainee, not beyond the limits that would apply to a POW.

10. (S/NF) Futility: Invoking the feeling of futility of a detainee.

11. (S/NF) We Know All: Convincing the detainee that the interrogator knows the answer to questions he asks the detainee.

12. (S/NF) Establish Your Identity: Convincing the detainee that the interrogator has mistaken the detainee for someone else.

13. (S/NF) Repetition Approach: Continuously repeating the same question to the detainee within interrogation periods of normal duration.

14. (S/NF) File and Dossier: Convincing detainee that the interrogator has a damning and inaccurate file, which must be fixed.

15. (S/NF) Mutt and Jeff: A team consisting of a friendly and harsh interrogator. The harsh interrogator might employ the Pride and Ego Down technique.

16. (S/NF) Rapid Fire: Questioning in rapid succession without allowing detainee to answer.

17. (S/NF) Silence: Staring at the detainee to encourage discomfort.

18. (S/NF) Change of Scenery Up: Removing the detainee from the standard interrogation setting (generally to a location more pleasant, but no worse).

SHUNCLASSIFIEDRN
Final Report Dated April 4, 2003

SE~~CRET~~ UNCLASSIFIED ~~NOFORN~~

19. (S/NF) **Change of Scenery Down:** Removing the detainee from the standard interrogation setting and placing him in a setting that may be less comfortable; would not constitute a substantial change in environmental quality.

20. (S/NF) **Hooding:** This technique is questioning the detainee with a blindfold in place. For interrogation purposes, the blindfold is not on other than during interrogation.

21. (S/NF) **Mild Physical Contact:** Lightly touching a detainee or lightly poking the detainee in a completely non-injurious manner. This also includes softly grabbing of shoulders to get the detainee's attention or to comfort the detainee.

22. (S/NF) **Dietary Manipulation:** Changing the diet of a detainee; no intended deprivation of food or water; no adverse medical or cultural effect and without intent to deprive subject of food or water, e.g., hot rations to MREs.

23. (S/NF) **Environmental Manipulation:** Altering the environment to create moderate discomfort (e.g., adjusting temperature or introducing an unpleasant smell). Conditions would not be such that they would injure the detainee. Detainee would be accompanied by interrogator at all times.

24. (S/NF) **Sleep Adjustment:** Adjusting the sleeping times of the detainee (e.g., reversing sleep cycles from night to day.) This technique is NOT sleep deprivation.

25. (S/NF) **False Flag:** Convincing the detainee that individuals from a country other than the United States are interrogating him.

26. (S/NF) **Threat of Transfer:** Threatening to transfer the subject to a 3rd country that subject is likely to fear would subject him to torture or death. (The threat would not be acted upon nor would the threat include any information beyond the naming of the receiving country.)

(S/NF) The following list includes additional techniques that are considered effective by interrogators, some of which have been requested by USCENTCOM and USSOUTHCOM. They are more aggressive counter-resistance techniques that may be appropriate for detainees who are extremely resistant to the above techniques, and who the interrogators strongly believe have vital information. All of the following techniques indicate the need for technique-specialized training and written procedures to insure the safety of all persons, along with appropriate, specified levels of approval and notification for each technique.

27. (S/NF) **Isolation:** Isolating the detainee from other detainees while still complying with basic standards of treatment.

28. (S/NF) **Use of Prolonged Interrogations:** The continued use of a series of approaches that extend over a long period of time (e.g., 20 hours per day per interrogation).



SE~~CRET~~ UNCLASSIFIED ~~NOFORN~~
Final Report Dated April 4, 2003

SHUNCLASSIFIEDRN
UNCLASSIFIED

29. (S/NF) **Forced Grooming:** Forcing a detainee to shave hair or beard. (Force applied with intention to avoid injury. Would not use force that would cause serious injury.)

30. (S/NF) **Prolonged Standing:** Lengthy standing in a "normal" position (non-stress). This has been successful, but should never make the detainee exhausted to the point of weakness or collapse. Not enforced by physical restraints. Not to exceed four hours in a 24-hour period.

31. (S/NF) **Sleep Deprivation:** Keeping the detainee awake for an extended period of time. (Allowing individual to rest briefly and then awakening him, repeatedly.) Not to exceed 4 days in succession.

32. (S/NF) **Physical Training:** Requiring detainees to exercise (perform ordinary physical exercises actions) (e.g., running, jumping jacks); not to exceed 15 minutes in a two-hour period; not more than two cycles, per 24-hour periods) Assists in generating compliance and fatiguing the detainees. No enforced compliance.

33. (S/NF) **Face slap/ Stomach slap:** A quick glancing slap to the fleshy part of the cheek or stomach. These techniques are used strictly as shock measures and do not cause pain or injury. They are only effective if used once or twice together. After the second time on a detainee, it will lose the shock effect. Limited to two slaps per application; no more than two applications per interrogation.

34. (S/NF) **Removal of Clothing:** Potential removal of all clothing; removal to be done by military police if not agreed to by the subject. Creating a feeling of helplessness and dependence. This technique must be monitored to ensure the environmental conditions are such that this technique does not injure the detainee.

35. (S/NF) **Increasing Anxiety by Use of Aversions:** Introducing factors that of themselves create anxiety but do not create terror or mental trauma (e.g., simple presence of dog without directly threatening action). This technique requires the commander to develop specific and detailed safeguards to insure detainee's safety.

## VI.  Evaluation of Useful Techniques

(S/NF) The working group considered each of the techniques enumerated in Section V, *supra*, in light of the legal, historical, policy and operational considerations discussed in this paper. In the course of that examination it became apparent that any decision whether to authorize a technique is essentially a risk benefit analysis that generally takes into account the expected utility of the technique, the likelihood that any technique will be in violation of domestic or international law, and various policy considerations. Generally, the legal analysis that was applied is that understood to comport with the views of the Department of Justice. Although the United States, as a practical matter, may be the arbiter of international law in deciding its application to our national activities, the views of other nations are relevant in considering their reactions,



SHUNCLASSIFIEDRN
Final Report Dated April 4, 2003

65

UNCLASSIFIED//NOFORN

potential effects on our captured personnel in future conflicts, and possible liability to prosecution in other countries and international forums for interrogators, supervisors and commanders involved in interrogation processes and decisions.

(S/NF) The Conclusions section of this analysis, *infra*, summarizes salient conclusions that were applied to our analysis of individual techniques. As it suggests, the lawfulness and the effectiveness of individual techniques will, in practice, depend on the specific facts. The lawfulness will depend in significant part on procedural protections that demonstrate a legitimate purpose and that there was no *intent* to inflict significant mental or physical pain – and, in fact, avoid that. Because of this, the assessment of each technique presumed that the safeguards and procedures described in the "DOD-Specific Policy Considerations" section of this paper would be in place. The importance of this is underscored by the fact that, in practice, techniques are usually applied in combination, and as the legal analysis of this paper indicates, the significance and effect on an individual detainee of the specific combination of techniques employed, and their manner of application will determine the lawfulness of any particular interrogation.

(S/NF) In addition, the lawfulness of the application of any particular technique, or combination of techniques, may depend on the practical necessity for imposition of the more exceptional techniques. As the analysis explains, legal justification for action that could otherwise be unlawful (e.g., relying upon national necessity and self-defense) depends in large part on whether the specific circumstances would justify the imposition of more aggressive techniques. Interrogation of an individual known to have facts essential to prevent an immediate threat of catastrophic harm to large populations may support use of "exceptional" techniques, particularly when milder techniques have been unavailing. But this is a determination that will always be case-specific. Consequently, use of each technique should be a decision level appropriate to the gravity of the particular case (both for the nation and for the detainee).

(S/NF) The chart at Attachment 3 reflects the result of the risk/ benefit assessment for each technique considered, "scored" for each technique, relevant considerations and given an overall recommendation. In addition, it notes specific techniques that, based on this evaluation, should be considered "exceptional techniques" (marked with an "E") subject to particular limitations described in the "DOD-Specific Policy Considerations" section (generally, not routinely available to interrogators, use limited to specifically designated locations and specifically trained interrogators, special safeguards, and appropriately senior employment decision levels specified). For each "exceptional" technique, a recommendation for employment decision level is indicated as well.

UNCLASSIFIED
Final Report Dated April 4, 2003

66

SECRET//NOFORN
UNCLASSIFIED

## VII. Conclusions Relevant to Interrogation of Unlawful Combatants Under DOD Control Outside the United States

U
(S/NF) As a result of the foregoing analysis of legal, policy, historical, and operational considerations, the following general conclusions can be drawn relevant to interrogation of unlawful combatants captured in the war on terrorism under DOD control outside the United States:

U
(S/NF) Under the Third Geneva Convention, U.S. forces are required to treat captured personnel as POWs until an official determination is made as to their status. Once a determination has been made that captured personnel are unlawful combatants, as is currently the case with captured Taliban and Al Qaida operatives, they do not have a right to the protections of the Third Geneva Convention.

(U) Customary international law does not provide legally-enforceable restrictions on the interrogation of unlawful combatants under DOD control outside the United States.

(U) The United States Constitution does not protect those individuals who are not United States citizens and who are outside the sovereign territory of the United States.

U
(S/NF) Under the Torture Convention, no person may be subjected to torture. Torture is defined as an act specifically *intended* to inflict severe physical or mental pain or suffering and that mental pain or suffering refers to *prolonged* mental harm caused by or resulting from (1) the *intentional* infliction or *threatened infliction of severe physical pain or suffering*; (2) the administration or application, or threatened application, of mind altering substances or other procedures *calculated* to disrupt profoundly the senses or personality; (3) the threat of imminent death; or (4) the threat that another person will *imminently* be subjected to death, severe physical pain or suffering, or the administration or application, or threatened application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality.

U
(S/NF) Under the Torture Convention, no person may be subjected to cruel, inhuman or degrading treatment. The United States has defined its obligations under the Torture Convention as conduct prohibited by the 5th, 8th, and 14th Amendments to the Constitution of the United States. These terms, as defined by U.S. courts, could be understood to mean: to inflict pain or harm without a legitimate purpose; to inflict pain or injury for malicious or sadistic reasons; to deny the minimal civilized measures of life's necessities and such denial reflects a deliberate indifference to health and safety; and to apply force and cause injury so severe and so disproportionate to the legitimate government interest being served that it amounts to a brutal and inhumane abuse of official power literally shocking the conscience.

(U) For actions outside the United States and the special maritime and territorial jurisdiction of the United States, 18 U.S.C. § 2340 applies. For actions occurring within the United States and the special maritime and territorial jurisdiction of the United States, various Federal statutes would apply.

UNCLASSIFIED

Final Report Dated April 4, 2003

SECRET/NOFORN

(S/NF) The President has directed, pursuant to his Military Order dated November 13, 2001, that the U.S. Armed Forces treat detainees humanely and that the detainees be afforded adequate food, drinking water, shelter, clothing and medical treatment.

(S/NF) Pursuant to the Confidential Presidential Determination, dated February 7, 2002, the U.S Armed Forces are to treat detainees in a manner consistent with the *principles* of Geneva, to the extent *appropriate* and consistent with *military necessity*.

(U) Under Article 10 of the Torture Convention, the United States is obligated to ensure that law enforcement and military personnel involved in interrogations are educated and informed regarding the prohibition against torture, and under Article 11, systematic reviews of interrogation rules, methods, and practices are also required.

(U) Members of the U.S. Armed Forces are, at all times and all places, subject to prosecution under the UCMJ for, among other offenses, acts which constitute assault, assault consummated by a battery, assault with the intent to inflict grievous bodily harm, manslaughter, unpremeditated murder, and maltreatment of those subject to their orders. Under certain circumstances, civilians accompanying the Armed Forces may be subject to the UCMJ.

(U) Civilian employees and employees of DOD contractors may be subject to prosecution under the Federal Criminal Code for, among other offenses, acts which constitute assault (in various degrees), maiming, manslaughter, and murder.

(S/NF) Defenses relating to Commander-in-Chief authority, necessity and self-defense or defense of others may be available to individuals whose actions would otherwise constitute these crimes, and the extent of availability of those defenses will be fact-specific. Certain relevant offenses require specific intent to inflict particular degrees of harm or pain, which could be refuted by evidence to the contrary (e.g., procedural safeguards). Where the Commander-in-Chief authority is being relied upon, a Presidential written directive would serve to memorialize this authority.

(S/NF) The lawfulness and appropriateness of the use of many of the interrogation techniques we examined can only be determined by reference to specific details of their application, such as appropriateness and safety for the particular detainee, adequacy of supervision, specifics of the application including their duration, intervals between applications, combination with other techniques, and safeguards to avoid harm (including termination criteria and the presence or availability of qualified medical personnel.) (We have recommended appropriate guidance and protections.)

(S/NF) Other nations, including major partner nations, may consider use of techniques more aggressive than those appropriate for POWs violative of international law or their own domestic law, potentially making U.S. personnel involved in the use of such techniques subject to prosecution for perceived human rights violations in other



SECRET/NOFORN

SECRET//NOFORN
UNCLASSIFIED

nations or to being surrendered to international fora, such as the ICC; this has the potential to impact future operations and overseas travel of such personnel.

(S/NF) Some nations may assert that the U.S. use of techniques more aggressive than those appropriate for POWs justifies similar treatment for captured U.S. personnel.

(S/NF) Should information regarding the use of more aggressive interrogation techniques than have been used traditionally by U.S. forces become public, it is likely to be exaggerated or distorted in the U.S. and international media accounts, and may produce an adverse effect on support for the war on terrorism.

(S/NF) The more aggressive the interrogation technique used, the greater the likelihood that it will affect adversely the admissibility of any acquired statements or confessions in prosecutions against the person interrogated, including in military commissions (to a lesser extent than in other U.S. courts).

(S/NF) Carefully drawn procedures intended to prevent unlawful levels of pain or harm not only serve to avoid unlawful results but should provide evidence helpful to demonstrate that the specific intent required for certain offenses did not exist.

(S/NF) General use of exceptional techniques (generally, having substantially greater risk than those currently, routinely used by U.S. Armed Forces interrogators), even though lawful, may create uncertainty among interrogators regarding the appropriate limits of interrogations. They should therefore be employed with careful procedures and only when fully justified.

(S/NF) Participation by U.S. military personnel in interrogations which use techniques that are more aggressive than those appropriate for POWs would constitute a significant departure from traditional U.S. military norms and could have an adverse impact on the cultural self-image of U.S. military forces.[76]

(S/NF) The use of exceptional interrogation techniques should be limited to specified strategic interrogation facilities; when there is a good basis to believe that the detainee possesses critical intelligence; when the detainee is medically and operationally evaluated as suitable (considering all techniques in combination); when interrogators are specifically trained for the technique(s); a specific interrogation plan (including reasonable safeguards, limits on duration, intervals between applications, termination criteria and the presence or availability of qualified medical personnel); when there is appropriate supervision; and, after obtaining appropriate specified senior approval level for use with any specific detainee (after considering the foregoing and receiving legal advice).

---

[76] Those techniques considered in this review that raise this concern are relatively few in number and generally indicated by yellow or red (or green with a significant footnote) under major partner views in Attachment 3.

SECRET//NOFORN
UNCLASSIFIED

69

SE~~CRET/NOFORN~~ UNCLASSIFIED

## VIII. Recommendations

(U) We recommend:

(S/NF) 1. The working group recommends that techniques 1-26 on the attached chart be approved for use with unlawful combatants outside the United States, subject to the general limitations set forth in this Legal and Policy Analysis; and that techniques 27-35 be approved for use with unlawful combatants outside the United States subject to the general limitations as well as the specific limitations regarding "exceptional" techniques as follows:  conducted at strategic interrogation facilities; where there is a good basis to believe that the detainee possesses critical intelligence; the detainee is medically and operationally evaluated as suitable (considering all techniques to be used in combination); interrogators are specifically trained for the technique(s); a specific interrogation plan (including reasonable safeguards, limits on duration, intervals between applications, termination criteria and the presence or availability of qualified medical personnel) is developed; appropriate supervision is provided; and, appropriate specified senior level approval is given for use with any specific detainee (after considering the foregoing and receiving legal advice).

(S/NF) 2. SECDEF approve the strategic interrogation facilities that are authorized to use the "exceptional techniques" (such facilities at this time include Guantanamo, Cuba; additional strategic interrogation facilities will be approved on a case-by-case basis).

(S/NF) 3. As the Commander-in-Chief authority is vested in the President, we recommend that any exercise of that authority by DOD personnel be confirmed in writing through Presidential directive or other document.

(S/NF) 4. That DOD policy directives and implementing guidance be amended as necessary to reflect the determinations in paragraph one and subsequent determinations concerning additional possible techniques.

(S/NF) 5. That commanders and supervisors, and their legal advisers, involved with the decisions related to employment of "exceptional techniques" receive specialized training regarding the legal and policy considerations relevant to interrogations that make use of such techniques.

(S/NF) 6. That OASD (PA) prepare a press plan to anticipate and address potential public inquiries and misunderstandings regarding appropriate interrogation techniques.

(S/NF) 7. That a procedure be established for requesting approval of additional interrogation techniques similar to that for requesting "supplementals" for ROEs; the process should require the requestor to describe the technique in detail, justify its utility, describe the potential effects on subjects, known hazards and proposed safeguards, provide a legal analysis, and recommend an appropriate decision level regarding use on specific subjects. This procedure should/ensure that SECDEF is the approval authority for the addition of any technique that could be considered equivalent in degree to any of the "exceptional techniques" addressed in this report (in the chart numbers 27-35, labeled with an "E"), and that he establish the specific decision level required for application of such techniques.

SECRET/NOFORN · UNCLASSIFIED

(S/NF) 8. DOD establish specific understandings with other agencies using DOD detailed interrogators regarding the permissible scope of the DOD interrogator's activities.

Classified by: Secretary Rumsfeld
Reason: 1.5(C)
Declassify on: 10 years

UNCLASSIFIED

War on Terrorism
Detainee Interrogation Working Group
Summary of Analysis and Recommendations
Pertaining to Unlawful Combatants Outside of the U.S.[1]

| Proposed Interrogation Techniques[2] (see attached description/limitations) | Utility<br>Contribution to Intelligence Collection (Useful) | Law IAW U.S. Interpretation | | |
|---|---|---|---|---|
| | | Torture Convention [Torture] | Torture Convention [Cruel, Inhuman Degrading] | U.S. Domestic Law |
| 1. Direct | High | ◍ | ◍ | ◍ |
| 2. Incentive or Removal | High | ◍ | ◍ | ◍ |
| 3. Emotional Love | High | ◍ | ◍ | ◍ |
| 4. Emotional Hate | High | ◍ | ◍ | ◍ |
| 5. Fear Up Harsh | High | ◍ | ◍ | ◍ |
| 6. Fear Up Mild | High | ◍ | ◍ | ◍ |
| 7. Reduced Fear | High | ◍ | ◍ | ◍ |
| 8. Pride and ego up | High | ◍ | ◍ | ◍ |
| 9. Pride and ego down | High | ◍ | ◍ | ◍ |
| 10. Futility | High | ◍ | ◍ | ◍ |
| 11. We Know All | High | ◍ | ◍ | ◍ |
| 12. Establish Your Identity | High | ◍ | ◍ | ◍ |

Red ●
Yellow ○
Green ○

Note: Green denotes no significant constraint on use raised by the respective area of consideration listed at top of each column, assuming adequate procedural safeguards.
Yellow indicates area of consideration does not preclude use but there are problematic aspects that cannot be eliminated by procedural safeguards (see footnote).
Red indicates major issue in area of consideration that cannot be eliminated.

UNCLASSIFIED

UNCLASSIFIED

War on Terrorism
Detainee Interrogation Working Group
Summary of Analysis and Recommendations
Pertaining to Unlawful Combatants Outside of the U.S.[1]

1B
of 11

Legend:
- Red — ●
- Yellow — ○
- Green — ▨

| Proposed Interrogation Techniques 2 (see attached description/limitations) | Policy | | | | | | | Recommendation |
|---|---|---|---|---|---|---|---|---|
| | Consistency with Historical U.S. Forces Interrogation Role | Consistency with Prior U.S. Public Statements | Consistency with Major Partner Nation Views | Effect on Captured U.S. Forces | Potential Adverse Effect for Participants/Supervisors/COC | Potential Effect on Detainee Prosecutions | Other | Re Unlawful Combatants |
| 1. Direct | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 2. Incentive or Removal | Green | Green | Yellow [3] | Green | Green | Green [4] | Yellow | Green |
| 3. Emotional Love | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 4. Emotional Hate | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 5. Fear Up Harsh | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 6. Fear Up Mild | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 7. Reduced Fear | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 8. Pride and ego up | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 9. Pride and ego down | Green | Green | Yellow [5] | Green | Green | Green | Yellow | Green |
| 10. Futility | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 11. We Know All | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 12. Establish Your Identity | Green | Green | Green | Green | Green | Green | Yellow | Green |

Note: Green denotes no significant constraint on use raised by the respective area of consideration listed at top of each column, assuming adequate procedural safeguards.
Yellow indicates area of consideration does not preclude use but there are problematic aspects that cannot be eliminated by procedural safeguards (see footnote).
Red indicates major issue in area of consideration that cannot be eliminated.

UNCLASSIFIED

UNCLASSIFIED

● Red
○ Yellow
○ Green

| Proposed Interrogation Techniques 2 (see attached description/limitations) | Utility Contribution to Intelligence Collection (Useful) | Law IAW U.S. Interpretation | | |
|---|---|---|---|---|
| | | Torture Convention [Torture] | Torture Convention [Cruel, Inhuman Degrading] | U.S. Domestic Law |
| 13. Repetition Approach | Low | ◍ | ◍ | ◍ |
| 14. File and Dossier | High | ◍ | ◍ | ◍ |
| 15. Mutt and Jeff | High | ◍ | ◍ | ◍ |
| 16. Rapid Fire | High | ◍ | ◍ | ◍ |
| 17. Silence | Medium | ◍ | ◍ | ◍ |
| 18. Change of Scenery Up | High | ◍ | ◍ | ◍ |
| 19. Change of Scenery Down | High | ◍ | ◍ | ◍ |
| 20. Hooding | High | ◍ | ◍ | ◍ |
| 21. Mild Physical Contact | High | ◍ | ◍ | ◍ |
| 22. Dietary Manipulation | High | | ◍ | ◍ |
| 23. Environmental manipulation | High | ◍ | ◍ | ◍ |
| 24. Sleep Adjustment | High | ◍ | ◍ | ◍ |
| 25. False Flag | High | ◍ | ◍ | ◍ |

Note: Green denotes no significant constraint on use raised by the respective area of consideration listed at top of each column, assuming adequate procedural safeguards.
Yellow indicates area of consideration does not preclude use but there are problematic aspects that cannot be eliminated by procedural safeguards (see footnote).
Red indicates major issue in area of consideration that cannot be eliminated.

UNCLASSIFIED

UNCLASSIFIED

**Legend:** ● Red  ○ Yellow  ▨ Green

| Proposed Interrogation Techniques [2] (see attached description/limitations) | Policy | | | | | | | Recommendation |
|---|---|---|---|---|---|---|---|---|
| | Consistency with Historical U.S. Forces Interrogation Role | Consistency with Prior U.S. Public Statements | Consistency with Major Partner Nation Views | Effect on Captured U.S. Forces | Potential Adverse Effect for Participants/Supervisors/COC | Potential Effect on Detainee Prosecutions | Other | Re Unlawful Combatants |
| 13. Repetition Approach | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 14. File and Dossier | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 15. Mutt and Jeff | Green | Green | Yellow [6] | Green | Green | Green | Yellow | Green |
| 16. Rapid Fire | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 17. Silence | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 18. Change of Scenery Up | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 19. Change of Scenery Down | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 20. Hooding | Green | Green | Green | Green | Green | Green | Yellow | Green |
| 21. Mild Physical Contact | Green | Green | Green | Green [7] | Green | Green | Yellow | Green |
| 22. Dietary Manipulation | Green | Green [5] | Green | Green | Green | Green | Yellow | Green |
| 23. Environmental Manipulation | Green | Green | Green [8] | Green | Green | Green | Yellow | Green |
| 24. Sleep Adjustment | Green | Green | Green | Green | Green | Green [9] | Yellow | Green |
| 25. False Flag | Green | Green | Green | Green | Green | Green | Yellow | Green |

Note: Green denotes no significant constraint on use raised by the respective area of consideration listed at top of each column, assuming adequate procedural safeguards. Yellow indicates area of consideration does not preclude use but there are problematic aspects that cannot be eliminated by procedural safeguards (see footnote). Red indicates major issue in area of consideration that cannot be eliminated.

UNCLASSIFIED

UNCLASSIFIED

| | Red (●) |
| | Yellow (○) |
| | Green (○) |

| Proposed Interrogation Techniques [2] (see attached description/limitations) | Utility — Contribution to Intelligence Collection (Useful) | Law IAW U.S. Interpretation | | |
|---|---|---|---|---|
| | | Torture Convention [Torture] | Torture Convention [Cruel, Inhuman Degrading] | U.S. Domestic Law |
| 26. Threaten to transfer to a 3rd country | Medium | ◐ | ◐ | ◐ |
| 27. Isolation | High | ◐ [11] | ◐ [12] | ◐ [13] |
| 28. Use of Prolonged Interrogations | High [17] | ◐ | ◐ | ◐ |
| 29. Forced-Grooming | High | ◐ | ◐ [19] | ○ [20] |
| 30. Prolonged Standing | High | ◐ | ◐ | ◐ |
| 31. Sleep Deprivation | High | ◐ | ◐ | ◐ |
| 32. Physical Training | High | ◐ | ◐ | ◐ |
| 33. Face or Stomach Slap | High | ◐ | ◐ | ◐ |
| 34. Removal of Clothing | High | ◐ | ○ [34] | ○ [35] |
| 35. Increasing Anxiety by Use of Aversions | High | ◐ | ○ [36] | ○ [39] |

Note: Green denotes no significant constraint on use raised by the respective area of consideration listed at top of each column, assuming adequate procedural safeguards. Yellow indicates area of consideration does not preclude use but there are problematic aspects that cannot be eliminated by procedural safeguards (see footnote). Red indicates major issue in area of consideration that cannot be eliminated.

UNCLASSIFIED

UNCLASSIFIED

Legend: ● Red  ○ Yellow  ▨ Green

| Proposed Interrogation Techniques 2 (see attached description/limitations) | Policy | | | | | | | Recommendation |
|---|---|---|---|---|---|---|---|---|
| | Consistency with Historical U.S. Forces Interrogation Role | Consistency with Prior U.S. Public Statements | Consistency with Major Partner Nation Views | Effect on Captured U.S. Forces | Potential Adverse Effect for Participants/Supervisors/COC | Potential Effect on Detainee Prosecutions | Other | Re Unlawful Combatants |
| 26. Threaten to transfer to a 3rd country | | | | | | [10] | | |
| 27. Isolation | [14] | | [15] | | | [16] | | E (Cbt.C) |
| 28. Use of Prolonged Interrogations | | | | | | [18] | | E (GO/FO) |
| 29. Forced Grooming | [21] | | [22] | | | | | E (GO/FO) |
| 30. Prolonged Standing | | | | | | [23] | | E (GO/FO) |
| 31. Sleep Deprivation | | | [24] | | | [25] | [26] | E (Cbt.C) |
| 32. Physical Training | | | | | | [27] | | E (GO/FO) |
| 33. Face or Stomach Slap | [28] | | [29] | [30] | [31] | [32] | [33] | E (GO/FO) |
| 34. Removal of Clothing | | | | [36] | | | [37] | E (Cbt.C) |
| 35. Increasing Anxiety by Use of Aversions | | | | [40] | | [41] | | E (Cbt.C) |

Note: Green denotes no significant constraint on use raised by the respective area of consideration listed at top of each column, assuming adequate procedural safeguards. Yellow indicates area of consideration does not preclude use but there are problematic aspects that cannot be eliminated by procedural safeguards (see footnote). Red indicates major issue in area of consideration that cannot be eliminated.

UNCLASSIFIED

UNCLASSIFIED

## General Comments on Techniques Chart

"E" denotes recommendation that technique be considered "exceptional" and subject to the following limitations: (i) limited to use only at strategic interrogation facilities; (ii) there is a good basis to believe that the detainee possesses critical intelligence; (iii) the detainee is medically and operationally evaluated as suitable (considering all techniques to be used in combination); (iv) interrogators are specifically trained for the technique(s); (v) a specific interrogation plan (including reasonable safeguards, limits on duration, intervals between applications, termination criteria and the presence or availability of qualified medical personnel) has been developed; (vi) there is appropriate supervision; and, (vii) there is appropriate specified senior approval for use with any specific detainee (after considering the foregoing and receiving legal advice).

"(Cbt.C)" denotes recommendation that approval level for use of technique for a specific detainee be no lower than the Combatant Commander.

"(GO/FO)" denotes recommendation that approval level for use of technique for a specific detainee be no lower than a General Officer or Flag Officer.

The title of a particular technique is not always fully descriptive of a particular technique. With respect to the employment of any techniques involving physical contact or stress or that could produce physical pain or harm, a detailed explanation of that technique must be provided to the decision authority prior to any decision.

**Recommendation:** The working group recommends that techniques 1-26 be approved for use with unlawful combatants outside the U.S. subject to the general limitations set forth in the Legal and Policy Analysis; and that techniques 27-35 be approved for use with unlawful combatants outside the U.S. subject to the general limitations as well as the specific limitations regarding "exceptional" techniques set forth above and in the Legal and Policy Analysis. If additional techniques are requested for use in the future, sufficient information regarding the technique must be provided to the appropriate command authority so that a legal/policy analysis can be conducted and recommendations for use made.

Note: Green denotes no significant constraint on use raised by the respective area of consideration listed at top of each column, assuming adequate procedural safeguards. Yellow indicates area of consideration does not preclude use but there are problematic aspects that cannot be eliminated by procedural safeguards (see footnote). Red indicates major issue in area of consideration that cannot be eliminated.

UNCLASSIFIED

UNCLASSIFIED
Footnotes

1. These recommendations assume that procedures and safeguards substantially similar to those set forth in the "Policy" Section of the Legal and Policy Analysis are followed. The analysis relates to each individual technique; use of techniques in combination could significantly affect the legality and wisdom of their application.

2. Techniques 1-19, 22-26, 30 and 35, applied singly, are purely verbal and/or involve no physical contact that could produce pain or harm; no threat of pain or harm.

3. *As a matter of policy, for countries that assert that POW protections should apply to detainees*: Other nations may consider that provision and retention of religious items (e.g., the Koran) are protected under international law (see, Geneva III, Article 34).

4. May affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

5. *For countries that assert that POW protections apply to detainees*: Article 17 of Geneva III provides, "Prisoners of war who refuse to answer may not be threatened, insulted, or exposed to any unpleasant or disadvantageous treatment of any kind."

6. *As a matter of policy, for countries that assert that POW protections should apply to detainees*: Would be inconsistent with Geneva III, Article 13 which provides that POWs must be protected against acts of intimidation.

7. *As a matter of policy, for countries that assert that POW protections should apply to detainees*: Possible that other nations would disregard "mild" aspect and use as justification for abuse of U.S. POWs.

8. International case law suggests that technique might in some circumstances be viewed by other countries as inhumane.

9. May affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

10. May significantly affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

UNCLASSIFIED

UNCLASSIFIED

## Footnotes (cont'd)

11. The use of isolation as an interrogation technique requires detailed implementation instructions, including specific guidelines regarding the length of isolation, medical and psychological review, and approval for extensions of the length of isolation by the appropriate level in the chain of command.

12. To avoid implementation that could transgress, the use of isolation as an interrogation technique requires detailed implementation instructions, including specific guidelines regarding the length of isolation, medical and psychological review, and approval for extensions of the length of isolation by the appropriate level in the chain of command.

13. To avoid implementation that could transgress, the use of isolation as an interrogation technique requires detailed implementation instructions, including specific guidelines regarding the length of isolation, medical and psychological review, and approval for extensions of the length of isolation by the appropriate level in the chain of command.

14. Not known to have been generally used for interrogation purposes for longer than 30 days.

15. *As a matter of policy, for countries that assert that POW protections should apply to detainees:* Would be inconsistent with the requirements of Geneva III, Article 13 which provides that POWs must be protected against acts of intimidation; Article 14 which provides that POWs are entitled to respect for their person; Article 34 which prohibits coercion (see commentary to paragraph 4), and Article 126 which ensures access and basic standards of treatment.

16. May affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

17. Utility is "high" for the first four to five days, "medium" for the following four to six days, and "low" thereafter.

18. May significantly affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

19. Where there are religious or cultural sensitivities, this technique could raise issue of "degrading" if not applied in accordance with general limitations.

20. At practical level, may raise issues whether excessive force was used.

UNCLASSIFIED

UNCLASSIFIED

## Footnotes (cont'd)

21.  This technique has not been used historically by U.S. forces. As such, no color code was assigned.

22.  This technique could be viewed by major partner nations as degrading in some circumstances.

23.  May affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

24.  As a matter of policy, for consideration of other nations' views, the Committee against Torture, established under Article 17 of the Convention Against Torture (CAT), has interpreted "sleep deprivation for prolonged periods" to be a violation of both Article 16 of the CAT as cruel, inhuman, or degrading treatment as well as constituting torture under Article 1 of the CAT. Concluding Observations of the Committee against Torture, U.N. Doc. A/52/44, paragraphs 253-260. See also, Judgment on the Interrogation Methods Applied by the GSS, Nos HC 5100/94, HC 4054/95, HC 5188/96, HC 7563/97, HC 7628/97, HC 1043/99 (Sup Ct of Israel, sitting as the High Court of Justice, Sep 6, 1999). Finally, the European Court of Human Rights (ECHR) has held that sleep deprivation, in conjunction with four other problematic techniques (wall standing, hooding, subjection to noise, and deprivation of food and drink), did constitute "inhuman and degrading treatment". Ireland v. United Kingdom, 25 Eur. Ct. H.R. (Ser. A) (1978).

25.  May significantly affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

26.  Knowledge of this technique may have a significant adverse effect on public opinion.

27.  May affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

28.  Technique used historically until the Vietnam war, however not officially sanctioned.

29.  As a matter of policy, for consideration of other nations' views, the Committee against Torture has generally denounced the use of "moderate physical pressure" as a permissible interrogation technique. See also, Tyrer v. United Kingdom, 26 Eur. Ct. H.R. (Ser. A) (1978) (spanking of student with 3 lashes of a birch rod violated European Convention on Human Rights). See also, Article 5 of the American Convention on Human Rights prohibits not only "torture" and "cruel, inhuman or degrading punishment or treatment" but it also provides that: "Every person has the right to have his physical, mental, and moral integrity respected."

UNCLASSIFIED

UNCLASSIFIED
Footnotes

30. As a matter of policy, other nations could interpret this as condoning assault on the detainee and encourage the use against U.S. POWs.

31. Potential to be subject to charge of assault in international jurisdictions.

32. May significantly affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

33. Knowledge of this technique may have significant adverse effect on public opinion.

34. Depending on application of technique, could be construed as degrading.

35. At practical level, may raise issues whether excessive force was used as force may be required to remove clothing.

36. Other nations may use as excuse to apply to U.S. POWs.

37. Knowledge of this technique may have a significant adverse effect on public opinion.

38. Legal exposure would be dependant on specific technique employed. Depending on technique used and subject response, potential exists that technique could be viewed as violating 5th/8th/14th Amendment standards, and therefore violate U.S. Interpretation of Torture Convention.

39. Legal exposure would be dependant on specific technique employed. Depending on technique used and subject response, potential exists that technique could be viewed as violating 5th/8th/14th Amendment standards, and therefore violate U.S. Interpretation of Torture Convention.

40. Could provide basis for other nations to justify use of more aggravated mental techniques on U.S. POWs.

41. May significantly affect admissibility of statements provided based on voluntariness consideration (lesser issue for military commissions).

UNCLASSIFIED

UNCLASSIFIED

# Description of Interrogation Techniques

1. **Direct:** Asking straightforward questions.

2. **Incentive/Removal of Incentive:** Providing a reward or removing a privilege, above and beyond those that are required by the Geneva Convention, from detainees.

3. **Emotional Love:** Playing on the love a detainee has for an individual or group.

4. **Emotional Hate:** Playing on the hatred a detainee has for an individual or group.

5. **Fear Up Harsh:** Significantly increasing the fear level in a detainee.

6. **Fear Up Mild:** Moderately increasing the fear level in a detainee.

7. **Reduced Fear:** Reducing the fear level in a detainee.

8. **Pride and Ego Up:** Boosting the ego of a detainee.

9. **Pride and Ego Down:** Attacking or insulting the ego of a detainee, not beyond the limits that would apply to a POW.

10. **Futility:** Invoking the feeling of futility of a detainee.

11. **We Know All:** Convincing the detainee that the interrogator knows the answer to questions he asks the detainee.

12. **Establish Your Identity:** Convincing the detainee that the interrogator has mistaken the detainee for someone else.

13. **Repetition Approach:** Continuously repeating the same question to the detainee within interrogation periods of normal duration.

14. **File and Dossier:** Convincing detainee that the interrogator has a damning and inaccurate file, which must be fixed.

15. **Mutt and Jeff:** A team consisting of a friendly and harsh interrogator. The harsh interrogator might employ the Pride and Ego Down technique.

UNCLASSIFIED

## Description of Interrogation Techniques (cont'd)

16. **Rapid Fire:** Questioning in rapid succession without allowing detainee to answer.

17. **Silence:** Staring at the detainee to encourage discomfort.

18. **Change of Scenery Up:** Removing the detainee from the standard interrogation setting (generally to a location more pleasant, but no worse).

19. **Change of Scenery Down:** Removing the detainee from the standard interrogation setting and placing him in a setting that may be less comfortable; would not constitute a substantial change in environmental quality.

20. **Hooding:** This technique is questioning the detainee with a blindfold in place. For interrogation purposes, the blindfold is not on other than during interrogation.

21. **Mild Physical Contact:** Lightly touching a detainee or lightly poking the detainee in a completely non-injurious manner. This also includes softly grabbing of shoulders to get the detainee's attention or to comfort the detainee.

22. **Dietary Manipulation:** Changing the diet of a detainee; no intended deprivation of food or water; no adverse medical or cultural effect and without intent to deprive subject of food or water, e.g., hot rations to MREs.

23. **Environmental Manipulation:** Altering the environment to create moderate discomfort (e.g., adjusting temperature or introducing an unpleasant smell). Conditions would not be such that they would injure the detainee. Detainee would be accompanied by interrogator at all times.

24. **Sleep Adjustment:** Adjusting the sleeping times of the detainee (e.g., reversing sleep cycles from night to day.) This technique is NOT sleep deprivation.

25. **False Flag:** Convincing the detainee that individuals from a country other than the United States are interrogating him.

26. **Threat of Transfer:** Threatening to transfer the subject to a 3rd country that subject is likely to fear would subject him to torture or death. (The threat would not be acted upon, nor would the threat include any information beyond the naming of the receiving country.)

UNCLASSIFIED

UNCLASSIFIED

## Description of Interrogation Techniques (cont'd)

27. **Isolation:** Isolating the detainee from other detainees while still complying with basic standards of treatment.

28. **Use of Prolonged Interrogations:** The continued use of a series of approaches that extend over a long period of time (e.g., 20 hours per day per interrogation).

29. **Forced Grooming:** Forcing a detainee to shave hair or beard. (Force applied with intention to avoid injury. Would not use force that would cause serious injury.)

30. **Prolonged Standing:** Lengthy standing in a "normal" position (non-stress). This has been successful, but should never make the detainee exhausted to the point of weakness or collapse. Not enforced by physical restraints. Not to exceed four hours in a 24-hour period.

31. **Sleep Deprivation:** Keeping the detainee awake for an extended period of time. (Allowing individual to rest briefly and then awakening him, repeatedly.) Not to exceed 4 days in succession.

32. **Physical Training:** Requiring detainees to exercise (perform ordinary physical exercises actions) (e.g., running, jumping jacks); not to exceed 15 minutes in a two hour period; not more than two cycles per 24 hour period. Assists in generating compliance and fatiguing the detainees. No enforced compliance.

33. **Face slap/ Stomach slap:** A quick glancing slap to the fleshy part of the cheek or stomach. These techniques are used strictly as shock measures and do not cause pain or injury. They are only effective if used once or twice together. After the second time on a detainee, it will lose the shock effect. Limited to two slaps per application; no more than two applications per interrogation.

34. **Removal of Clothing:** Potential removal of all clothing; removal to be done by military police if not agreed to by the subject. Creating a feeling of helplessness and dependence. This technique must be monitored to ensure the environmental conditions are such that this technique does not injure the detainee.

35. **Increasing Anxiety by Use of Aversions:** Introducing factors that of themselves create anxiety but do not create terror or mental trauma (e.g., simple presence of dog without directly threatening action). This technique requires the commander to develop specific and detailed safeguards to insure detainee's safety.

UNCLASSIFIED