JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
C. FREDERICK BECKNER III
Deputy Assistant Attorney General
TIMOTHY P. GARREN
Director, Torts Branch
MARY HAMPTON MASON
Senior Trial Attorney
GLENN S. GREENE
Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044
Telephone:(202) 616-4143
Facsimile: (202) 616-4314
glenn.greene@usdoj.gov

Attorneys for Defendant John Yoo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE PADILLA AND ESTELA LEBRON, | CASE NO.: C 08-00035 JSW |
| PLAINTIFFS, | |
| v. | **DEFENDANT JOHN YOO'S MOTION TO DISMISS** |
| JOHN YOO, | **DATE: AUGUST 8, 2008 TIME: 9:00AM** |
| DEFENDANT. | |

PLEASE TAKE NOTICE that on Friday, August 8, 2008, at 9:00AM, or as soon thereafter as counsel may be heard, Defendant John Yoo will present his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) before the Honorable Jeffrey S. White, United States District Court Judge for the Northern District of California.

Defendant Yoo's motion to dismiss seeks dismissal of all of the claims asserted in the Complaint filed by Plaintiffs Jose Padilla and Estela Lebron.

1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2  C. FREDERICK BECKNER III
   Deputy Assistant Attorney General
3  TIMOTHY P. GARREN
   Director, Torts Branch
4  MARY HAMPTON MASON
   Senior Trial Attorney
5  GLENN S. GREENE
   Trial Attorney
6  Torts Branch, Civil Division
   United States Department of Justice
7  P.O. Box 7146
   Ben Franklin Station
8  Washington, D.C. 20044
   Telephone:(202) 616-4143
9  Facsimile: (202) 616-4314
   glenn.greene@usdoj.gov
10
   Attorneys for Defendant John Yoo
11
                  UNITED STATES DISTRICT COURT
12
                 NORTHERN DISTRICT OF CALIFORNIA
13

14  JOSE PADILLA AND ESTELA LEBRON,      )   CASE NO.: C 08-00035 JSW
                                         )
15       PLAINTIFFS,                      )   **BRIEF IN SUPPORT OF**
                                         )   **DEFENDANT JOHN YOO'S**
16            v.                          )   **MOTION TO DISMISS**
                                         )
17  JOHN YOO,                             )   **DATE: AUGUST 8, 2008**
                                         )   **TIME: 9:00AM**
18       DEFENDANT.                       )
                                         )
19

20

21

22

23

24

25

26

27
                                    Defendant John Yoo's Motion to Dismiss
28                                  C 08-00035 JSW

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS. . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF MUST BE DISMISSED. . . . . . . . . 7

    A.    Defendant Yoo May Not Be Sued For Equitable Relief
        In His Individual Capacity.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    In the Alternative, Plaintiffs Lack Standing To Pursue Their Claim For Equitable
        Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   PLAINTIFFS' CONSTITUTIONAL CLAIMS FOR DAMAGES MUST BE
    DISMISSED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    Special Factors Counseling Hesitation Foreclose The Creation Of A *Bivens*
        Remedy For Any Of The Constitutional Harms Alleged By Plaintiffs.. . . . . . . . 12

    B.    Defendant Yoo Is Entitled To Qualified Immunity For All Of The Plaintiffs'
        *Bivens* Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        1.    The framework for the qualified immunity defense.. . . . . . . . . . . . . . . . 24

        2.    Plaintiffs have failed to establish that Defendant Yoo personally
            participated in any violation of Plaintiffs' constitutional rights.. . . . . . . 26

        3.    Plaintiffs have not alleged a violation of any constitutional rights.. . . . . 32

            a.    The Fourth Circuit's rejection of Padilla's petition for a writ of
                habeas corpus precludes all of Plaintiffs' constitutional claims
                related to Padilla's designation and detention as an enemy
                combatant, as well as those claims related to his interrogation or
                treatment that flow from his isolation and being held
                incommunicado.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

            b.    Padilla has not stated a violation of the
                right of access to courts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

            c.    Padilla has not stated a violation of any rights under the Eighth
                Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

          d.    Padilla has not stated a violation of the Fifth Amendment right against self-incrimination.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

     4.    To the extent that Plaintiffs have alleged the violation of any constitutional rights related to Padilla's designation, detention, and interrogation as an enemy combatant, those rights were not clearly established at the time of the events alleged in the Complaint.. . . . . . . . . . . . . . . . . . . . . . . . . . 39

III.  PADILLA HAS NOT STATED A CLAIM UNDER THE RELIGIOUS FREEDOM RESTORATION ACT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

     A.    Padilla Has Failed To Establish That Defendant Yoo Personally Participated In Any Conduct That Violated RFRA... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

     B.    RFRA Does Not Create A Cause Of Action Against Defendant Yoo In His Individual Capacity.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

     C.    Even If A Cause Of Action Is Allowed, Defendant Yoo Is Entitled To Qualified Immunity.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CONCLUSION . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Cases                                                                                                    Page

*Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Aguilera v. Baca*, 510 F.3d 1161 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Aldabe v. Aldabe,* 616 F.2d 1089 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ameritech Corp. v. McCann*, 297 F.3d 582 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Anderson v. Creighton*, 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 39

*Arar v. Ashcroft*, 414 F. Supp. 2d 250 (E.D.N.Y. 2006),
    *appeal argued*, No. 06-4216 (2nd Cir. Nov. 9, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Arnold v. International Business Machines Corp.*, 637 F.2d 1350 (9th Cir. 1981). . . . . . . . . . . 25

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). . . . . . . . . . . . . . . . . . . . . 6, 26, 27, 30

*Benson v. Allphin*, 786 F.2d 268 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 13

*Borucki v. Ryan,* 827 F.2d 836 (1st Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 47

*Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . 27

*Burns v. Reed*, 500 U.S. 478 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bush v. Lucas*, 462 U.S. 367 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23

*Campbell v. Allied Van Lines Inc.*, 410 F.3d 618 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . 42

*Carlson v. Green*, 446 U.S. 14 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chappell v. Wallace*, 462 U.S. 296 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 22

*Chavez v. Martinez*, 538 U.S. 760 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

*Christopher v. Harbury*, 536 U.S. 403 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11, 12

*Community Mental Health Servs. of Belmont v. Mental Health and Recovery Bd.*
    *Serving Belmont, Harrison & Monroe Counties*, 150 Fed. Appx. 389
    (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Conley v. Gibson*, 355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). . . . . . . . . . . . . . . . . . . . . . . 13, 25

*Crawford-El v. Britton*, 523 U.S. 574 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Davis v. Passman*, 442 U.S. 228 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Del Raine v. Carlson*, 826 F.2d 698 (7th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Department of Navy v. Egan*, 484 U.S. 518 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*DiMeglio v. Haines*, 45 F.3d 790 (4th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . 40, 41, 46

*Dugan v. Rank*, 372 U.S. 609 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Employment Division, Department of Human Resources v. Smith*, 494 U.S. 872 (1990). . . . . . . 47

*Ex parte Quirin*, 317 U.S. 1 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*FDIC v. Meyer*, 510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Feit v. Ward*, 886 F.2d 848 (7th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Feres v. United States*, 340 U.S. 135 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fisher v. United States*, 425 U.S. 391 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Frank v. Relin*, 1 F.3d 1317 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . 39

*Golden v. Zwickler*, 394 U.S. 103 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hafer v. Melo*, 502 U.S. 21 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Haig v. Agee*, 453 U.S. 280 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Halperin v. Kissinger*, 807 F.2d 180 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hanft v. Padilla*, 546 U.S. 1084 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 24

*Hartmann v. Stone*, 68 F.3d 973 (6th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Hatfill v. Gonzales*, 519 F. Supp. 2d 13 (D.D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Heck v. Humphrey*, 512 U.S. 477 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Howe v. Bank for Intern. Settlements*, 194 F. Supp. 2d 6 (D. Mass. 2002). . . . . . . . . . . . . . . . . . 9

*Ingraham v. Wright*, 430 U.S. 651 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*In re Estate of Covington*, 450 F.3d 917 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*In re Iraq and Afghanistan Detainees Litigation*, 479 F. Supp. 2d 85 (D.D.C. 2007),
    *appeal docketed sub. nom, Ali v. Rumsfeld*, No. 07-5178
    (D.C. Cir. May 31, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Jama v. INS*, 343 F. Supp. 2d 338 (D.N.J. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*James v. United States*, 127 S. Ct. 1586 (2007*)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Johnson v. Eisentrager*, 399 U.S. 763 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Kentucky v. Graham*, 473 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Kirby v. City of Elizabeth, North Carolina*, 388 F.3d 440 (4th Cir. 2004),
    *cert. denied,* 547 U.S. 1187 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Land v. Dollar*, 330 U.S. 731 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Lane v. Peña*, 518 U.S. 187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Larsen v. United States Navy*, 346 F. Supp. 2d 122 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . . . . . 46

*Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682 (1949). . . . . . . . . . . . . . . . . . . . . 9

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Lepp v. Gonzales*, No. C-05-0566 VRW, 2005 WL 1867723
    (N.D. Cal. Aug. 2, 2005), *aff'd sub. nom Harris v. Mukasey*,
    No. 05-16695, 2008 WL 194924 (9th Cir. Jan. 22, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Libby v. Marshall*, 833 F.2d 402 (1st Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Malley v. Briggs*, 475 U.S. 335 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*McIntosh v. Turner*, 861 F.2d 524 (8th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Medina v. City and County of Denver*, 960 F.2d 1493 (10th Cir.1992). . . . . . . . . . . . . . . . . 41, 47

*Micklus v. Carlson*, 632 F.2d 227 (3d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Morrison v. Olson*, 487 U.S. 654 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1   *Muhammad v. New York Dept. of Corr.*, 126 F.3d 119 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . 12

2   *Nebraska Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005),
        *cert. denied*, 547 U.S. 1110 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
3
    *Nelsen v. King County*, 895 F.2d 1248 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
4
    *Newhouse v. Probert*, 608 F. Supp. 978 (W.D. Mich. 1985). . . . . . . . . . . . . . . . . . . . . . . . . 9
5
    *North Dakota v. United States*, 495 U.S. 423 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
6
    *Omar v. Casterline*, 414 F. Supp. 2d 582 (W.D. La. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 46
7
    *Padilla ex rel. Newman v. Bush*, 233 F. Supp. 2d 564 (S.D.N.Y. 2002), *remanded
8       sub nom. Padilla v. Rumsfeld* , 352 F.3d 695 (2d Cir. 2003), *rev'd*,
        542 U.S. 426 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
9
    *Padilla v. Hanft*, 389 F. Supp. 2d 678 (D. S.C. 2005), *rev'd*,
10      423 F.3d 386 (4th Cir. 2005), *cert. denied*, 547 U.S. 1062 (2006). . . . . . . . . . . . . *passim*

11  *Phillips v. Hust*, 477 F.3d 1070 (9th Cir. 2008), *petition for cert. filed*,
        76 U.S.L.W. 3393 (Dec. 13, 2007) (No. 07-897). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
12
    *Prins v. Coughlin*, 76 F.3d 504 (2nd Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
13
    *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985). . . . . . . . . . . . . . . . . . 19, 20, 21
14
    *Saucier v. Katz*, 533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 39
15
    *Schneider v. Kissinger*, 310 F. Supp. 2d 251 (D.D.C. 2004), *aff'd on other grounds*,
16      412 F.3d 190 (D.C. Cir. 2005), *cert. denied*, 547 U.S. 1069 (2006). . . . . . . . . . . . . . . . 17

17  *Schweiker v. Chilicky*, 487 U.S. 412 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18  *Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

19  *Sherbert v. Verner*, 374 U.S. 398 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

20  *Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21  *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

22  *Stafford v. Briggs*, 444 U.S. 527 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

23  *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005), *cert. denied*,
        546 U.S. 1093 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
24
    *Synagogue v. U.S.*, 482 F.3d 1058 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
25
    *Terrell v. Brewer*, 935 F.2d 1015 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
26

27

28

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Antoine*, 318 F.3d 919 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936). . . . . . . . . . . . . . . . . . . . 19

*United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Sioux*, 362 F.3d 1241 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Stanley*, 483 U.S. 669 (1987). . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 20, 22

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Van Tu v. Koster*, 364 F.3d 1196 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*,
    537 U.S. 371 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Whitmore v. Arkansas*, 495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wilkie v. Robbins*, 127 S. Ct. 2588 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Wilson v. Libby*, 498 F. Supp. 2d 74 (D.D.C. 2007), *appeal docketed*,
    No. 07-5257 (D.C. Cir. July 27, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wisconsin v. Yoder*, 406 U.S. 205 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Withrow v. Williams*, 507 U.S. 680 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). . . . . . . . . . . . . . . . . . . . . . . . 16

<u>U.S. Constitution</u>

U.S. Const. Art. I, § 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S. Const. Art. II, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S. Const. Art. III, § 2, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Statutes</u>

18 U.S.C. § 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 956. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1  18 U.S.C. § 2339A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2  28 U.S.C. § 1391(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

3  28 U.S.C. § 2241. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

4  Authorization for Use of Military Force Joint Resolution,
       Pub. L. No. 107-40, § 2(a), 115 Stat. 224 (Sept. 18, 2001). . . . . . . . . . . . . . 2, 3, 15, 34, 39
5
   Detainee Treatment Act, Pub. L. No. 109-148, 119 Stat. 2739 (2005). . . . . . . . . . . . . . . . . . . . 23
6
   Reagan Act, Pub. L. No. 108-375, 118 Stat. 1811, (2004) (codified at
7      10 U.S.C. § 801, stat. note §§ 1091-92). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

8  Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, *et seq*. . . . . . . . . . . . . . . . . . . *passim*

9  Code of Federal Regulations

10 28 C.F.R. § 0.25(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

11 Other

12 Black's Law Dictionary (8th ed. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

13 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004). . . . . . . . . 26, 27

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Plaintiffs Jose Padilla and Estela Lebron seek to hold John Yoo, a former Deputy Assistant Attorney General in the Office of Legal Counsel at the United States Department of Justice, personally liable for the decision made by the President of the United States to designate Padilla, a convicted terrorist, as an enemy combatant.  That decision, when challenged by Padilla through a petition for a writ of habeas corpus, was recognized by the United States Court of Appeals for the Fourth Circuit as being "unquestionably authorized . . . as a fundamental incident to the President's prosecution of the war against al Qaeda in Afghanistan. "  *Padilla v. Hanft*, 423 F.3d 386, 392 (4th Cir. 2005), *cert. denied*, 547 U.S. 1062 (2006).  Plaintiffs also seek to hold Defendant Yoo personally responsible for the military detention and treatment Padilla received as a result of the enemy combatant designation.  Plaintiffs do not allege that Yoo had any direct personal involvement in or control over Padilla's designation, military detention, or treatment as an enemy combatant.  Nor do Plaintiffs allege that Yoo had any supervisory or other responsibility for anyone who had direct personal involvement in Padilla's designation, military detention, or treatment as an enemy combatant.  Yet in Plaintiffs' view, Yoo can nonetheless be held personally responsible for their claimed injuries because Yoo purportedly created four legal memoranda – on three of which he was not even a signatory – addressed to other attorneys in the Executive Branch that contained legal analyses which in turn were allegedly relied upon by senior government and military officials who actually made and implemented the decisions that governed Padilla's designation, military detention, and treatment as an enemy combatant. Plaintiffs seek this remarkable result despite the fact that none of the memoranda they cite dealt either with the standards applicable to Padilla's detention and treatment, or indeed to the detention and treatment of *any* detainee in the United States.  To countenance such a claim would not only constitute an unprecedented intrusion into the President's authority in the areas of war-making, national security and foreign policy, it could jeopardize the President's ability to obtain

1  unfettered legal advice on constitutional matters of utmost national importance and sensitivity.

2                                            **BACKGROUND**

3          In the Authorization for Use of Military Force Joint Resolution ("AUMF") of September

4  18, 2001, the 107th Congress of the United States specifically authorized the President of the

5  United States to

6          use all necessary and appropriate force against those nations, organizations, or

7          persons he determines planned, authorized, committed, or aided the terrorist

8          attacks that occurred on September 11, 2001, or harbored such organizations or

9          persons, in order to prevent any future acts of international terrorism against the

10         United States by such nations, organizations or persons.

11 Pub. L. No. 107-40, § 2(a), 115 Stat. 224 (2001).  On June 9, 2002, explicitly relying upon the

12 AUMF, the President directed the Secretary of Defense to detain Jose Padilla in military custody

13 as an enemy combatant.  The basis for Padilla's detention was the President's determination that:

14         1.      Padilla is and was, at the time he entered the United States in May 2002, an

15                 enemy combatant;

16         2.      Padilla is closely associated with al Qaeda, an international terrorist organization

17                 with which the United States is at war;

18         3.      Padilla engaged in conduct that constituted hostile and war-like acts, including

19                 conduct in preparation for acts of international terrorism that had the aim to

20                 cause injury to or adverse effects on the United States;

21         4.      Padilla possesses intelligence, including intelligence about personnel and

22                 activities of al Qaeda, that, if communicated to the U.S., would aid U.S. efforts to

23                 prevent attacks by al Qaeda on the United States or its armed forces, other

24                 governmental personnel, or citizens;

25         5.      Padilla represents a continuing, present and grave danger to the national security

26                 of the United States, and detention of Padilla is necessary to prevent him from

27

28                                                    2                          Defendant John Yoo's Motion to Dismiss
                                                                                C 08-00035 JSW

1    aiding al Qaeda in its efforts to attack the United States or its armed forces, other

2    governmental personnel, or citizens; and

3    6.    It is in the interest of the United States that the Secretary of Defense detain

4    Padilla as an enemy combatant.

5   *See* Letter from President George W. Bush to the Secretary of Defense (June 9, 2002) ("June 9,

6   2002 Bush Letter"), *reprinted in Padilla v. Hanft* ("*Padilla II*"), 423 F.3d 386, 389 (4th Cir.

7   2005), *cert. denied*, 547 U.S. 1062 (2006).

8    On July 2, 2004, Padilla filed a petition for a writ of habeas corpus in the United States

9   District Court for the District of South Carolina in which he raised many of the same

10   constitutional arguments that are being asserted in this matter.  *See Padilla v. Hanft* ("*Padilla I*"),

11   389 F. Supp. 2d 678, 682  (D. S.C. 2005), *rev'd*, *Padilla II*, 423 F.3d 386 (4th Cir. 2005), *cert.*

12   *denied*, 547 U.S. 1062 (2006).  The Fourth Circuit rejected Padilla's petition and declared that

13   his military detention as an enemy combatant by the President was "unquestionably authorized

14   by the AUMF as a fundamental incident to the President's prosecution of the war against al

15   Qaeda in Afghanistan."  *Padilla II*, 423 F.3d at 392.

16    On January 5, 2006, Padilla was transferred from military custody to a federal detention

17   center in Miami, Florida, to face federal criminal charges related to his terrorist activities.

18   Complaint ("Compl.") ¶ 10.  On August 16, 2007, Padilla was convicted of three federal criminal

19   offenses: conspiracy to kill, kidnap, maim, or injure persons in a foreign country, *see* 18 U.S.C. §

20   956; providing material support to terrorists, *see* 18 U.S.C. § 2339A; and conspiracy to provide

21   material support to terrorists, *see* 18 U.S.C. § 371.  *See generally* Criminal Docket for Case #:

22   0:04-cr-60001-MGC, *United States of America v. Adham Amin Assoun, Kifah Wael Jayyousi,*

23   *and Jose Padilla*, at Number 1193 - Verdict.  On January 22, 2008, Padilla was sentenced to a

24   term or imprisonment of 17 years and 4 months.  *See id.* at Number 1333 - Judgment.  Padilla has

25   appealed his conviction.

26    In February 2007, Plaintiffs Padilla and Lebron filed a civil suit in the United States

27

28    Defendant John Yoo's Motion to Dismiss
     C 08-00035 JSW

3

1    District Court for the District of South Carolina in which they seek to hold current and former

2    government officials personally liable for Padilla's designation as an enemy combatant, his

3    subsequent military detention, and his treatment during that detention. *See Padilla, et al. v.*

4    *Rumsfeld*, No. 2:04-cv-02221-HFF-RSC (D. S.C.). Plaintiffs filed an amended complaint on

5    May 7, 2007, and on December 3, 2007, Plaintiffs filed a motion for leave to file a second

6    amended complaint. A decision on Plaintiffs' motion is pending. The second amended

7    complaint raises substantially the same claims that Plaintiffs seek to bring in this lawsuit.[1]

8         In this case, Plaintiffs sue a single defendant – John Yoo, former Deputy Assistant

9    Attorney General, Office of Legal Counsel, United States Department of Justice. He is sued in

10    his individual capacity. Plaintiffs' claims against Defendant Yoo are based upon his alleged role

11    in Padilla's designation, military detention, and treatment as an enemy combatant. Plaintiff

12    Padilla alleges that these actions violated numerous constitutional provisions which he claims

13    apply to his situation, specifically:

14    Claim a.    The right of access to legal counsel under the First, Fifth, and Sixth
                  Amendments;

15
16    Claim b.    The right of access to courts under the First and Fifth Amendments;

17    Claim c.    The right not to be subjected to conditions of confinement and treatment
                  that violate the rights to procedural and substantive due process under the

18

---

19    [1]  The defendants in the first matter are: Donald H. Rumsfeld, former Secretary of
Defense; John Ashcroft, former Attorney General; Robert M. Gates, Secretary of Defense; Paul

20    Wolfowitz, former Deputy Secretary of Defense; Vice Admiral Lowell E. Jacoby, Director,
Defense Intelligence Agency; Michael H. Mobbs, Special Advisor to the Undersecretary of

21    Defense for Policy; William Haynes, General Counsel, Department of Defense; Naval Captain
Catherine T. Hanft; retired Naval Commander Melanie A. Marr; Naval Commander Stephanie L.

22    Wright; Chief Petty Officer Mack Keen; Sandy Seymour, Technical Director, Consolidated Brig;
and Dr. Craig Noble. Also included as defendants are 50 John Does, consisting of: "senior

23    military and policy officials"; "supervisors; legal professionals"; "medical professionals";
"interrogators"; and "guards." The original complaint named Donald H. Rumsfeld, John

24    Ashcroft, Robert M. Gates, Naval Captain Catherine T. Hanft, retired Naval Commander
Melanie A. Marr, Vice Admiral Lowell E. Jacoby, Michael H. Mobbs, and John Does 1-50 as

25    defendants. The additional defendants were added in the first amended and proposed second
amended complaint.

26

27

28
                                         Defendant John Yoo's Motion to Dismiss
                                         C 08-00035 JSW

Fifth Amendment, and the right to be free of cruel and unusual punishment under the Eighth Amendment;

Claim d.    The right to be free from coercive and involuntary custodial interrogation that violates the rights to procedural and substantive due process under the Fifth Amendment, the Fifth Amendment privilege against self-incrimination, and the right to be free of cruel and unusual punishment under the Eighth Amendment;

Claims e.-g.    The right to free exercise of religion under the First Amendment (e); and the rights to information (f), and to association with family and others (g) under the First Amendment;

Claim h.    The right not to be subject to military detention under the Fourth and Fifth Amendments; and

Claim i.    The right not to be subjected to the "collateral effects" of designation as an "enemy combatant" without due process of law under the Fifth Amendment.

*See* Compl. ¶¶ 107.a.-i.  Padilla claims further that his detention and treatment as an enemy combatant violated Article III and the Habeas Suspension and Treason Clauses of the U.S. Constitution, *id.* ¶¶ 107.b. & h., as well as the Religious Freedom Restoration Act, *see id.* ¶¶ 107.e.

Plaintiff Estela Lebron alleges that she was "den[ied] virtually all contact with her son [Plaintiff Padilla]" for the duration of his detention as an enemy combatant.  *See id.* ¶ 108.  She alleges that Padilla's detention violated her rights to association and communication under the First and Fifth Amendments.  *See id.*[2]

## SUMMARY OF ARGUMENT

All of Plaintiffs' claims against Defendant Yoo fail as a matter of law.  First, Plaintiffs' claim for declaratory relief fails because Yoo, in his individual capacity, is not a party from whom declaratory relief can be sought or obtained.  *Wolfe v. Strankham*, 392 F.3d 358, 360 n.2

---

[2]  With the exception of a request for injunctive relief against Padilla's potential re-detention as an enemy combatant and an Administrative Procedures Act claim against Secretary of Defense Gates, the claims asserted in the District of South Carolina case are identical to those asserted in this case.

1    (9th Cir. 2004).  Moreover, Plaintiffs lack standing to obtain such relief.  *City of Los Angeles v.*

2    *Lyons*, 461 U.S. 95 (1983).

3    Second, Plaintiffs' constitutional claims for damages should be dismissed because there

4    are special factors counseling hesitation that preclude the Court from creating a damages remedy

5    for an enemy combatant against a federal official alleged to be responsible for his designation,

6    detention, and treatment as an enemy combatant.  *Bivens v. Six Unknown Named Agents of the*

7    *Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597-98

8    (2007).  Hesitation in implying a right of action is especially appropriate here, where Plaintiffs

9    sue over alleged legal advice given to the President and other Executive Branch officials on

10   matters involving war powers, national security, and foreign policy.  No court has ever

11   recognized such a novel cause of action and to do so here would threaten the President's ability

12   to obtain unfettered legal counsel from traditional sources within the Executive Branch contrary

13   to clear Supreme Court jurisprudence.

14   In the alternative, even if creating a non-statutory constitutional tort remedy were

15   permissible under these extraordinary and sensitive circumstances, Defendant Yoo is entitled to

16   qualified immunity as a matter of law.  The Complaint fails to state allegations sufficient to

17   establish, as it must, that Defendant Yoo personally participated in any of the particular claimed

18   constitutional violations to which Plaintiff Padilla was allegedly subjected.  *Bell Atlantic*

19   *Corporation v. Twombly*, 127 S. Ct. 1955, 1969 (2007).  None of the opinions cited by Plaintiffs

20   and purportedly created by Yoo even applies to the facts pled in this case.  Moreover, Plaintiffs

21   fail to allege the violation of any clearly established constitutional rights for the constitutional

22   claims that question Padilla's designation and detention as an enemy combatant, including his

23   being held in isolation and incommunicado (Claims a.-c. and f.-i., *see* Compl. ¶¶ 107.a-c., f.-i.).

24   To the extent that Plaintiffs assert claims related to Padilla's alleged interrogation and conditions

25   of confinement during his detention as an enemy combatant (Claims c.-e., *see id.* ¶¶ 107.c.-e.)

26   that are premised on Padilla's being interrogated in isolation, without access to counsel, family,

27

28                                    6

1  or outside information, Plaintiffs fail to allege the violation of any clearly established

2  constitutional rights for those claims as well.  *Padilla v. Hanft*, 423 F.3d 386 (4th Cir. 2005).

3  Finally, Padilla's claim under the Religious Freedom Restoration Act ("RFRA") also fails

4  because Padilla has not alleged any actions by Defendant Yoo that substantially burdened the

5  exercise of Padilla's religion; RFRA does not provide for a cause of action against Defendant

6  Yoo in his individual capacity; and to the extent that Padilla has stated a claim under RFRA,

7  Defendant Yoo is entitled to qualified immunity.

8  <u>**ARGUMENT**</u>

9  **I.    PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF MUST BE DISMISSED.**

10  Plaintiffs seek equitable relief from Defendant Yoo in his individual capacity in the form

11  of a "declaration" that Defendant Yoo violated Plaintiffs' constitutional rights.  *See id.* ¶ 109.a.

12  This request for equitable relief fails as a matter of law because Defendant Yoo, a former federal

13  employee sued in his individual capacity, *see id.* ¶¶ 6, 12, is not a party from whom declaratory

14  relief can be sought or obtained.  Moreover, Plaintiffs lack standing to obtain such relief.

15  **A.    Defendant Yoo May Not Be Sued For Equitable Relief In His Individual**
   **Capacity**.

16

17  Every court of appeals to address the issue of whether a plaintiff alleging the violation of

   federal rights can sue a government official in an individual capacity for equitable relief,

18  including the Court of Appeals for the Ninth Circuit, has concluded that there is no basis for such

19

20  a suit.  *See Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) ("[T]he declaratory and

   injunctive relief Wolfe seeks is only available in an official capacity suit.").[3]  These cases

21

22  _____

   [3]  *See, e.g.*, *Kirby v. City of Elizabeth, North Carolina*, 388 F.3d 440, 452 n.10 (4th Cir.

23  2004), *cert. denied*, 547 U.S. 1187 (2006) (concluding that injunctive relief can only be awarded

   against a government employee in his or her official capacity); *Community Mental Health Servs.*

24  *of Belmont v. Mental Health and Recovery Bd. Serving Belmont, Harrison & Monroe Counties*,

   150 Fed. Appx. 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official

25  capacity for money damages, a plaintiff should not be able to sue a defendant in his individual

26  capacity for an injunction in situations in which the injunction relates only to the official's job,

   (continued...)

27

28    Defendant John Yoo's Motion to Dismiss
   C 08-00035 JSW

1  recognize that the government is the real party in interest in a suit for non-monetary relief and

2  that a government employee's personal interest in the litigation does not extend beyond whether

3  or not the employee is required to pay damages out of his or her own pocket.  Although an

4  injunction or declaratory judgment may affect how the employee performs his or her official

5  duties in the future, a public servant has no legally cognizable *personal* interest in performing

6  official duties in one fashion versus another.  This is especially true for a former federal

7  employee such as Defendant Yoo, whom Plaintiffs do not allege will be performing such duties

8  in the future.

9      On the other hand, the government's interest in a suit seeking equitable relief based on an

10  employee's performance of official duties is apparent because "relief is sought that would require

11  [the employees] to exercise their official powers in certain ways."  *Libby v. Marshall*, 833 F.2d

12  402, 405 (1st Cir. 1987).  That vital government interest is evident, for example, in the classic

13  formulation of sovereign immunity:

14      The general rule is that a suit is against the sovereign if 'the judgment sought

15

16      [3](...continued)

17  *i.e.,* his official capacity."); *Frank v. Relin*, 1 F.3d 1317, 1327 (2nd Cir. 1993) ("[S]uch equitable
    relief [reinstatement] could be obtained against Relin only in his official, not his individual,

18  capacity."); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990) ("[T]he injunctive relief sought
    and won by Scott can be obtained from the defendants only in their official capacity as

19  commissioners."); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("[T]he equitable relief Feit

20  requests – a declaration that the policy is unconstitutional and an injunction barring the
    defendants from implementing the policy in the future – can be obtained only from the

21  defendants in their official capacities, not as private individuals."); *Del Raine v. Carlson*, 826
    F.2d 698, 703 (7th Cir. 1987) (noting that suit would have to be against federal officers in their

22  official capacity to the extent that it sought types of relief that only officials and not private
    individuals can provide).  *See also Hatfill v. Gonzales*, 519 F.Supp.2d 13, 26-27 (D.D.C. 2007)

23  (dismissing plaintiff's claim for injunctive relief against current and former government officials

24  in their individual capacity); *In re Iraq and Afghanistan Detainees Litigation*, 479 F. Supp. 2d
    85, 118-19 (D.D.C. 2007) ("Because the challenged policies were carried out by the defendants

25  in their capacities as military officials, however, the plaintiffs must seek declaratory relief against
    them in their official capacities, which they have failed to do here."), *appeal docketed sub. nom*,

26  *Ali v. Rumsfeld*, No. 07-5178 (D.C. Cir. May 31, 2007).

27

28                                      Defendant John Yoo's Motion to Dismiss
                      8                 C 08-00035 JSW

1    would expend itself on the public treasury or domain, *or interfere with the public*

2    *administration*,' *Land v. Dollar*, 330 U.S. 731, 738, 67 S. Ct. 1009, 1012, 91 L.

3    Ed. 1209 (1947), or if the effect of the judgment would be '*to restrain the*

4    *Government from acting, or to compel it to act.*' *Larson v. Domestic & Foreign*

5    *Corp.* [337 U.S. 682, 704 (1949)].

6    *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (emphasis added).  Thus courts consistently look past

7    language in pleadings naming employees in their individual capacity where the government's

8    own interests are at stake.[4]

9        In light of the real party-in-interest distinction between individual and official capacity

10   suits, an individual capacity claim for equitable relief is not legally viable because it names

11   "improper defendants."  *Feit*, 886 F.2d at 858.  Only by acting as a government official (not as an

12   individual), can a defendant employee comply with a court decree by altering government policy

13   or practice.  A defendant employee who stands before the court in his or her capacity as an

14   individual has no such ability.  *See Wolfe*, 392 F.3d at 360 n.2.[5]  Therefore the equitable relief

15   _____

16       [4] *See, e.g., Howe v. Bank for Intern. Settlements*, 194 F. Supp. 2d 6, 19 (D. Mass. 2002)

17   ("Regardless of the manner by which a plaintiff designates the action, a suit should be regarded
     as an official-capacity suit, subject to the defense of sovereign immunity, when a 'judgment

18   sought would expend itself on the public treasury or domain, or interfere with the public
     administration, or if the effect of the judgment would be to restrain the Government from acting,

19   or to compel it to act'") (quoting *Dugan*, 372 U.S. at 620 (internal quotation marks and citations
     omitted)); *Newhouse v. Probert*, 608 F. Supp. 978, 981 (W.D. Mich. 1985) ("Plaintiff, however,

20   cannot avoid the doctrine of sovereign immunity by naming individual employees as defendants
     if the United States remains the real party in interest.  The court must go beyond the nominal

21   defendants to determine whether the suit is in effect one against the sovereign").

22       [5] *See also Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002) (noting that

23   goals of "vindicating federal rights and holding state officials responsible to federal law – cannot
     be achieved by a lawsuit against a state official in his or her individual capacity" because such

24   suits "do not seek to conform the State's conduct to federal law; rather such suits seek recovery
     from the defendant personally"); *Kirby*, 388 F.3d at 452 n.10 ("The other injunctive relief Kirby

25   seeks could only be awarded against the officers in their official capacities."); *see also*

26   *Community Mental Health Servs. of Belmont*, 150 Fed. Appx. at 401; *Frank*, 1 F.3d at 1327;

                                                                                    (continued...)

27

28                                              9

1    Plaintiffs seek here "can be obtained only from the defendant[] in [his] official capacit[y], not as

2    [a] private individual[]." *Feit*, 886 F.2d at 858 (citing *Del Raine*, 826 F.2d at 703).[6]  Plaintiffs

3    clearly and deliberately sued Defendant Yoo in his individual capacity after he left government

4    office.  Thus Plaintiffs' claims are "properly dismissed" because their "attempt to obtain

5    declaratory [] relief from the defendant[] in [his] personal capacit[y] fails to state a claim upon

6    which relief may be granted." *Id.*

7            **B.    In the Alternative, Plaintiffs Lack Standing To Pursue Their Claim For
                    Equitable Relief.**

8            An Article III court only has jurisdiction over a "case or controversy."  U.S. Const. Art.

9    III, § 2, cl. 1.  As the Supreme Court observed in *City of Los Angeles v. Lyons*, 461 U.S. 95

10   (1983), "[a]bstract injury is not enough.  The plaintiff must show that he 'has sustained or is

11   immediately in danger of sustaining some direct injury' as the result of the challenged official

12   conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or

13   'hypothetical.'"  *Id.* at 101-02 (quotations and citations omitted); *see also Whitmore v. Arkansas*,

14   495 U.S. 149, 158 (1990) (noting that threatened injury must be "certainly impending" to

15   constitute an injury-in-fact sufficient to satisfy Article III standing requirements).  Past injury

16   alone is insufficient to provide a plaintiff with standing to seek declaratory or injunctive relief

17   because declaratory or injunctive relief cannot redress past injury.  *See Lyons*, 461 U.S. at 103-04

18   (finding that plaintiff lacked standing to seek injunction against Los Angeles police officers use

19   of "chokeholds" because he failed to show that he was likely to suffer future injury from the use

20   of the "chokeholds" by police officers); *id.* at 104 (finding plaintiffs' assertion that he might

21   again be subject to an illegal "chokehold" did not create the "actual controversy" that must exist

22

23   _____

24       [5](...continued)
     *Scott*, 910 F.2d at 213.

25

26       [6]  Defendant Yoo could not be sued in his official capacity for equitable relief because as
     a former federal employee, he no longer has any official duties to carry out in regard to this
     matter.

27

28                                          10

1  for a declaratory judgment to be entered).  "The constitutional question . . . must be presented in

2  the context of a specific live grievance."  *Golden v. Zwickler*, 394 U.S. 103, 110 (1969).

3      This court lacks subject matter jurisdiction over Plaintiffs' claims for equitable relief

4  because Plaintiffs have failed to allege a threat of injury that is "real and immediate," and not

5  "conjectural" or "hypothetical."  *See Lyons*, 461 U.S. at 101-02.  All of Plaintiffs' claims,

6  including those for equitable relief, are premised upon Padilla's past detention as an enemy

7  combatant.  *See* Compl. ¶¶ 1-5.  On January 5, 2006, Padilla was transferred from military

8  custody to the custody of the U.S. Justice Department for trial on a variety of terrorism-related

9  offenses.  *See Hanft v. Padilla*, 546 U.S. 1084 (2006); Compl.¶ 10.  Padilla was subsequently

10  convicted of three federal criminal offenses.  On January 22, 2008, Padilla was sentenced to a

11  term of imprisonment of 17 years and 4 months and has been committed to the custody of the

12  U.S. Bureau of Prisons.  *See* Criminal Docket for Case #: 0:04-cr-60001-MGC, *United States of*

13  *America v. Adham Amin Assoun, Kifah Wael Jayyousi, and Jose Padilla*, at Number 1333-

14  Judgment.  There is thus no reason to believe that Padilla is likely to soon be re-transferred to

15  military custody to be re-detained as an enemy combatant and/or subjected to coercive

16  interrogation techniques or unconstitutional conditions of confinement stemming from that

17  designation.[7]  Plaintiffs lack standing to seek equitable relief against such "conjectural" or

18  "hypothetical" scenarios.  *See Lyons*, 461 U.S. at 101-02.[8]

19

---

20      [7]  The sole evidence cited as support for Padilla's fear of redetention as an enemy
   combatant is an alleged statement by a Deputy Solicitor General to Padilla's counsel that the

21  government "could" redetain Padilla in military custody at any time based on Padilla's past acts.
   *See* Compl. ¶ 87.  However, this statement was purportedly made on November 23, 2005, *see id.*,

22  while Padilla was still in military custody.  Plaintiffs allege no statement or action of any kind
   made after Padilla was transferred to the custody of the U.S. Department of Justice for criminal

23  prosecution which indicates a "real and immediate" threat to return Padilla to military detention.
   Indeed, Padilla has since been convicted and sentenced to a term of imprisonment of more than

24  17 years in the custody of the federal Bureau of Prisons.

25

26      [8]  Federal courts of appeal, including the Ninth Circuit, have consistently applied the

(continued...)

27

28                                          11

1    **II.    PLAINTIFFS' CONSTITUTIONAL CLAIMS FOR DAMAGES MUST BE**
2         **DISMISSED.**

3         Plaintiffs' constitutional claims for damages against Defendant Yoo should be dismissed

4    for two alternative reasons.  First, there are special factors counseling hesitation that preclude the

5    Court from creating the non-statutory damages remedy Plaintiffs seek in this extraordinary and

6    sensitive context.  Alternatively, even if it were appropriate for the Court to create a non-

7    statutory damages remedy in this context, Defendant Yoo is entitled to qualified immunity as a

8    matter of law on all of Plaintiffs' claims.

9         **A.    Special Factors Counseling Hesitation Foreclose The Creation Of A *Bivens***
          **Remedy For Any Of The Constitutional Harms Alleged By Plaintiffs.**

10        Plaintiffs seek damages from Defendant Yoo for alleged constitutional infirmities in

11   Padilla's designation, detention, and treatment as an enemy combatant.  The "special factors"

12   doctrine developed by the Supreme Court in *Bivens v. Six Unknown Named Agents of the Fed.*

13   *Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny precludes an individual damages

14   remedy for this unprecedented claim.

15        A judicially-created damages remedy for constitutional violations "is not an automatic

16   entitlement."  *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597-98 (2007); *Sissoko v. Rocha*, 509 F.3d

17   947, 949 (9th Cir. 2007); *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)

18

19        [8](...continued)

      standing requirements set forth in *Lyons* to reject claims by prisoners, pretrial detainees, and
20    immigration detainees seeking equitable relief to challenge the conditions of their confinement
      following their release from custody or even after a transfer to a different facility.  *See Nelsen v.*
21    *King County*, 895 F.2d 1248, 1249-54 (9th Cir. 1990) (rejecting the argument that the allegation
      that plaintiffs' alcoholism made it very likely that they would re-offend and be treated in the
22    same facility constituted a sufficient threat of future injury to support standing for equitable relief
      claims challenging sanitary conditions in a treatment facility from which plaintiffs had been
23    released); *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (stating that "it is settled in this
      Circuit that a transfer from a prison facility moots an action for injunctive relief against the
24    transferring facility"); *Muhammad v. New York Dept. of Corr.*, 126 F.3d 119, 123-24 (2d Cir.
      1997) (finding that former prisoner lacked standing for injunctive relief relating to alleged
25    interference with his religious practices during his confinement because prisoner had been
      paroled).
26

27

28

1   ("[O]ur precedent makes clear that the right to sue as established by *Bivens* is qualified and is not

2   absolute."). In *Bivens*, the Supreme Court held that the victim of an alleged Fourth Amendment

3   violation could bring suit to recover damages in the absence of a statutory cause of action only

4   where there were "no special factors counseling hesitation in the absence of affirmative action by

5   Congress." 403 U.S. at 396. Subsequently, the Court has countenanced an expansion of *Bivens*

6   on just two occasions, and in both instances specifically determined that there were no such

7   "special factors." *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14

8   (1980). The Supreme Court has "in most instances . . . found a *Bivens* remedy unjustified,"

9   *Wilkie*, 127 S. Ct. at 2597-98, and accordingly, in the nearly three decades since *Carlson*, the

10   Court has "consistently refused to extend *Bivens* liability to any new context or new category of

11   defendants," *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).[9] As a result,

12   "recognizing such a claim is clearly disfavored." *See In re Iraq and Afghanistan Detainees*

13   *Litigation*, 479 F. Supp. 2d at 93-94 (refusing to recognize a *Bivens* remedy for military detainees

14   in Iraq and Afghanistan against U.S. military and civilian personnel); *accord Nebraska Beef, Ltd.*

15   *v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005) (recognizing "presumption against judicial

16   recognition of direct actions for violations of the Constitution by federal officers or employees")

17   (quoting *McIntosh v. Turner*, 861 F.2d 524, 526 (8th Cir. 1988)), *cert. denied*, 547 U.S. 1110

18   (2006). Moreover, the Court has determined that a wide range of factors may make it

19   inappropriate for federal courts to create a *Bivens* remedy in a particular context, even where the

20

---

21      [9] *See, e.g.*, *Malesko*, 534 U.S. at 68 (refusing to recognize a *Bivens* remedy against

22   private companies performing governmental functions under contract with the United States because doing so would not serve the public policy purposes of the remedy); *FDIC v. Meyer*, 510

23   U.S. 471, 486 (1994) (refusing to allow a *Bivens* claim against a federal agency because of its potential impact on federal fiscal policy); *Schweiker v. Chilicky*, 487 U.S. 412, 425-29 (1988)

24   (rejecting a *Bivens* remedy for the denial of Social Security benefits because a statutory procedure already existed to challenge adverse eligibility determinations); *Bush v. Lucas*, 462

25   U.S. 367 (1983) (refusing to recognize a *Bivens* remedy for the alleged violation of First

26   Amendment rights arising out of federal personnel decisions for fear that the claim might interfere with a statutory scheme regulating the federal workplace).

27

28                        13

1   plaintiff has no alternative statutory remedy available.  *See Wilkie*, 127 S. Ct. at 2598 ("even in

2   the absence of an alternative [existing process for protecting a constitutionally recognized

3   interest], a *Bivens* remedy is a subject of judgment"); *id.* at 2604-05 (holding that the "serious

4   difficulty of devising a workable cause of action" was a special factor that precluded the creation

5   of a *Bivens* claim).

6       Plaintiffs seek an unprecedented extension of *Bivens* into a new, previously unrecognized,

7   and highly sensitive context – one that would allow a damages action seeking recovery from the

8   personal assets of a former Department of Justice attorney for legal analyses and advice he

9   allegedly provided to the President, other Executive Branch officials, and/or members of the

10  United States military related to wartime actions in identifying, capturing, detaining, and

11  interrogating an enemy combatant.  This Court should decline Plaintiffs' invitation because the

12  *Bivens* remedy they seek impinges upon the Executive Branch's authority to conduct war, protect

13  national security from terrorist attack, and formulate foreign policy.  In fact, no court has ever

14  recognized the *Bivens* remedy Plaintiffs ask this Court to create.  Permitting Plaintiffs' claims to

15  proceed in the face of these concerns would violate bedrock separation-of-powers principles and

16  constitute a sharp departure from the Supreme Court's well-settled reluctance to extend *Bivens*

17  liability to new contexts.

18      The Constitution explicitly delegates authority over decisions related to the conduct of

19  war to the Legislative and Executive branches.  *See* U.S. Const. Art. I, § 8 (Legislative Branch);

20  Art. II, § 2 (Executive Branch).  For this reason, the Supreme Court has repeatedly recognized

21  that courts should refrain from interfering in the core functions of the political branches,

22  especially during wartime.  *See, e.g., Hamdi v. Rumsfeld*, 542 U.S. 507, 535 (2004) (plurality

23  opinion) ("we accord the greatest respect and consideration to the judgments of military

24  authorities in matters relating to the actual prosecution of a war, and recognize that the scope of

25  that discretion necessarily is wide"); *id.* at 531 ("Without doubt, our Constitution recognizes that

26  core strategic matters of warmaking belong in the hands of those who are best positioned and

27

28                                    14

Defendant John Yoo's Motion to Dismiss
C 08-00035 JSW

1  most politically accountable for making them."); *North Dakota v. United States*, 495 U.S. 423,

2  443 (1990) ("When the Court is confronted with questions relating to . . . military operations, we

3  properly defer to the judgment of those who must lead our Armed Forces in battle.").[10]  In

4  keeping with this deference, the Supreme Court has refused, on the basis of the special factors

5  doctrine, to create a *Bivens* action against military officials *or civilians* for claims arising incident

6  to military service.  *United States v. Stanley*, 483 U.S. 669, 681-83 (1987).[11]

7         The decision to designate, detain, and interrogate Padilla as an enemy combatant was a

8  military decision made pursuant to the AUMF's explicit grant of authority to the President from

9  Congress.  *See* June 9, 2002 Bush Letter.  Padilla's designation and detention were deemed

10  "necessary to prevent [Padilla] from aiding al Qaeda in its efforts to attack the United States or

11  its armed forces, other governmental personnel, or citizens."  *Id.*  The power to identify, detain,

12  and question individuals like Padilla who have aligned themselves with declared enemies of the

13

14       [10]  *See also Department of Navy v. Egan*, 484 U.S. 518, 530 (1988) (noting the reluctance

15  of the courts "to intrude upon the authority of the Executive in military and national security

16  affairs"); *Van Tu v. Koster*, 364 F.3d 1196, 1198 (10th Cir. 2004) (finding "availability of a

17  *Bivens* remedy" for the conduct of U.S. military officers during the Vietnam War to be

    "questionable").

18       [11]  In *Stanley*, the Court considered the creation of a *Bivens* remedy that would allow a

19  former serviceman to sue military officers and civilians to recover damages he sustained as a

    result of his involuntary participation in an Army medical experiment.  *Stanley*, 483 U.S. at 671-

20  73.  The Court found that "Congress' activity in the field" of the U.S. military was a special

    factor that required abstention in the creation of a *Bivens* action for injuries that "arise out of or

21  are in the course of activity incident to [military] service."  *Id.* at 683 (quoting *Chappell v.*

    *Wallace*, 462 U.S. 296, 304 (1983) *and Feres v. United States*, 340 U.S. 135, 146 (1950)).

22  *Stanley* was an extension of *Chappell*, in which the Court also found separation-of-powers to be

    a special factor counseling hesitation that prevented the creation of a *Bivens* remedy that would

23  allow enlisted military personnel to sue their superior officers.  The Court reasoned in *Chappell*

24  that since "Congress, the constitutionally authorized source of authority over the military system

    of justice, ha[d] not provided a damage remedy for claims by military personnel that

25  constitutional rights have been violated by superior officers . . . [a]ny action to provide a judicial

    response by way of such a remedy would be plainly inconsistent with Congress' authority in this

26  field."  462 U.S. at 304.

27

28                              15

1   United States and have taken up arms against this country is essential to the exercise of

2   constitutionally and congressionally delegated war powers.  Therefore, deference to the

3   President's decision in that regard is especially warranted.  *See Youngstown Sheet & Tube Co.*,

4   343 U.S. at 635 (Jackson, J., concurring) ("When the President acts pursuant to an express or

5   implied authorization of Congress, his authority is at its maximum, for it includes all that he

6   possesses in his own right plus all that Congress can delegate.").

7        The potential disruption to the coordinate branches of government caused by recognizing

8   a cause of action for damages by an enemy combatant against his captors in a time of war is *far*

9   greater than that found sufficient to preclude a *Bivens* action in either *Stanley* or *Chappell*.  This

10  is true regardless of who along the chain of decision-making the enemy combatant chooses to

11  sue.  In this case, Plaintiffs have sued an attorney in the Department of Justice's Office of Legal

12  Counsel ("OLC") for broad legal analyses his employing office and the Attorney General

13  allegedly provided to the President as well as senior military and civilian officials concerning the

14  extent to which specific treaties, statutes, and constitutional provisions apply to al Qaeda and

15  Taliban fighters captured overseas – analyses which did not advise or recommend the taking of

16  any action towards Jose Padilla or anyone else, *see infra* § II.B.2.  The Supreme Court has

17  recognized that "the greatest respect and consideration" is to be accorded to "the judgments of

18  military authorities in matters relating to the actual prosecution of war," and that the scope of the

19  discretion exercised by these authorities "necessarily is wide."  *Hamdi*, 542 U.S. at 535 (plurality

20  opinion).  It follows, therefore, that courts should take great care when asked to create a cause of

21  action that would intrude upon the judgment and discretion of military authorities by targeting

22  the government attorneys to whom those authorities go for unfettered legal analyses or advice in

23  matters related to the prosecution of war.

24       The potential interference is of particular concern as it relates to legal advice on military

25  matters sought and obtained from OLC, which is responsible among other matters for "rendering

26  informal opinions and legal advice to the various agencies of the Government, and assisting the

27

28                                          16

1    Attorney General in the performance of his functions as legal adviser to the President . . ." 28

2    C.F.R. § 0.25(a).  Indeed, the head of OLC is commonly recognized as "a post that has

3    traditionally had responsibility for providing legal advice to the President. . . ."  *See Morrison v.*

4    *Olson*, 487 U.S. 654, 700 (1988) (Scallia, J., dissenting).  Recognizing the *Bivens* remedy

5    Plaintiffs seek here against Defendant Yoo inappropriately interferes with the ability of the

6    President and other Executive Branch officials to receive unfettered legal analyses and advice

7    from individual OLC attorneys who may in turn temper that analyses or advice out of fear of

8    personal liability.  *Cf. Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982) (recognizing that the

9    purpose of qualified immunity is to shield government officials from "undue interference with

10   their duties and from potentially disabling threats of liability").  This would directly affect the

11   ability of these officials to exercise the judgment and discretion with respect to the prosecution of

12   war which they have been accorded by courts.  *Hamdi*, 542 U.S. at 535.

13       Not only would recognizing a *Bivens* remedy here impermissibly intrude on Presidential

14   and Congressional primacy in matters of war, it would also impinge on the national security

15   prerogative of the coordinate branches.  Even in times of peace, federal courts have broadly

16   deferred to the Executive Branch on national security matters.  *See, e.g.*, *Egan*, 484 U.S. at 530

17   ("courts traditionally have been reluctant to intrude upon the authority of the Executive in . . .

18   national security affairs."); *Halperin v. Kissinger*, 807 F.2d 180, 187 (D.C. Cir. 1986) (noting

19   that the "harm produced" by the assertion of damages actions against federal officials "is

20   particularly severe in the national security field, since 'no governmental interest is more

21   compelling'") (citing *Haig v. Agee*, 453 U.S. 280, 307 (1981)); *Schneider v. Kissinger*, 310 F.

22   Supp. 2d 251, 269 n.27 (D.D.C. 2004) (dismissing claims for equitable relief because they

23   concerned "foreign and national security policy directives of the President"), *aff'd on other*

24   *grounds*, 412 F.3d 190 (D.C. Cir. 2005), *cert. denied*, 547 U.S. 1069 (2006).  There are obvious

25   and significant national security concerns inherent in subjecting a former government attorney to

26   personal liability for decisions made by the President, current and former members of the

27

28                                    17

Defendant John Yoo's Motion to Dismiss
C 08-00035 JSW

President's Cabinet, and military and civilian officials regarding the designation, detention and interrogation of an enemy combatant whom the President expressly concluded "represents a continuing, present and grave danger to the national security of the United States," *see* June 9, 2002 Bush Letter. The prospect of prolonged litigation and personal liability might unduly influence decisions concerning the designation, detention and interrogation of enemy combatants like Padilla, or the release of such enemies from military custody, which could adversely impact the fundamental security of the Nation, enhancing the risks to our military in the field and our citizens at home.

Adjudication of the claims pressed by Plaintiffs in this case would necessarily require an examination of the manner in which the government identifies, captures, detains, and interrogates enemy combatants. *See In re Iraq*, 479 F. Supp. 2d at 105 ("The discovery process alone risks aiding our enemies by affording them a mechanism to obtain what information they could about military affairs and disrupt command missions by wresting officials from the battlefield to answer compelled deposition and other discovery inquiries about the military's interrogation and detention policies, practices, and procedures."). Litigating these extremely sensitive matters itself raises serious national security concerns, and is a policy judgment that should be left to Congress. *See Wilson v. Libby*, 498 F. Supp. 2d 74, 83-96 (D.D.C. 2007) (refusing to create a *Bivens* remedy for the alleged retaliatory disclosure of the covert status of a CIA operative because of separation-of-powers and justiciability concerns), *appeal docketed*, No. 07-5257 (D.C. Cir. July 27, 2007); *Arar v. Ashcroft*, 414 F. Supp. 2d 250, 252 (E.D.N.Y. 2006) (refusing, in light of political branches' authority over foreign affairs, to infer *Bivens* remedy for the removal of an alien from the United States allegedly for the express purpose of detention and torture by foreign officials), *appeal argued*, No. 06-4216 (2d Cir. Nov. 9, 2007); *see also Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005) (noting that even established methods for the protection of sensitive information, "whatever they might be, still entail considerable risk" of revealing the information they are invoked to protect), *cert. denied*, 546 U.S. 1093 (2006).

Defendant John Yoo's Motion to Dismiss
C 08-00035 JSW

1    Recognizing the *Bivens* remedy sought by Plaintiffs would also impermissibly intrude

2    upon the primacy of the Executive Branch in matters of foreign policy, including whether, where

3    and when the United States chooses to capture enemy combatants.  As the D.C. Circuit explained

4    in *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985), "the special needs of foreign

5    affairs must stay our hand in the creation of damage remedies against military and foreign policy

6    officials . . . The foreign affairs implications of suits such as this cannot be ignored . . ."  *Id.* at

7    209 (refusing to recognize a *Bivens* remedy for alleged unconstitutional treatment of foreign

8    citizens resulting from alleged plan by former President Reagan and members of the National

9    Security Council to overthrow the government of Nicaragua).[12]  Even apart from national security

10   concerns, federal courts have traditionally deferred to the Executive Branch on foreign policy

11   matters.[13]  Courts have approached foreign affairs with caution even when Congress has passed a

12   statute contemplating some form of judicial involvement.  *See*, *e.g.*, *Sosa*, 542 U.S. at 727-28.

13   The rationale for this deference in general is particularly acute where a suit involves a request to

14   create a private cause of action that implicates foreign policy concerns.

15       Interfering with the separation-of-powers concerns outlined above in the areas of military,

16

-------------------------

17       [12]  While the *Bivens* claims in *Sanchez-Espinoza* related to the alleged "unconstitutional
treatment of foreign subjects causing injury abroad," *see* 770 F.2d at 209, the D.C. Circuit's
18   rationale is no less applicable to the private damages remedy Plaintiffs seek in this case.  For
different legal consequences to attach when the United States arrests an enemy combatant on
19   domestic rather than foreign soil would necessarily impact the Executive's decision-making in
that regard and, in turn, impact foreign relations.
20

21       [13]  *See*, *e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n. 21 (2004) (recognizing
"policy of case-specific deference to the political branches" in foreign affairs and "strong
22   argument that federal courts should give serious weight to the Executive Branch's view of the
case's impact on foreign policy"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 273 (1990)
23   (highlighting "significant and deleterious consequences" that the creation of a damages action
would have on "foreign policy operations"); *United States v. Curtiss-Wright Export Corp.*, 299
24   U.S. 304, 320 (1936) (recognizing that "congressional legislation which is to be made effective
through negotiation and inquiry within the international field must often accord to the President a
25   degree of discretion and freedom from statutory restriction which would not be admissible were
domestic affairs alone involved").
26

27

28                                19

1    national security, and foreign relations by recognizing a private right of action would have two

2    very specific consequences in this context. First, the potential chilling effect of a damages

3    remedy would threaten the President's ability to obtain needed counsel and guidance on matters

4    of great importance and sensitivity to the Nation and thereby interfere with critical decision-

5    making at the highest levels of the government. Second, such a cause of action would give our

6    enemies a means of interfering with ongoing military operations. *Bivens* actions brought by

7    designated enemy combatants such as Padilla could hamper military operations by "bring[ing]

8    aid and comfort to the enemy . . . diminish[ing] the prestige of our commanders," as well as those

9    upon whom the commanders rely for advice, by "allow[ing] the very enemies [they are fighting]

10    ... to call [them] to account in [their] own civil courts," thereby diverting the time and attention

11    of those officials from the "military offensive" to the "legal defensive." *Johnson v. Eisentrager*,

12    339 U.S. 763, 778-79 (1950). Indeed, "[i]t would be difficult to devise more effective fettering"

13    of executive branch officials, *see id.*, than to allow an enemy combatant to trade a battlefield in

14    Afghanistan for a battlefield in the U.S. legal system where the primary weapon of choice is a

15    personal liability damages action directed at the federal officials deemed responsible for his

16    designation, detention, and interrogation. *See Stanley*, 483 U.S. at 683 ("Even putting aside the

17    risk of erroneous judicial conclusions (which would becloud military decisionmaking), the mere

18    process of arriving at correct conclusions would disrupt the military regime."); *accord Sanchez-*

19    *Espinoza*, 770 F.2d at 209 ("[T]he danger of foreign citizens using the courts in situations such as

20    this to obstruct the foreign policy of our government is sufficiently acute that [courts] must leave

21    to Congress the judgment whether a damage remedy should exist."). The District Court for the

22    District of Columbia succinctly and accurately identified this concern in *In re Iraq*, a case in

23    which a group of alien detainees in Iraq and Afghanistan brought suit on *Bivens* theories against

24    military *and civilian* personnel who were responsible for their alleged detention and treatment

25    while confined. Finding that "considerations of institutional competence" precluded creation of

26    the *Bivens* remedy sought by the detainees, that court stated

27

28                                              20

1    There is no getting around the fact that authorizing monetary damages remedies

2    against military officials engaged in an active war would invite enemies to use our

3    own federal courts to obstruct the Armed Forces' ability to act decisively and

4    without hesitation in defense of our liberty and national interests, a prospect the

5    Supreme Court found intolerable in *Eisentrager*.

6  *In re Iraq*, 479 F. Supp. 2d at 105-06 (quoting *Sanchez-Espinoza*, 770 F.2d at 208-09).[14]  These

7  considerations apply with no less force when contemplating a novel damages remedy against the

8  government attorneys who advise the President and military officers with respect to sensitive

9  national security issues.

10    Even if it was possible to divorce this case from its national security underpinnings,

11  which it is not, government attorneys provide legal advice and analysis to the President, as well

12  as members of the military, on a wide spectrum of issues over which the attorneys have no

13  policymaking or decision-making authority whatsoever.  Recognizing a heretofore unrecognized

14  cause of action against individual OLC attorneys in the vast arenas in which their legal advice is

15  requested but in which they have no policymaking, decision-making, supervisory or other

16  authority would result in "difficulty in defining a workable cause of action," which is precisely

17  one of the concerns the Supreme Court cited in *Wilkie* as counseling against the creation of a

18  Bivens action in that case.  *Wilkie*, 127 S. Ct. at 2601.

19

20    [14]  While the courts in *Sanchez-Espinoza* and *In re Iraq* dealt in particular with the danger

21  of foreigners using the courts to obstruct foreign policy, the nationality of a potential plaintiff
     does not control the special factors analysis in these circumstances.  United States citizens, no

22  less than foreigners, might use litigation against federal officers in their individual capacity rather

23  than the political process to oppose foreign policy initiatives to which those citizens object.  And
     a United States citizen who joins forces with al Qaeda may pose an even greater threat to this

24  country than a non-citizen.  *See Hamdi*, 542 U.S. at 519 (plurality opinion) ("There is no bar to
     this Nation's holding one of its own citizens as an enemy combatant . . . A citizen, no less than

25  an alien, can be part of or supporting forces hostile to the United States or coalition partners and

26  engaged in an armed conflict against the United States.") (citations and internal quotations
     omitted).

27

28                                               21

1    Moreover, implying a damages remedy here would create a paradoxical result: U.S.

2  soldiers fighting al Qaeda abroad are barred from bringing *Bivens* actions against military and

3  civilian officials for injuries arising out of their military service during this war, *see Stanley*, 483

4  U.S. at 682-83, while al Qaeda associates such as Padilla who find their way to U.S. soil would

5  be able to sue those military and civilian officials for their alleged injuries during this war.

6  Again, a principal reason no damages remedy should be created is because of the impact an

7  implied judicial remedy would have on military decision-making – an impact far greater if a suit

8  is allowed by al Qaeda associates than if such a remedy were given to U.S. military personnel.  It

9  would be paradoxical to provide an implied constitutional tort remedy to an avowed enemy of the

10  United States, who was found to represent a "continuing, present and grave danger to the national

11  security of the United States" and whose detention was found to be "necessary to prevent him

12  from aiding al Qaeda in its efforts to attack the United States or its armed forces, other

13  governmental personnel, or citizens," *see* June 9, 2002 Bush Letter, when that remedy has been

14  expressly denied to the military officers who are engaged in the fight against al Qaeda.  *See*

15  *Eisentrager*, 339 U.S. at 783 (rejecting an interpretation of the Fifth Amendment that would put

16  "enemy aliens in unlawful hostile action against [the United States] . . . in a more protected

17  position than our own soldiers," and stating that "[i]t would be a paradox indeed if what the

18  Amendment denied to Americans it guaranteed to enemies."); *In re Iraq*, 479 F. Supp. 2d at 106

19  n.22 ("The Court agrees with the defendants that creating a *Bivens* remedy for these plaintiffs

20  would result in an absurdity whereby remedies for constitutional violations that are denied our

21  service men and women by the decisions in *Stanley* and *Chappell* would be available to the very

22  enemies against whom those men and women risk their lives to defend our country's

23  sovereignty.").

24    This Court should decline Plaintiffs' request to confer a cause of action "on all of the

25  world except Americans engaged in defending it." *Eisentrager*, 339 U.S. at 784.  Given the

26  severe impact of creating a damages action for enemy combatants to use against federal officials

27

28

1    alleged to be responsible for their designation, detention, and treatment as enemy combatants,

2    Congress, not the Judiciary, is the appropriate branch to create any damages action in this

3    context. *Bush*, 462 U.S. at 380; *cf. Sosa*, 542 U.S. at 727-28. Congress, however, has not

4    created any such damages remedy. In fact, with respect to the issue of the interrogation and

5    treatment of military detainees, "Congress has twice issued legislation addressing detainee

6    treatment without creating a private cause of action for detainees injured by military officials."

7    *In re Iraq*, 479 F. Supp. 2d at 107 n.23 (citing Detainee Treatment Act, Pub. L. No. 109-148, 119

8    Stat. 2739 (2005), and Reagan Act, Pub. L. No. 108-375, 118 Stat. 1811, 2068-71 (2004)

9    (codified at 10 U.S.C. § 801, stat. note §§ 1091-92)). As the court explained in *In re Iraq*, the

10   absence of any provision for damages actions in this legislation is "some indication that

11   Congress' inaction in this regard has not been inadvertent." 479 F. Supp. 2d at 107 n.23.[15]

12       In sum, Plaintiffs propose a judicially-created remedy that would strike at the core

13   functions of the political branches, impacting the ability of Executive Branch and military

14   officials to seek and obtain unfettered legal analyses and advice for their use in decision-making,

15   thereby aiding our enemies and making the United States more vulnerable to terrorist attack.

16   There can be little doubt that accepting Plaintiffs' invitation to create a judicial damages remedy

17   for enemy combatants to use against U.S. officials and their attorney-advisors in their individual

18   capacity for alleged constitutional infirmities in their detention and treatment would be "a general

19   *Bivens* cure . . . worse than the disease." *Wilkie*, 127 S. Ct. at 2604. Accordingly, this Court

20   should dismiss all of Plaintiffs' constitutional damages claims as a matter of law.

21

22       [15]   Moreover, among the wide range of factors that may be considered by the Court in
23   determining whether a *Bivens* remedy is inappropriate here, *see Wilkie*, 127 S. Ct. at 2598, is the
     fact that Padilla had a congressionally-created habeas corpus remedy to challenge the fact of his
24   military detention, *see* 28 U.S.C. § 2241. As explained *infra* § II.B.3, Padilla has already
     exercised that remedy and has had judicial review in the form of a habeas petition of most if not
25   all of the constitutional challenges he raises in this matter. It would be especially inappropriate,
     given the concerns raised herein, to recognize some sort of implied further review in the form of
26   a damages claim against an individual federal employee.

27

28                                    23

1

**B.     Defendant Yoo Is Entitled To Qualified Immunity For All Of The Plaintiffs'**
         ***Bivens* Claims.**

2

Even if the Court does not find that special factors preclude the creation of the *Bivens*

3

remedy that Plaintiffs seek, Plaintiffs' constitutional claims should nonetheless be dismissed

4

because Defendant Yoo is entitled to qualified immunity.

5

**1.     The framework for the qualified immunity defense.**

6

Qualified immunity shields government officials who perform discretionary

7

governmental functions from civil liability so long as their conduct does not violate any "clearly

8

established statutory or constitutional rights of which a reasonable person would have known."

9

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity "provides ample protection

10

to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*,

11

475 U.S. 335, 341 (1986).  Qualified immunity is not merely a defense to liability.  It is intended

12

to afford sweeping protection to federal officials from the entirety of the litigation process.

13

Government officials are accorded qualified immunity "to shield them from undue interference

14

with their duties and from potentially disabling threats of liability."  *Harlow*, 457 U.S. at 806; *see*

15

*also Burns v. Reed*, 500 U.S. 478 (1991) (recognizing that prosecutors were entitled to qualified

16

immunity for advising police officers that they could interview a suspect under hypnosis).

17

Accordingly, the Supreme Court has repeatedly emphasized that an official's entitlement to

18

qualified immunity must be resolved at the earliest possible stage of the litigation and that

19

"discovery should not be allowed" until it is determined that the plaintiff has properly stated a

20

claim for the violation of a clearly established right.  *Harlow*, 457 U.S. at 818-19; *Crawford-El v.*

21

*Britton*, 523 U.S. 574, 598 (1998); *Anderson v. Creighton*, 483 U.S. 635, 647 n.6 (1987).

22

After a defendant asserts entitlement to qualified immunity, the burden shifts to the

23

plaintiff to show that qualified immunity is not appropriate.  The Ninth Circuit has recognized

24

that the determination of whether a defendant's actions are shielded by the defense of qualified

25

immunity requires a two-step inquiry:

26

27

28

Defendant John Yoo's Motion to Dismiss
C 08-00035 JSW

First, "taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right?" Second, the court must "ask whether the right was clearly established." "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer his conduct was unlawful in the situation he confronted."

*Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir. 2007), *petition for cert. filed*, 76 U.S.L.W. 3393 (Dec. 13, 2007) (No. 07-897) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In addition, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations," thus federal officers may only be subject to suit for constitutional violations if they are "directly responsible" for them. *Malesko*, 534 U.S. at 70-71. Respondeat superior is inapplicable to *Bivens* cases. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1990). Thus in order for Plaintiffs to establish a *Bivens* claim against Defendant Yoo, Plaintiffs must specify the particular acts taken by Yoo that violated the constitutional provisions on which Plaintiffs' claims rest. *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). Plaintiffs must establish Yoo's "integral participation" in the alleged unconstitutional conduct, *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996), and Plaintiffs must set forth the specific factual basis upon which they claim Yoo is liable, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

All of Plaintiffs' claims against Defendant Yoo fail as a matter of law because Plaintiffs have not alleged facts that establish that Yoo personally participated in the violation of Plaintiffs' constitutional rights. Moreover, seven of Plaintiffs' constitutional claims – Claims a-c and f-i (*see* Compl. ¶¶ 107.a-.c, .f-.i) – fail as a matter of law because these claims are explicitly precluded by the Fourth Circuit's prior rejection of Padilla's petition for a writ of habeas corpus.

1    Claims c-e (*see id.* ¶¶ 107.c-.e) are necessarily precluded to the extent they rely on Padilla being

2    held in isolation and incommunicado because these claims are also encompassed within the

3    Fourth Circuit's decision.  Claim d (*see id.* ¶ 107.d) also fails to allege a violation of Padilla's

4    rights under the Self-Incrimination Clause of the Fifth Amendment.  Claim b (*see id.* ¶ 107.b)

5    fails to allege a violation of Padilla's right of access to courts under the First and Fifth

6    Amendment.  And Claims c and d (*see id.* ¶ 107.c-.d) fail to allege a violation of any rights under

7    the Eighth Amendment.  To the extent that the above constitutional claims are not precluded by

8    Padilla's failed petition for habeas corpus, the claims fail nonetheless because his constitutional

9    claims were not "clearly established" at the time Padilla was designated and detained as an

10   enemy combatant.

11                    **2.      Plaintiffs have failed to establish that Defendant Yoo personally
                              participated in any violation of Plaintiffs' constitutional rights.**

12           The Supreme Court has recently recognized that the pronouncement of *Conley v. Gibson*,

13   355 U.S. 41, 45-46 (1957) – "that a complaint should not be dismissed . . . unless it appears

14   beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

15   entitle him to relief" – describes merely "the breadth of opportunity to prove what an adequate

16   complaint claims, *not the minimum standard of adequate pleading to govern a complaint's*

17   *survival.*"  *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (emphasis

18   added).  In *Twombly*, the Court clarified the level of specificity necessary for a complaint to

19   survive a motion to dismiss.  The Court stated that

20           a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"

21           requires more than labels and conclusions, and a formulaic recitation of the

22           elements of a cause of action will not do.  Factual allegations must be enough to

23           raise a right to relief above the speculative level, on the assumption that all the

24           allegations in the complaint are true (even if doubtful in fact).

25   *Id.* at 1964-65 (internal citations and quotations omitted); *see* 5 C. Wright & A. Miller, Federal

26

27

28                                                                   Defendant John Yoo's Motion to Dismiss
                                          26                         C 08-00035 JSW

1   Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain

2   something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

3   cognizable right of action").  Accordingly, the Court found, it is not sufficient for a plaintiff to

4   show merely that his or her claims are "conceivable," it must be shown that the complaint sets

5   forth facts establishing that the claims are actually "plausible."  *Twombly*, 127 S. Ct. at 1974.

6   Under this standard, Plaintiffs' Complaint does not meet the threshold requirement of sufficiently

7   alleging the personal participation of Defendant Yoo in Padilla's designation, detention, or

8   treatment as an enemy combatant.

9        The personal participation inquiry for the qualified immunity defense "must be

10  individualized and focus on the duties and responsibilities of each individual defendant whose

11  acts or omissions are alleged to have caused a constitutional deprivation."  *Leer v. Murphy*, 844

12  F.2d 628, 633 (9th Cir. 1988).  Here, Plaintiffs do not allege that Defendant Yoo had any direct

13  personal involvement in or control over Padilla's designation as an enemy combatant, his

14  military detention pursuant to that designation, or the interrogation and conditions of

15  confinement he was subjected to during his detention.  Nor do Plaintiffs allege that Defendant

16  Yoo had any supervisory or other responsibility for anyone who had direct personal involvement

17  in Padilla's designation and detention as an enemy combatant, his interrogation, or the conditions

18  of his confinement.  In fact, Yoo is not even alleged to have had the discretion or authority to

19  have ordered any of the unconstitutional conduct alleged in Plaintiffs' Complaint, nor even to

20  have exercised any form of control or responsibility over those who did.[16]  The *sole* basis alleged

21  by Plaintiffs for holding Yoo personally responsible for their claimed injuries is Yoo's claimed

22  authorship of four legal opinions that purportedly were relied upon by others to decide whether to

23

---

24      [16]  To the extent that Plaintiffs suggest in a conclusory manner that Defendant Yoo had
    such authority, discretion, control, and/or responsibility, *see* Compl. ¶¶ 3, 65, 99, such allegations
25  are insufficient under *Twombly.  See Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257
    (9th Cir. 1997) (recognizing that vague and conclusory allegations of official participation in
26  civil rights violations are not sufficient to withstand a motion to dismiss).

27

28                              27

designate and detain Padilla as an enemy combatant and under what conditions to do so.  *See*
Compl. ¶¶ 53-59, 63, 93-102.  However, even a cursory review of the legal opinions cited in the
Complaint makes it clear that they provide no basis whatsoever to impose personal liability on
Defendant Yoo.

While Plaintiffs allege "upon information and belief" that all four of the legal opinions
they cite were "created" by Defendant Yoo, *see* Compl. ¶ 20, Yoo's name only appears on one of
the opinions, where he is listed as a co-author.  *See* Compl. Exh. C at 1.  The headings of the
opinions indicate that one was issued directly from OLC and three were issued through the
Office of the Assistant Attorney General.  *See* Compl. Exhs. C-F.  Two opinions are signed by
Jay S. Bybee, former Assistant Attorney General in OLC and Mr. Yoo's direct supervisor, *see*
Compl. Exh. D at 1, Exh. E at 1; one opinion is unsigned and has no identified author, *see*
Compl. Exh. F.

Regardless of who "created" and issued these four opinions, none of the opinions address
a subject matter that is applicable to any aspect of Padilla's designation, detention, or treatment
as an enemy combatant.  The four opinions – which were prepared in response to specific
inquiries directed to OLC from the Department of Defense and/or the Counsel to the President,
*see* Compl. Exh. C at 2, Exh. D at 2, Exh. E at 2, Exh. F at 2 – offer analyses by OLC of whether
and how specific international treaties, U.S. statutes, and/or U.S. constitutional principles apply
to the detention and interrogation of persons captured by U.S. Armed Forces *outside the United
States*.  The January 9, 2002, and January 22, 2002, opinions are both titled "Application of
Treaties and Laws to al Qaeda and Taliban Detainees."  These opinions analyze the question of
whether and how international treaties, as incorporated by federal laws, and customary
international law apply to the conditions of detention and procedures for trial of members of al
Qaeda and the Taliban militia who came under U.S. control in Afghanistan, either through
capture by the military or transfer from our allies.  *See* Compl. Exh. C at 1-2, Exh. D at 1-2.
Padilla, however, does not claim the benefit of any of the instruments of international law that

1   were the focus of these two opinions.  Nor, more importantly, was Padilla captured in

2   Afghanistan by U.S. Armed Forces or their allies; he was arrested on U.S. soil.  *See* Compl. ¶ 13.

3        The February 26, 2002 opinion is titled "Potential Legal Constraints to Interrogations of

4   Persons Captured by U.S. Armed Forces in Afghanistan."  *See* Compl. Exh. E at 1.  The primary

5   focus of the February 26 opinion is on whether the rule of *Miranda v. Arizona* applies to

6   interrogations of suspected enemy combatants captured in Afghanistan.  *See id.* at 2.  As

7   previously mentioned, Padilla was not captured in Afghanistan.  Nor can he logically argue that

8   he ever suffered even any indirect violation of his Fifth Amendment rights stemming from the

9   opinion.  As explained *infra* § II.B.3.d., the Miranda rule was never implicated as to Padilla

10   because he does not allege that statements obtained from him in military interrogation were

11   offered against him in his criminal prosecution.

12        Lastly, the August 1, 2002 opinion is titled "Standards of Conduct for Interrogation under

13   18 U.S.C. §§ 2340-2340A."  *See* Compl. Exh. F at 1.  The focus of the August 1 opinion is on 18

14   U.S.C. §§ 2340-2340A, which makes it a criminal offense for any person *outside* of the United

15   States to commit or attempt to commit torture.  The opinion does not purport to reach

16   interrogations of suspected enemy combatants *inside* the United States.  *See* Compl. Exh. F at 1.

17   According to Plaintiffs' own allegations, Padilla's interrogation and the alleged mistreatment that

18   occurred during that interrogation took place entirely on U.S. soil.  *See* Compl. ¶ 10.

19        None of the four opinions, moreover, recommends that any U.S. official take or refrain

20   from taking any particular course of action towards Jose Padilla or anyone else, let alone directs

21   that any action to be taken.  The January 9 and 22 opinions explicitly state that they are not

22   expressing any view on the policy decision that the President might make with respect to the

23   legal issues analyzed in the opinions.[17]  Although these opinions conclude that members of al

24

25       [17]  *See* Compl. Exh. C at 1 ("This memorandum expresses no view as to whether the

26   President should decide, as a matter of policy, that the U.S. Armed Forces should adhere to the

                                        (continued...)

27

28                            29                          Defendant John Yoo's Motion to Dismiss
                                                           C 08-00035 JSW

1  Qaeda and the Taliban militia are not entitled to the protections of the Geneva Convention, the

2  opinions leave it to the President to decide whether, as a matter of policy, the protections of the

3  convention should nonetheless be extended to these categories of enemy combatants.  *See*

4  Compl. Exh. C at 1, Exh. D at 1.  The January 9 opinion concludes that while customary

5  international law has no binding legal effect on the President or the military, "the President, as

6  the Commander in Chief, has the constitutional authority to impose the customary laws of war on

7  both the al Qaeda and Taliban groups and the U.S. Armed Forces."  *See* Compl. Exh. C at 42.  In

8  fact, the *only* mention of Padilla in any of the opinions occurs in the August 1, 2002 opinion,

9  where it is noted that information obtained through interrogations of captured al Qaeda

10  operatives purportedly led to Padilla's arrest in the United States.  *See* Compl. Exh. F at 33.  The

11  August 1 opinion was not in any way discussing the legalities of Padilla's arrest, detention, or

12  interrogation.

13       As the Supreme Court recognized in *Twombly*, it is not enough for Plaintiffs to state

14  claims that are merely "conceivable," Plaintiffs must state sufficient facts to establish that their

15  claims are actually "plausible."  127 S. Ct. at 1974.  Plaintiffs, however, offer nothing in their

16  Complaint that bridges the plausibility gap between a plain reading of the four opinions they cite

17  and the level of personal liability Plaintiffs seek to impose on Defendant Yoo.  Plaintiffs assert in

18  a conclusory fashion that Yoo prepared the opinions knowing that they would be transmitted to

19  senior government officials and "would be relied upon by military and intelligence officials in

20  formulating and implementing programs of confinement and interrogation for suspected 'enemy

21  combatants.'" *See* Compl. ¶ 53.  Plaintiffs also assert in conclusory fashion that "senior

22  government officials, upon information and belief," relying upon the legal opinions allegedly

23  prepared by Defendant Yoo, "approved for use on suspected 'enemy combatants'" interrogation

24

25       [17](...continued)

26  standards of conduct in those treaties with respect to the treatment or prisoners."); Exh. D at 1
    (same)

27

Defendant John Yoo's Motion to Dismiss
C 08-00035 JSW

techniques, "many of which were also applied to Mr. Padilla during his detention at the Brig."

*See* Compl. ¶ 56.  This argument, however, is unavailing.  Even if Yoo can be held personally

responsible for the manner in which other government officials chose as a matter of policy to

implement these legal analyses, his responsibility is clearly circumscribed by the limits of the

analyses.  The January 9, January 22, and February 26 opinions were expressly limited to the

treatment of al Qaeda and Taliban militants captured in Afghanistan.  The August 1 opinion was

expressly limited to a criminal statute that applies to conduct occurring outside of the United

States.  Padilla did not fall within the category of persons with which the four opinions were

concerned.  Even if the opinions reached incorrect legal conclusions as to the applicability of

certain treaties, statutes, and/or constitutional principles to detainees outside of the United States,

nothing in the opinions remotely purports to authorize or recommend the taking of any action

towards Padilla.

Reduced to its core, Plaintiffs' argument for imposing personal responsibility on Yoo is

based on an obviously erroneous and illogical premise.  The gist of Plaintiffs' position is that

when Yoo offered these legal opinions concerning the scope of specific international treaties,

federal statutes, and constitutional principles in regard to particular categories of enemies of the

United States under particular circumstances, his actions were tantamount to providing legal

authorization and sanction for other officials to engage in any conduct not specifically prohibited

by his interpretation of the provisions even in regard to circumstances outside the express limits

of his analysis.  There is no support for such an absurd approach under the qualified immunity

doctrine.  It is simply not plausible to suggest that Defendant Yoo knew or should have known

that legal opinions he prepared, which were specifically limited to the detention and treatment of

persons captured by the U.S. military outside of the United States, would be used to authorize or

justify the detention or particular aspects of the treatment of someone arrested in the United

States.  Moreover, Plaintiffs themselves plead that numerous independent actors who did have

decision-making authority – none of whom are alleged to have been supervised, directed, or

Defendant John Yoo's Motion to Dismiss
C 08-00035 JSW

1   controlled in any way by Yoo – made policy decisions allegedly considering the advice of Yoo,

2   among others who were higher in Justice Department hierarchy.[18]  Under these circumstances, it

3   defies both law and logic to hold Yoo personally responsible for the eventual use to which these

4   legal analyses – which were unrelated to Jose Padilla – were supposedly put by others who in

5   turn exercised their own judgment and discretion in determining whether to designate Padilla as

6   an enemy combatant, and when and by what means to detain and interrogate him.  Plaintiffs

7   assert no plausible basis for imposing such personal responsibility on Yoo.

8        **3.**       **Plaintiffs have not alleged a violation of any constitutional rights.**

9        Although Plaintiffs have not sufficiently alleged the personal participation of Defendant

10  Yoo in a violation of any of Plaintiffs' purported constitutional rights, most if not all[19] of

11  Plaintiffs' claims still fail as a matter of law.

12        a.   <u>The Fourth Circuit's rejection of Padilla's petition for a writ of
             habeas corpus precludes all of Plaintiffs' constitutional claims
13           related to Padilla's designation and detention as an enemy
             combatant, as well as those claims related to his interrogation or
14           treatment that flow from his isolation and being held
             incommunicado.</u>

15

16  Padilla claims that his designation as an enemy combatant and his subsequent detention

17  as such violated various constitutional rights.  However, the Fourth Circuit's rejection of

    Padilla's petition for a writ of habeas corpus necessarily included a determination that seven of

18  the constitutional rights claimed by Padilla in this case – Claims a-c and f-i, *see* Compl. ¶¶ 107.a-

19  .c, .f-.i – were not violated by Padilla's designation and detention as an enemy combatant. In

20  addition, to the extent that Padilla's constitutional claims concerning his interrogation and

21  treatment – Claims c-e, *see id.* ¶¶ 107.c-.e – relate to Padilla being held in isolation and

22

23

24      [18]  *See*, *e.g.*, Compl. ¶ 20.a-.d (Department of Defense General Counsel and the Counsel
    to the President); *id.* ¶¶ 15-16, 98 (former Attorney General John Ashcroft); *id.* ¶¶ 17, 96
25  (President Bush); *id.* ¶¶ 55-59, 63 (Defense Department officials who created policies regarding
    the detention and interrogation of Padilla and other enemy combatants).

26

27      [19]  *See infra* n. 25.

28

1  incommunicado, those claims must be dismissed as well because they are necessarily

2  encompassed within the Fourth Circuit's decision.

3          On July 2, 2004, Padilla filed a petition for a writ of habeas corpus in the United States

4  District Court for the District of South Carolina.  *See Padilla I*, 389 F. Supp. 2d 678, 682  (D.

5  S.C. 2005), *rev'd*, *Padilla II*, 423 F.3d 386 (4th Cir. 2005), *cert. denied*, 547 U.S. 1062 (2006).

6  Padilla claimed that his military detention as an enemy combatant without criminal charge

7  violated the Fourth, Fifth and Sixth Amendments.  *Padilla I*, 389 F. Supp. 2d at 692 n.1.

8  Specifically, Padilla alleged that

9          •       he was "incarcerated and unlawfully held" at the Consolidated Naval Brig in

10                 South Carolina;

11         •       he had not been given "fair notice of the Government's case against him" and

12                 had been given "no opportunity to be heard by a neutral decision maker to

13                 contest the factual grounds for his imprisonment";

14         •       he was entitled to an evidentiary hearing on the factual allegations underlying his

15                 designation as an "enemy combatant;"

16         •       he "unquestionably ha[d] the right to access to counsel;" and

17         •       his "ongoing interrogation" "throughout two years of incommunicado detention"

18                 "violate[d] his rights under the Fifth, Sixth and Eighth Amendments to the U.S.

19                 Constitution, including the rights against self-incrimination, the right to counsel,

20                 the right not to be subject to cruel or unusual punishment, and substantive and

21                 procedural due process."

22  *See* Petition for Writ of Habeas Corpus *filed in Padilla v. Hanft*, No. 04-2221-HFF-RSC (D.

23  S.C.) ("Petition for Writ of Habeas Corpus") at ¶¶ 1, 3, 15, 27-29, 32.  Padilla also sought an

24  order requiring the government to cease all interrogation of him while his petition was pending.

25  *Id.* at Prayer For Relief No. 4.  The district court granted Padilla's petition, finding that the

26  President did not have the authority to detain Padilla as an enemy combatant.  *Padilla I*, 389 F.

27

28                                         33

1   Supp. 2d at 688-692.  This decision, however, was reversed by the Fourth Circuit in *Padilla II*.

2       In *Padilla II*, the Fourth Circuit held that the President possessed authority, pursuant to

3   the AUMF, to designate Padilla as an enemy combatant and to detain him in military custody as

4   such.  423 F.3d at 389, 397.  After finding that Padilla qualified as an enemy combatant under the

5   definitions adopted by the Supreme Court in *Ex parte Quirin*, 317 U.S. 1 (1942), and *Hamdi v.*

6   *Rumsfeld*, 542 U.S. 507 (2004), the Fourth Circuit declared that "[Padilla's] military detention as

7   an enemy combatant by the President is unquestionably authorized by the AUMF as a

8   fundamental incident to the President's prosecution of the war against al Qaeda in Afghanistan."

9   *Padilla II*, 423 F.3d at 392.  The Fourth Circuit recognized that the AUMF

10          provided the President all powers necessary and appropriate to protect American

11          citizens from terrorist acts by those who attacked the United States on September

12          11, 2001.  As would be expected, and as the Supreme Court has held, those

13          powers include the power to detain identified and committed enemies such as

14          Padilla, who associated with al Qaeda and the Taliban regime, who took up arms

15          against this Nation in its war against these enemies, *and* who entered the United

16          States for the avowed purpose of further prosecuting that war by attacking

17          American citizens and targets on our own soil . . . .

18  *Id.* at 397.  While the Fourth Circuit acknowledged that Padilla could not be detained

19  indefinitely, the Court found that his detention had not exceeded the duration authorized by the

20  AUMF because the United States remains engaged in the conflict with al Qaeda in Afghanistan.

21  *Id.* at 393 n.3 (citing *Hamdi*, 542 U.S. at 520-521).

22      The doctrine of collateral estoppel prevents Padilla from relitigating issues of fact or law

23  that were actually and necessarily decided in prior federal litigation in which Padilla had a full

24  and fair opportunity to litigate the issues.  *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996).

25  The doctrine applies where: (1) the issue at stake is identical to the one alleged in the prior

26  litigation; (2) the issue was actually litigated in the prior litigation by the party against whom

27

28                                  34

1    preclusion is asserted; and (3) the determination of the issue in the prior litigation was a critical

2    and necessary part of the judgment in the earlier action.  *Id*.  Under the collateral estoppel

3    doctrine, any claim raised by Padilla in this case that is encompassed by issues of fact or law that

4    were actually litigated and necessarily decided against him in a prior federal proceeding is

5    precluded. [20]

6         There is no question that Padilla has raised, and the Fourth Circuit has rejected, the

7    majority if not the entirety of the claims that are the subject of this litigation.  In recognizing that

8    the President had the authority to designate Padilla as an enemy combatant and to detain him in

9    military custody as such, the Fourth Circuit in *Padilla II* decided all of the issues of fact and law

10   raised in Padilla's petition for habeas corpus.  *See Padilla I*, 389 F. Supp. 2d at 679 n.1.  The

11   issues raised in Padilla's petition for habeas corpus and necessarily decided against Padilla by the

12   Fourth Circuit in *Padilla II* encompass Claims a, b, c, h, and i of the Complaint, which relate to

13   Padilla's designation and detention as an enemy combatant.  *Compare Padilla I*, 389 F. Supp. 2d

14   at 692 n.1 *and* Petition for Writ of Habeas Corpus at ¶¶ 1, 3, 15, 27-29, 32 *with* Compl. ¶¶ 107.a-

15   .c, .h, and .i.  Therefore, these claims are precluded by *Padilla II*.  To the extent that Claims c, d,

16   and e, which relate to Padilla's interrogation, rely upon the alleged coercive effect of his being

17   detained and held incommunicado, these claims are similarly precluded because they were also

18   explicitly raised by Padilla in his habeas petition and necessarily rejected by the Fourth Circuit.

19   *See* Petition for Writ of Habeas Corpus at ¶ 32; Compl. ¶¶ 107.c-.e.

20        Moreover, *Padilla II* also bars those constitutional claims that Padilla did not explicitly

21   raise in his habeas petition but which flow from the determination that he was properly held in

22

23

24        [20] The Supreme Court has specifically recognized in the criminal context that a prisoner
     cannot bringing a constitutional tort action that effectively challenges the legality of his criminal
25   conviction without first overturning the conviction on direct appeal or through habeas corpus
     proceedings.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  The same logic applies in
26   this case to preclude Padilla's constitutional tort challenge to his designation and detention as an
     enemy combatant, which was upheld in his prior habeas corpus challenge.

27

28                                    Defendant John Yoo's Motion to Dismiss
                          35          C 08-00035 JSW

1    isolation and incommunicado. Padilla specifically alleged in his habeas petition that he was

2    being held "incommunicado." *See* Petition for Habeas Corpus at ¶ 32.[21]  However, in denying

3    Padilla's habeas petition, the Fourth Circuit recognized that inherent in the authority to detain a

4    designated enemy combatant such as Padilla for the duration of active hostilities is the ability –

5    and the necessity – of detaining the enemy combatant in isolation with limited if any opportunity

6    to communicate with the outside word. In this regard, the Fourth Circuit found that the detention

7    of designated enemy combatants serves three equally important purposes: 1) preventing the

8    detainee from returning to the field of battle; 2) facilitating the process of gathering intelligence

9    from the detainee; and 3) "restrict[ing] the detainee's communication with confederates so as to

10    ensure that the detainee does not pose a continuing threat to national security even as he is

11    confined." *Padilla II*, 423 F.3d at 395.  It is these considerations, the Fourth Circuit found, that

12    make "military detention not only an appropriate, but also the necessary, course of action to be

13    taken in the interest of national security." *Id*.  Thus *Padilla II* is also dispositive of those

14    constitutional claims asserted by Padilla in Claims f and g, *see* Compl. ¶¶ 107.f-.g, that are based

15    upon his being held incommunicado – *i.e.*, in near or total isolation from his family, *see id.* ¶¶ 1,

16    23-25, 28; and from outside sources of information such as radio, television, and reading

17    materials, *see id*. ¶¶ 33-34 – whether or not they were explicitly relied upon by Padilla in his

18    habeas petition.[22]

19            b.     <u>Padilla has not stated a violation of the right of access to courts.</u>

20

---

21       [21] *See also Padilla ex rel. Newman v. Bush*, 233 F. Supp. 2d 564, 574 (S.D.N.Y. 2002)

22    ("It is not disputed that Padilla is held incommunicado, and specifically that he has not been
permitted to consult with Newman or any other counsel"), *remanded*, *Padilla v. Rumsfeld*, 352

23    F.3d 695 (2d Cir. 2003), *reversed sub nom.*, *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

24       [22] *Padilla II* is similarly dispositive of Plaintiff Lebron's First Amendment right of

25    association claim, which is premised upon the allegation that Lebron was denied "virtually all
contact with her son" during his detention as an enemy combatant. *See* Compl. ¶ 108.

26    Moreover, it cannot be said, in light of *Padilla II*, that Lebron had a clearly established right to
have contact with Padilla during his detention as an enemy combatant. *See infra* § III.B.4.

27

28                         36

1    Whether or not the Fourth Circuit's decision is preclusive, an additional reason why

2  Padilla has not stated a violation of the right of access to the courts in Claim b is that Padilla has

3  not identified a claim of any sort that he was unable to bring in the past because of any actions by

4  Defendant Yoo.  The Supreme Court has recognized that constitutional claims for denial of the

5  right of access to court generally fall into two categories:

6        In the first are claims that systemic official action frustrates a plaintiff or plaintiff

7        class in preparing and filing suits at the present time. . . . The second category

8        covers claims not in aid of a class of suits yet to be litigated, but of specific cases

9        that cannot now be tried (or tried with all material evidence), no matter what

10       official action may be in the future.

11  *Christopher v. Harbury*, 536 U.S. 403, 412-14 (2002).  The Court has recognized that the right of

12  access to courts is ancillary to the underlying claim, without which a plaintiff cannot have

13  suffered injury by being shut out of court.  *Id.* at 414-15.  Thus, to state a denial of access to

14  courts claim, a plaintiff must allege both: (1) a "nonfrivolous, arguable" underlying claim, and

15  (2) official acts frustrating litigation of the claim.  *Id.* at 415.

16      Nowhere in Plaintiffs' Complaint do they identify a claim of any sort that Padilla was

17  unable to bring in the past because of the actions of Defendant Yoo.  The only past claim referred

18  to in the Complaint is a petition for a writ of habeas corpus, *see* Compl. ¶ 27, which Padilla did

19  in fact bring and lose, *see Padilla II*, 423 F.3d 386 (4th Cir. 2005), *cert. denied*, 547 U.S. 1062

20  (2006).  Padilla does not identify any claim that Defendant Yoo's actions prevented or are

21  preventing him from pursuing.[23]

22        c.    Padilla has not stated a violation of any rights under the Eighth

23

24    [23] Similarly, Padilla cannot premise his right of access claim on the Habeas Suspension
Clause, *see* Compl. ¶¶ 107.b, .h, because Padilla has not been denied the opportunity to pursue a
25  writ of habeas corpus.  Moreover, that argument was raised in Padilla's petition for habeas
corpus, *see* Petition for Writ of Habeas Corpus at ¶ 21, and rejected by the Fourth Circuit, *see*
26  *Padilla II*, 423 F.3d at 386.

27

28                                    Defendant John Yoo's Motion to Dismiss
                        37                 C 08-00035 JSW

Amendment.

Even if the Fourth Circuit's decision is not preclusive of Padilla's Eighth Amendment claims in Claims c and d, an additional reason why Padilla has not stated a violation of his Eighth Amendment rights is that it is well established that the Eighth Amendment does not apply unless there has been a criminal conviction.  *See Ingraham v. Wright*, 430 U.S. 651, 667-68, 671 n.40 (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").  Padilla makes no allegation that any of the mistreatment he was allegedly subjected to occurred in connection with any criminal proceedings against him.  In fact, Padilla specifically alleges that he was held in military custody "with[out] criminal charge." Compl. ¶ 18.

        d.    <u>Padilla has not stated a violation of the Fifth Amendment right against self-incrimination.</u>

Whether or not the Fourth Circuit's decision is preclusive, Padilla's allegation that Defendant Yoo violated his right to be free from "coercive and involuntary custodial interrogation," asserted in Claim d under the Self-Incrimination Clause of the Fifth Amendment, *see* Compl. ¶ 107.d, fails because Padilla does not allege that he made any incriminating statements.  There can be no violation of the right against self-incrimination unless an incriminating statement has been made.  *Fisher v. United States*, 425 U.S. 391, 408 (1976) (stating that the Fifth Amendment privilege "applies only when the accused is compelled to make a Testimonial Communication that is incriminating").  Moreover, the Fifth Amendment right against self-incrimination is a *trial* right.  *Withrow v. Williams*, 507 U.S. 680, 691 (1993).  "Only after a compelled incriminating statement is used in a criminal proceeding has an accused suffered the requisite constitutional injury . . ." *Aguilera v. Baca*, 510 F.3d 1161, 1173 (9th Cir. 2007) (rejecting plaintiffs' Fifth Amendment self-incrimination claim because plaintiffs were

1    never charged with a crime and no incriminating use of their statements was made).[24]  Nowhere

2    does Padilla allege that an incriminating statement he made while held as an enemy combatant

3    was used against him in a trial.[25]

4              **4.    To the extent that Plaintiffs have alleged the violation of any
                        constitutional rights related to Padilla's designation, detention, and
5                       interrogation as an enemy combatant, those rights were not clearly
                        established at the time of the events alleged in the Complaint.**

6         In order to show that the rights claimed in their Complaint were clearly established at the

7    time of Plaintiffs' alleged injury, Plaintiffs must show that a reasonable official in Defendant

8    Yoo's position would have understood that his or her individual conduct violated those rights.

9    *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *Saucier*, 533 U.S. at 200-02.

10   The constitutional rights that Plaintiffs assert in this case must have been clearly established in a

11   "particularized, and hence more relevant, sense," at the time of Defendant Yoo's alleged actions.

12   *Anderson*, 483 U.S. at 640.  "[I]n light of the pre-existing law the unlawfulness" of Yoo's

13   conduct must have been "apparent."  *Id.*  When Plaintiffs' constitutional claims are considered

14   under this demanding standard, it is evident that Plaintiffs have not met their burden.

15        Defendant Yoo is aware of no case in which a federal court has afforded the

16   constitutional protections Plaintiffs seek in this case to an enemy combatant.  To the contrary, in

17

18        [24]  *See also Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion) (finding no
19   violation of the Fifth Amendment's Self-incrimination Clause where the plaintiff's statements
     were never admitted as testimony against him in a criminal case; stating that "The text of the
20   Self-Incrimination Clause simply cannot support the [] view that the mere use of compulsory
     questioning, without more, violates the Constitution."); *id.* at 777-78 (Souter, J., concurring)
21   (finding that plaintiff could not make the "powerful showing" necessary to expand the protection
     of the privilege against self-incrimination to the point of holding that coercive questioning alone
22   was a "completed violation" of the Fifth and Fourteenth Amendments).

23
     [25]  At the motion to dismiss stage, qualified immunity *might* not preclude certain free-
24   standing constitutional claims such as a particular allegation by Padilla of the denial of medical
     care, if the claims were alleged with particularity and adequately pled the personal participation
25   of a given defendant.  However, because Plaintiffs have neither specifically outlined the
     parameters of such a claim nor alleged facts to support the personal participation of Defendant
26   Yoo in such a claim, it would not survive as to him.

27
                                                              Defendant John Yoo's Motion to Dismiss
28                              39                            C 08-00035 JSW

1  a recent and closely analogous case, the Supreme Court held that the AUMF authorized the

2  military detention of an American citizen, Yaser Hamdi, who was captured in Afghanistan,

3  designated as an enemy combatant, and subsequently detained in military custody on U.S. soil.

4  *See Hamdi*, 542 U.S. at 518-22 (plurality opinion).  The Court specifically recognized that

5  "[t]here is no bar to this Nation's holding one of its own citizens as an enemy combatant."  *Id.* at

6  519.  Moreover, *Padilla II* also addresses Padilla's designation and detention claims and most if

7  not all of his interrogation and treatment claims, and there is no other closely analogous

8  precedent that could clearly establish any claim Plaintiffs assert.  *Hamdi* and *Padilla II* support

9  Defendant Yoo's position that even if Plaintiffs have sufficiently alleged Defendant Yoo's

10 personal participation in Padilla's designation, detention, and treatment as an enemy combatant,

11 which they have not, there was no violation of Padilla's clearly established constitutional rights.

12     To the extent that Plaintiffs would argue that their claims fall outside the reach of *Hamdi*

13 because Padilla was captured on U.S. soil while Hamdi was captured on foreign soil, this

14 argument should be rejected.  As the Fourth Circuit concluded in *Padilla II*, the reasoning in

15 *Hamdi* does not support a distinction between Padilla's detention and Hamdi's detention based

16 upon where they were captured.  The court observed that while the plurality in *Hamdi* limited its

17 opinion, it did not do so

18     in a way that leaves room for argument that the President's power to detain one

19     who has associated with the enemy and taken up arms against the United States in

20     a foreign combat zone varies depending upon the geographic location where that

21     enemy combatant happens to be captured.

22 *Padilla II*, 423 F.3d at 394.

23     Moreover, courts have recognized that only infrequently will the law be "clearly

24 established" for purposes of qualified immunity where the relevant inquiry "requires a

25 particularized balancing that is subtle, difficult to apply, and not yet well-defined."  *DiMeglio v.*

26

27

28          40

1    *Haines*, 45 F.3d 790, 806 (4th Cir. 1995) (internal quotations and citations omitted).[26]  The

2    determination of whether the rights Padilla asserts in this case were clearly established at the time

3    of Defendant Yoo's alleged actions requires a careful balancing that considers Padilla's rights as

4    an American citizen and the Executive Branch's authority to conduct war, protect national

5    security, and formulate foreign policy.  Such a balance is inherently "subtle" and "difficult to

6    apply."  And the most recent and closely analogous cases in which courts have attempted to

7    define this balance – *Hamdi* and *Padilla II* – both make clear that the rights Padilla claims in this

8    case were not clearly established at the time of Defendant Yoo's alleged actions.

9    **III.    PADILLA HAS NOT STATED A CLAIM UNDER THE RELIGIOUS FREEDOM RESTORATION ACT.**

10           Padilla alleges that he was denied his right to the free exercise of his religion as protected

11   by the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*.  *See* Compl. ¶

12   107.e (Claim e).  RFRA "suspends generally applicable federal laws that substantially burden a

13   person's exercise of religion unless the laws are "the least restrictive means of furthering [a]

14   compelling governmental interest."  *United States v. Antoine,* 318 F.3d 919, 920 (9th Cir. 2003)

15   (quoting 42 U.S.C. § 2000bb-1(a)-(b)).  Padilla's purported RFRA claim fails as a matter of law

16   for three independent and alternative reasons.  First, Padilla does not allege Defendant Yoo

17   personally participated in any acts that substantially burdened Padilla's ability to exercise his

18   religion.  Second, RFRA does not create a cause of action against Defendant Yoo in his

19   individual capacity.  Third, even if such a cause of action is allowed under RFRA, Defendant

20   Yoo is entitled to qualified immunity.

21

22

23           [26] *See*, *e.g.*, *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992)
24   ("In determining whether the law was clearly established, we bear in mind that allegations of
     constitutional violations that require courts to balance competing interests may make it more
25   difficult to find the law 'clearly established' when assessing claims of qualified immunity." );
     *Borucki v. Ryan,* 827 F.2d 836, 848 (1st Cir. 1987) ("[W]hen the law requires a balancing of
26   competing interests, . . . it may be unfair to charge an official with knowledge of the law in the
     absence of a previously decided case with clearly analogous facts." ) (footnote omitted).

27

28                                         41

**A.     Padilla Has Failed To Establish That Defendant Yoo Personally Participated In Any Conduct That Violated RFRA.**

All of Plaintiffs' claims against Defendant Yoo, including Padilla's RFRA claim, rest entirely upon Yoo's alleged creation of four legal opinions while he worked at the Office of Counsel.  As shown above, *see infra* § II.B.2, Padilla asserts no plausible basis for holding Yoo responsible for the purported eventual use to which these legal opinions were put by others over whom Yoo exercised no form of control or supervisory responsibility.  Moreover, none of the opinions concerned or even mentioned the scope or application of RFRA or the specific types of conduct Plaintiffs identify as violating Padilla's right to practice his religion.

**B.     RFRA Does Not Create A Cause Of Action Against Defendant Yoo In His Individual Capacity.**

The threshold inquiry for a RFRA claim is whether the challenged governmental action substantially burdens the exercise of sincerely-held religious beliefs.  *Antoine,* 318 F.3d at 920.  The burden of proving the existence of a substantial interference with the right of free exercise rests on the religious adherent.  *Worldwide Church of God v. Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1120 (9th Cir. 2000).  Only if such a substantial burden is proven must the government demonstrate that the compelling interest test is satisfied.  *Id.* at 1121 n.3.  RFRA provides that "[a] person whose religious exercise has been burdened . . . may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief *against a government*."  42 U.S.C. § 2000bb-1(c) (emphasis added).  This language does not provide for a cause of action against a government employee in his or her individual capacity.

Any interpretation of a statute begins with the text, *Campbell v. Allied Van Lines Inc.,* 410 F.3d 618, 620 (9th Cir. 2005), and the text of RFRA indicates that Congress has authorized suits against government entities, not individual government employees.  The phrase "appropriate relief against a government" would be an odd way for Congress to indicate that individual employees must pay money judgments from their personal assets, which is what Padilla seeks from Defendant Yoo here.  In common usage, the term "government" means an

1  entity, not an individual person employed by the government.  *See* Black's Law Dictionary 715

2  (8th ed. 2004) (noting that the term "government" "refers collectively to the political organs of a

3  country").  And taken as a whole, the phrase "appropriate relief against a government" would not

4  appear to encompass actions for money damages at all, as sovereign immunity generally prevents

5  money damages from being an "appropriate" form of relief to seek from a government.  *See Lane*

6  *v. Peña*, 518 U.S. 187, 192 (1996).

7         RFRA's definition of "government," read in proper context, does not change this

8  common sense construction.  RFRA defines "government" as "a branch, department, agency,

9  instrumentality, and official (or other person acting under color of law) of the United States, a

10 State, or a subdivision of a State."  42 U.S.C. § 2000bb-2(1).  In this definition, only the phrase

11 "official (or other person acting under color of law)" could conceivably implicate a government

12 employee in his or her individual capacity.  Careful analysis of this phrase, however, indicates

13 that it does not.  A plaintiff may seek judicial relief from a government employee in two different

14 capacities: "official capacity" and "individual capacity."  The term "official capacity" denotes a

15 suit nominally against an official, but in reality against the government itself, while "individual

16 capacity" denotes a suit against the officer personally.  *See Hafer v. Melo*, 502 U.S. 21, 25

17 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  RFRA's reference to "official," then, is

18 referring to the prospect of an official-capacity suit – a suit that, consistent with the preceding

19 text, would seek "relief against a government," 42 U.S.C. § 2000bb-1(c).

20        Nor does the residual phrase "other person acting under color of law" authorize individual

21 capacity suits.  When, as in this case, a list of specific terms ends with a reference to "other" such

22 items, the Supreme Court and the Ninth Circuit commonly turn to two canons of statutory

23 construction: *noscitur a sociis* and *ejusdem generis.  See, e.g.*, *Wash. State Dep't of Soc. &*

24 *Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383-85 (2003) (using canons to

25 limit scope of phrase "other legal process"); *Synagogue v. U.S.*, 482 F.3d 1058, 1064-64 (9th Cir.

26 2007) (using *ejusdem generis* canon to interpret law governing civil forfeiture proceedings).

27

28                                    43                        Defendant John Yoo's Motion to Dismiss
                                                               C 08-00035 JSW

1  According to the *noscitur a sociis* ("known by its associates") canon, "the meaning of an unclear

2  word or phrase should be determined by the words immediately surrounding it." *United States v.*

3  *Grisel*, 488 F.3d 844, 859 n.8 (9th Cir. 2007) (quoting *James v. United States*, 127 S. Ct. 1586,

4  1605 (2007) (Scalia, J., dissenting)).  The closely related *ejusdem generis* ("of the same class")

5  canon provides that where general words follow specific words in a statutory enumeration, the

6  general words are construed to embrace only objects similar in nature to those objects

7  enumerated by the preceding specific words.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105,

8  114-15 (2001) (quotations omitted); *In re Estate of Covington*, 450 F.3d 917, 922 (9th Cir.

9  2006).

10        As applied to the phrase "branch, department, agency, instrumentality, and official (or

11  other person acting under color of law)," these canons show that the definition of "government"

12  does not include government employees in their individual capacities.  Rather, it simply shows

13  that other persons acting under color of law will be considered the "government" with respect to

14  obtaining appropriate relief.  *Noscitur a sociis* indicates that the term "official" must be read in

15  context with the other terms on the list, all of which refer to government entities, not to

16  individual employees of such entities.  *Ejusdem generis* indicates that "other persons acting

17  under color of law" must be read in light of the specific terms that precede it.  All those specific

18  terms contemplate suits against government entities (either in name or by way of an official

19  capacity suit), not individual employees.

20        This interpretation of "official (or other persons acting under color of law)" finds support

21  in the Supreme Court's prior constructions of similar phrases.  *Cf. United States v. Sioux*, 362

22  F.3d 1241, 1246 (9th Cir. 2004) ("It is an elementary principle of statutory construction that

23  similar language in similar statutes should be interpreted similarly.").  For instance, 28 U.S.C. §

24  1391(e) (2000) provides for expanded venue and nationwide service of process in actions against

25  an "officer or employee" of the United States "acting in his official capacity or under color of

26  legal authority."  In *Stafford v. Briggs*, a *Bivens* action, the Court interpreted the term "officer or

27

28                                              44

Defendant John Yoo's Motion to Dismiss
C 08-00035 JSW

1    employee of the United States or any agency thereof acting in his official capacity or under color

2    of legal authority" to apply only to actions brought against federal employees in their official

3    capacity, not actions against employees in their individual capacity. 444 U.S. 527, 535-36 (1980)

4    (*construing* 28 U.S.C. § 1391(e)). *See also Micklus v. Carlson*, 632 F.2d 227, 240-41 (3d Cir.

5    1980). The Court reached this result over the plaintiff's argument that the phrase "official

6    capacity *or under color of legal authority*" (emphasis added) was intended to embrace individual

7    capacity suits in addition to official capacity suits. The Court noted that the phrase "or under

8    color of legal authority" could reasonably be read as describing the character of the defendant at

9    the time of the suit and, so read, limited § 1391(e)'s coverage to actions against a federal official

10    who was, at the time of the events giving rise to the suit, acting in an official way. *See Stafford*,

11    444 U.S. at 536.[27]

12    **C.    Even If A Cause Of Action Is Allowed, Defendant Yoo Is Entitled To
            Qualified Immunity.**

13

14    Even if Padilla has stated a RFRA claim against Defendant Yoo in his individual

15    capacity, Defendant Yoo is entitled to qualified immunity for three distinct reasons. First, as

16    explained *supra*, at the time of Yoo's alleged actions, it was not clearly established that RFRA

17    allowed for the cause of action Padilla asserts in this case because the Ninth Circuit had not

18    addressed the question of whether a cause of action against individual government employees is

19    ───────────────

        [27] In *Lepp v. Gonzales*, No. C-05-0566 VRW, 2005 WL 1867723, at *8 (N.D. Cal. Aug.
20    2, 2005), *aff'd sub. nom.*, *Harris v. Mukasey*, No. 05-16695, 2008 WL 194924 (9th Cir. Jan. 22,
       2008), Chief Judge Walker adopted the reasoning of *Jama v. INS*, 343 F. Supp. 2d 338 (D. N.J.
21    2004), which recognized that RFRA allows for individual capacity suits for money damages
       against federal officers. *Lepp*, however, was decided in 2005, two years after Defendant Yoo's
22    alleged involvement in Padilla's situation, *see* Compl. ¶ 12. Moreover, the Ninth Circuit has not
       specifically addressed the issue. Therefore, even if *Lepp* recognizes an individual capacity claim
23    under RFRA, it cannot be said that such a claim was clearly established at the time of the events
       alleged in the Complaint. For the reasons cited above, Defendant Yoo respectfully urges that any
24    suggestion that a cause of action under RFRA exists against individual government employees is
       in error. In any event, to the extent that Plaintiffs seek an equitable, non-damages claim under
25    RFRA, such a claim is barred against Defendant Yoo in his individual capacity as he is not a
       proper party for such a claim. *See supra* §§ I.A-.B.
26

27

28                                              45

1    available under RFRA.

2    Second, it was not clearly established in the Ninth Circuit that a RFRA claim can be

3    premised upon an intentionally discriminatory policy or practice, as opposed to a neutral policy

4    or practice of general applicability.  Padilla alleges that deliberate actions were taken to interfere

5    with and substantially burden his ability to practice his religion.  *See* Compl. ¶¶ 32, 34-6.  It is

6    not clearly established that such allegations state an actionable RFRA violation because courts

7    have held that RFRA covers only "neutral" laws that are "generally applicable" and which

8    adversely impact religious freedom.  *See Hartmann v. Stone*, 68 F.3d 973, 978 (6th Cir. 1995)

9    (holding that "if the regulations are not neutral and generally applicable, [the court] need not

10   address the [RFRA]"); *Omar v. Casterline*, 414 F. Supp. 2d 582, 594 (W.D. La. 2006) (finding

11   RFRA did not affect analysis of First Amendment free exercise claim that was not based on any

12   law of neutral applicability); *Larsen v. United States Navy*, 346 F. Supp. 2d 122, 137-38 (D.D.C.

13   2004) (holding that the plaintiffs' claims were "clearly outside the realm of the RFRA" because

14   the plaintiffs were challenging an "intentionally discriminatory policy" rather than a "neutral law

15   of general applicability").  The Ninth Circuit has not addressed this issue.[28]

16   Third, numerous circuits have recognized that where the existence of a right or the degree

17   of protection it warrants in a particular context is subject to a balancing test, the right can rarely

18   be considered "clearly established" in particular circumstances in the absence of closely

19   analogous factual and legal precedent that would have given a reasonable official fair warning as

20   to how that balance should have been struck in the particular case at hand.  *See, e.g.*, *DiMeglio*,

21   45 F.3d at 806 (recognizing that law applicable to constitutional inquiry which required "a

22   particularized balancing that is subtle, difficult to apply, and not yet well-defined" would "only

23   infrequently" be "clearly established" for purposes of qualified immunity); *Benson v. Allphin*,

24

25      [28]  Claims for such intentional discrimination would generally be cognizable under the

26   First Amendment.  However, as explained *supra*, special factors preclude the recognition of such

     a *Bivens* claim – which in any event would be barred by qualified immunity – here.

27

Defendant John Yoo's Motion to Dismiss
C 08-00035 JSW

1   786 F.2d 268, 276 (7th Cir. 1986) (stating that a constitutional rule that "involv[es] the balancing

2   of competing interests" is "so fact dependent that the 'law' can rarely be considered 'clearly

3   established'"); *Medina*, 960 F.2d at 1498; *Borucki*, 827 F.2d at 848.  RFRA was enacted to

4   ensure that after the Supreme Court's decision in *Employment Division, Department of Human*

5   *Resources v. Smith*, 494 U.S. 872 (1990), claims that government action impinged on the free

6   exercise of religion would still be analyzed under the fact-intensive balancing test of *Sherbert v.*

7   *Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972).  *See* 42 U.S.C. §

8   2000bb(b)(1).  A determination of Padilla's RFRA claims in this setting would require the Court

9   to balance the Executive Branch's authority to conduct war, protect national security, and

10  formulate foreign policy, with the interests set forth in RFRA – the burden imposed upon a

11  particular exercise of religion, the compelling governmental interest that justifies the burden, and

12  the restrictiveness of the means used to further that interest, *see* 42 U.S.C. § 2000bb-1(b)(1)-(2).

13  The most recent and closely analogous cases in which courts have attempted to define the

14  balance between the constitutional rights of an American citizen designated to be an enemy

15  combatant and the authority of the Executive Branch in the conduct of war, national security, and

16  foreign policy, make clear that any constitutional claims related to Padilla's designation,

17  detention, and interrogation as an enemy combatant were not clearly established at the time of the

18  Defendants' actions.  *See Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) (plurality opinion); *Padilla II*,

19  423 F.3d 386 (4th Cir. 2005).  Accordingly, to the extent that Plaintiffs' RFRA claim, which is

20  derived from the First Amendment, is based upon Padilla's designation, detention, or

21  interrogation as an enemy combatant, it cannot be said that Defendant Yoo would have been on

22  notice that his alleged conduct violated Padilla's rights under RFRA.

23          For all of these reasons, Defendant Yoo is entitled to qualified immunity for Padilla's

24  RFRA claim.

25

26

27

28

1

## <u>CONCLUSION</u>

2         For the reasons stated above, all of Plaintiffs' claims should be dismissed.

3    Dated: April 1, 2008

4

5                                          Respectfully submitted,

6                                          JEFFREY S. BUCHOLTZ
                                           Acting Assistant Attorney General
7
                                           C. FREDERICK BECKNER III
8                                          Deputy Assistant Attorney General

9                                          TIMOTHY P. GARREN
                                           Director Torts Branch
10                                         Civil Division

11                                         MARY HAMPTON MASON
                                           Senior Trial Attorney
12
                                            /S/
13                                         _____
                                           GLENN S. GREENE
                                           Trial Attorney
14                                         United States Department of Justice
                                           Torts Branch, Civil Division
15                                         P.O. Box 7146
                                           Ben Franklin Station
16                                         Washington, DC 20044
                                           Telephone:  (202) 616-4143
17                                         Facsimile:  (202) 616-4314
                                           E-mail: glenn.greene@usdoj.gov
18                                         *Attorneys for Defendant John Yoo*

19

20

21

22

23

24

25

26

27
                                           Defendant John Yoo's Motion to Dismiss
28                        48                C 08-00035 JSW