# Exhibit M



UNCLASSIFIED
~~SECRET//NOFORN~~



THE SECRETARY OF DEFENSE
1000 DEFENSE PENTAGON
WASHINGTON, DC 20301-1000

APR 1 6 2003

MEMORANDUM FOR THE COMMANDER, US SOUTHERN COMMAND

SUBJECT: Counter-Resistance Techniques in the War on Terrorism (S)

(U) (S/NF) I have considered the report of the Working Group that I directed be established on January 15, 2003.

(U) (S/NF) I approve the use of specified counter-resistance techniques, subject to the following:

(U) a. The techniques I authorize are those lettered A-X, set out at Tab A.

(U) b. These techniques must be used with all the safeguards described at Tab B.

(U) (S) c. Use of these techniques is limited to interrogations of unlawful combatants held at Guantanamo Bay, Cuba.

(U) (S) d. Prior to the use of these techniques, the Chairman of the Working Group on Detainee Interrogations in the Global War on Terrorism must brief you and your staff.

(U) (S/NF) I reiterate that US Armed Forces shall continue to treat detainees humanely and, to the extent appropriate and consistent with military necessity, in a manner consistent with the principles of the Geneva Conventions. In addition, if you intend to use techniques B, I, O, or X, you must specifically determine that military necessity requires its use and notify me in advance.

(U) (S/NF) If, in your view, you require additional interrogation techniques for a particular detainee, you should provide me, via the Chairman of the Joint Chiefs of Staff, a written request describing the proposed technique, recommended safeguards, and the rationale for applying it with an identified detainee.

(U) (S) Nothing in this memorandum in any way restricts your existing authority to maintain good order and discipline among detainees.

Attachments:
As stated

Declassified Under Authority of Executive Order 12958
Executive Secretary, Office of the Secretary of Defense
William P. Marriott, CAPT, USN
June 18, 2004

NOT RELEASABLE TO
FOREIGN NATIONALS

UNCLASSIFIED

Classified By: Secretary of Defense
Reason: 1.5(a)
Declassify On: 2 April 2013

# TAB A

## INTERROGATION TECHNIQUES

(U)
(S//NF) The use of techniques A - X is subject to the general safeguards as provided below as well as specific implementation guidelines to be provided by the appropriate authority. Specific implementation guidance with respect to techniques A - Q is provided in Army Field Manual 34-52. Further implementation guidance with respect to techniques R - X will need to be developed by the appropriate authority.

(U)
(S//NF) Of the techniques set forth below, the policy aspects of certain techniques should be considered to the extent those policy aspects reflect the views of other major U.S. partner nations. Where applicable, the description of the technique is annotated to include a summary of the policy issues that should be considered before application of the technique.

(U)
A. (S//NF) Direct: Asking straightforward questions.

(U)
B. (S//NF) Incentive/Removal of Incentive: Providing a reward or removing a privilege, above and beyond those that are required by the Geneva Convention, from detainees. [Caution: Other nations that believe that detainees are entitled to POW protections may consider that provision and retention of religious items (e.g., the Koran) are protected under international law (see, Geneva III, Article 34). Although the provisions of the Geneva Convention are not applicable to the interrogation of unlawful combatants, consideration should be given to these views prior to application of the technique.]

(U)
C. (S//NF) Emotional Love: Playing on the love a detainee has for an individual or group.

(U)
D. (S//NF) Emotional Hate: Playing on the hatred a detainee has for an individual or group.

(U)
E. (S//NF) Fear Up Harsh: Significantly increasing the fear level in a detainee.

(U)
F. (S//NF) Fear Up Mild: Moderately increasing the fear level in a detainee.

(U)
G. (S//NF) Reduced Fear: Reducing the fear level in a detainee.

(U)
H. (S//NF) Pride and Ego Up: Boosting the ego of a detainee.

Classified By:   Secretary of Defense
Reason:          1.5(a)
Declassify On:   2 April 2013

NOT RELEASABLE TO
FOREIGN NATIONALS



Tab A

I. (U) (S//NF) Pride and Ego Down: Attacking or insulting the ego of a detainee, not beyond the limits that would apply to a POW. [Caution: Article 17 of Geneva III provides, "Prisoners of war who refuse to answer may not be threatened, insulted, or exposed to any unpleasant or disadvantageous treatment of any kind." Other nations that believe that detainees are entitled to POW protections may consider this technique inconsistent with the provisions of Geneva. Although the provisions of Geneva are not applicable to the interrogation of unlawful combatants, consideration should be given to these views prior to application of the technique.]

J. (U) (S//NF) Futility: Invoking the feeling of futility of a detainee.

K. (U) (S//NF) We Know All: Convincing the detainee that the interrogator knows the answer to questions he asks the detainee.

L. (U) (S//NF) Establish Your Identity: Convincing the detainee that the interrogator has mistaken the detainee for someone else.

M. (U) (S//NF) Repetition Approach: Continuously repeating the same question to the detainee within interrogation periods of normal duration.

N. (U) (S//NF) File and Dossier: Convincing detainee that the interrogator has a damning and inaccurate file, which must be fixed.

O. (U) (S//NF) Mutt and Jeff: A team consisting of a friendly and harsh interrogator. The harsh interrogator might employ the Pride and Ego Down technique. [Caution: Other nations that believe that POW protections apply to detainees may view this technique as inconsistent with Geneva III, Article 13 which provides that POWs must be protected against acts of intimidation. Although the provisions of Geneva are not applicable to the interrogation of unlawful combatants, consideration should be given to these views prior to application of the technique.]

P. (U) (S//NF) Rapid Fire: Questioning in rapid succession without allowing detainee to answer.

Q. (U) (S//NF) Silence: Staring at the detainee to encourage discomfort.

R. (U) (S//NF) Change of Scenery Up: Removing the detainee from the standard interrogation setting (generally to a location more pleasant, but no worse).

S. (U) (S//NF) Change of Scenery Down: Removing the detainee from the standard interrogation setting and placing him in a setting that may be less comfortable; would not constitute a substantial change in environmental quality.

T. (U) (S//NF) Dietary Manipulation: Changing the diet of a detainee; no intended deprivation of food or water; no adverse medical or cultural effect and without intent to deprive subject of food or water, e.g., hot rations to MREs.



UNCLASSIFIED

U. (S//NF) (U) Environmental Manipulation: Altering the environment to create moderate discomfort (e.g., adjusting temperature or introducing an unpleasant smell). Conditions would not be such that they would injure the detainee. Detainee would be accompanied by interrogator at all times. [Caution: Based on court cases in other countries, some nations may view application of this technique in certain circumstances to be inhumane. Consideration of these views should be given prior to use of this technique.]

V. (S//NF) (U) Sleep Adjustment: Adjusting the sleeping times of the detainee (e.g., reversing sleep cycles from night to day.) This technique is NOT sleep deprivation.

W. (S//NF) (U) False Flag: Convincing the detainee that individuals from a country other than the United States are interrogating him.

X. (S//NF) (U) Isolation: Isolating the detainee from other detainees while still complying with basic standards of treatment. [Caution: The use of isolation as an interrogation technique requires detailed implementation instructions, including specific guidelines regarding the length of isolation, medical and psychological review, and approval for extensions of the length of isolation by the appropriate level in the chain of command. This technique is not known to have been generally used for interrogation purposes for longer than 30 days. Those nations that believe detainees are subject to POW protections may view use of this technique as inconsistent with the requirements of Geneva III, Article 13 which provides that POWs must be protected against acts of intimidation; Article 14 which provides that POWs are entitled to respect for their person; Article 34 which prohibits coercion and Article 126 which ensures access and basic standards of treatment. Although the provisions of Geneva are not applicable to the interrogation of unlawful combatants, consideration should be given to these views prior to application of the technique.]



UNCLASSIFIED

Tab A



# TAB B

## GENERAL SAFEGUARDS

(U)
(S//NF) Application of these interrogation techniques is subject to the following general safeguards: (i) limited to use only at strategic interrogation facilities; (ii) there is a good basis to believe that the detainee possesses critical intelligence; (iii) the detainee is medically and operationally evaluated as suitable (considering all techniques to be used in combination); (iv) interrogators are specifically trained for the technique(s); (v) a specific interrogation plan (including reasonable safeguards, limits on duration, intervals between applications, termination criteria and the presence or availability of qualified medical personnel) has been developed; (vi) there is appropriate supervision; and, (vii) there is appropriate specified senior approval for use with any specific detainee (after considering the foregoing and receiving legal advice).

(U) The purpose of all interviews and interrogations is to get the most information from a detainee with the least intrusive method, always applied in a humane and lawful manner with sufficient oversight by trained investigators or interrogators. Operating instructions must be developed based on command policies to insure uniform, careful, and safe application of any interrogations of detainees.

(U)
(S//NF) Interrogations must always be planned, deliberate actions that take into account numerous, often interlocking factors such as a detainee's current and past performance in both detention and interrogation, a detainee's emotional and physical strengths and weaknesses, an assessment of possible approaches that may work on a certain detainee in an effort to gain the trust of the detainee, strengths and weaknesses of interrogators, and augmentation by other personnel for a certain detainee based on other factors.

(U)
(S//NF) Interrogation approaches are designed to manipulate the detainee's emotions and weaknesses to gain his willing cooperation. Interrogation operations are never conducted in a vacuum; they are conducted in close cooperation with the units detaining the individuals. The policies established by the detaining units that pertain to searching, silencing, and segregating also play a role in the interrogation of a detainee. Detainee interrogation involves developing a plan tailored to an individual and approved by senior interrogators. Strict adherence to policies/standard operating procedures governing the administration of interrogation techniques and oversight is essential.

Classified By:   Secretary of Defense
Reason:          1.5(a)
Declassify On:   2 April 2013





(U) ~~(S//NF)~~ It is important that interrogators be provided reasonable latitude to vary techniques depending on the detainee's culture, strengths, weaknesses, environment, extent of training in resistance techniques as well as the urgency of obtaining information that the detainee is known to have.

(U) ~~(S//NF)~~ While techniques are considered individually within this analysis, it must be understood that in practice, techniques are usually used in combination; the cumulative effect of all techniques to be employed must be considered before any decisions are made regarding approval for particular situations. The title of a particular technique is not always fully descriptive of a particular technique. With respect to the employment of any techniques involving physical contact, stress or that could produce physical pain or harm, a detailed explanation of that technique must be provided to the decision authority prior to any decision.



Tab B

Time permitting, each interrogator should unobtrusively observe the source to personally confirm his identity and to check his personal appearance and behavior.

After the interrogator has collected all information available about his assigned source, he analyzes it. He looks for indicators of psychological or physical weakness that might make the source susceptible to one or more approaches, which facilitates his approach strategy. He also uses the information he collected to identify the type and level of knowledge possessed by the source pertinent to the element's collection mission.

The interrogator uses his estimate of the type and extent of knowledge possessed by the source to modify the basic topical sequence of questioning. He selects only those topics in which he believes the source has pertinent knowledge. In this way, the interrogator refines his element's overall objective into a set of specific interrogation subjects.

The major topics that can be covered in an interrogation are shown below in their normal sequence. However, the interrogator is free to modify this sequence as necessary.

- Missions.
- Composition.
- Weapons, equipment, strength.
- Dispositions.
- Tactics.
- Training.
- Combat effectiveness.
- Logistics.
- Electronic technical data.
- Miscellaneous.

As a result of the planning and preparation phase, the interrogator develops a plan for conducting his assigned interrogation. He must review this plan with the senior interrogator, when possible. Whether written or oral, the interrogation plan must contain at least the following items:

- Interrogation objective.
- EPW's or detainee's identity, to include visual observation of the EPW or detainee by the interrogator.
- Interrogation time and place.
- Primary and alternate approaches.
- Questioning techniques to be used or why the interrogator selected only specific topics from the basic questioning sequence.
- Means of recording and reporting information obtained.

The senior interrogator reviews each plan and makes any changes he feels necessary based on the commander's PIR and IR. After the plan is approved, the holding compound is notified when to bring the source to the interrogation site. The interrogator collects all available interrogation aids needed (maps, charts, writing tools, and reference materials) and proceeds to the interrogation site.

## APPROACH PHASE

The approach phase begins with initial contact between the EPW or detainee and interrogator. Extreme care is required since the success of the interrogation hinges, to a large degree, on the early development of the EPW's or detainee's willingness to communicate. The interrogator's objective during this phase is to establish EPW or detainee rapport, and to gain his willing cooperation so he will correctly answer pertinent questions to follow. The interrogator—

- Adopts an appropriate attitude based on EPW or detainee appraisal.
- Prepares for an attitude change, if necessary.
- Begins to use an approach technique.

The amount of time spent on this phase will mostly depend on the probable quantity and value of information the EPW or detainee possesses, the availability of other EPW or detainee with knowledge on the same topics, and available time. At the initial contact, a businesslike relationship should be maintained. As the EPW or detainee assumes a cooperative attitude, a more relaxed atmosphere may be advantageous. The interrogator must carefully determine which of the various approach techniques to employ.

Regardless of the type of EPW or detainee and his outward personality, he does possess weaknesses which,

3-10

if recognized by the interrogator, can be exploited. These weaknesses are manifested in personality traits such as speech, mannerisms, facial expressions, physical movements, excessive perspiration, and other overt indications that vary from EPW or detainee.

From a psychological standpoint, the interrogator must be cognizant of the following behaviors. People tend to—

- Talk, especially after harrowing experiences.
- Show deference when confronted by superior authority.
- Rationalize acts about which they feel guilty.
- Fail to apply or remember lessons they may have been taught regarding security if confronted with a disorganized or strange situation.
- Cooperate with those who have control over them.
- Attach less importance to a topic about which the interrogator demonstrates identical or related experience or knowledge.
- Appreciate flattery and exoneration from guilt.
- Resent having someone or something they respect belittled, especially by someone they dislike.
- Respond to kindness and understanding during trying circumstances.
- Cooperate readily when given material rewards such as extra food or luxury items for their personal comfort.

Interrogators do not "run" an approach by following a pattern or routine. Each interrogation is different, but all interrogation approaches have the following in common. They—

- Establish and maintain control over the source and interrogation.
- Establish and maintain rapport between the interrogator and source.
- Manipulate the source's emotions and weaknesses to gain his willing cooperation.

The successful application of approach techniques eventually induces the source to willingly provide accurate intelligence information to the interrogator. The term "willingly" refers to the source's answering the interrogator's questions, not necessarily his cooperation.

The source may or may not be aware he is providing the interrogator with information about enemy forces. Some approaches may be complete when the source begins to answer questions. Others may have to be constantly maintained or reinforced throughout the interrogation.

The techniques used in an approach can best be defined as a series of events, not just verbal conversation between the interrogator and the source. The exploitation of the source's emotion can be harsh or gentle in application. Some useful techniques used by interrogators are—

- Hand and body movements.
- Actual physical contact such as a hand on the shoulder for reassurance.
- Silence.

## RAPPORT POSTURES

There are two types of rapport postures determined during planning and preparation: stern and sympathetic.

In the stern posture, the interrogator keeps the EPW or detainee at attention. The aim is to make the EPW or detainee keenly aware of his helpless and inferior status. Interrogators use this posture with officers, NCOs, and security-conscious enlisted men.

In the sympathetic posture, the interrogator addresses the EPW or detainee in a friendly fashion, striving to put him at ease. This posture is commonly used in interrogating older or younger EPWs. EPWs may be frightened and confused. One variation of this posture is when the interrogator asks about the EPW's family. Few EPWs will hesitate to discuss their family.

Frightened persons, regardless of rank, will invariably talk in order to relieve tension once they hear a sympathetic voice in their own tongue. To put the EPW at ease, the interrogator may allow the EPW to sit down, offer a cigarette, ask whether or not he needs medical care, and otherwise show interest in his case.

There are many variations of these basic postures. Regardless of the one used, the interrogator must present a military appearance and show character and energy. The interrogator must control his temper at all times, except when a display is planned. The inter-

rogator must not waste time in pointless discussions or make promises he cannot keep; for example, the interrogator's granting political asylum.

When making promises in an effort to establish rapport, great care must be taken to prevent implying that rights guaranteed the EPW under international and US law will be withheld if the EPW refuses to cooperate.

Under no circumstances will the interrogator betray surprise at anything the EPW might say. Many EPWs will talk freely if they feel the information they are discussing is already known to the interrogator. If the interrogator acts surprised, the EPW may stop talking immediately.

The interrogator encourages any behavior that deepens rapport and increases the flow of communication. At the same time, the interrogator must discourage any behavior that has the opposite effect.

The interrogator must always be in control of the interrogation. If the EPW or detainee challenges this control, the interrogator must act quickly and firmly. Everything the interrogator says and does must be within the limits of the GPW, Article 17.

### DEVELOPING RAPPORT

Rapport must be maintained throughout the interrogation, not only in the approach phase. If the interrogator has established good rapport initially and then abandons the effort, the source would rightfully assume the interrogator cares less and less about him as the information is being obtained. If this occurs, rapport is lost and the source may cease answering questions. Rapport may be developed by—

- Asking about the circumstances of capture. By doing this, the interrogator can gain insight into the prisoner's actual state of mind and, more importantly, he can ascertain his possible breaking points.

- Asking background questions. After asking about the source's circumstances of capture, apparent interest can be built by asking about the source's family, civilian life, friends, likes, and dislikes. This is to develop rapport, but nonpertinent questions may open new avenues for the approach and help determine whether tentative approaches chosen in the planning and preparation phase will be effective. If these questions show that the tentative approaches chosen will not be effective, a flexible interrogator can shift the approach direction without the source being aware of the change.

Depending on the situation, and requests the source may have made, the interrogator also can use the following to develop rapport.

- Offer realistic incentives, such as—
  - Immediate comfort items (coffee, cigarettes).
  - Short-term (a meal, shower, send a letter home).
  - Long-term (repatriation, political asylum).
- Feign experience similar to those of the source.
- Show concern for the source through the use of voice vitality and body language.
- Help the source to rationalize his guilt.
- Show kindness and understanding toward the source's predicament.
- Exonerate the source from guilt.
- Flatter the source.

After having established control and rapport, the interrogator continually assesses the source to see if the approaches—and later the questioning techniques—chosen in the planning and preparation phase will indeed work.

Approaches chosen in planning and preparation are tentative and based on the sometimes scanty information available from documents, guards, and personal observation. This may lead the interrogator to select approaches which may be totally incorrect for obtaining this source's willing cooperation. Thus, careful assessment of the source is critical to avoid wasting valuable time in the approach phase.

The questions can be mixed or separate. If, for example, the interrogator has tentatively chosen a "love of comrades" approach, he should ask the source questions like "How did you get along with your fellow squad members?" If the source answers they were all very close and worked well as a team, the interrogator can use this approach and be reasonably sure of its success.

However, if the source answers, "They all hated my guts and I couldn't stand any of them," the interrogator should abandon that approach and ask some quick, nonpertinent questions to give himself time to work out a new approach.

### Smooth Transitions

The interrogator must guide the conversation smoothly and logically, especially if he needs to move from one approach technique to another. "Poking and hoping" in the approach may alert the prisoner to ploys and will make the job more difficult.

Tie-ins to another approach can be made logically and smoothly by using transitional phrases. Logical tie-ins can be made by including simple sentences which connect the previously used approach with the basis for the next one.

Transitions can also be smoothly covered by leaving the unsuccessful approach and going back to nonpertinent questions. By using nonpertinent conversation, the interrogator can move the conversation in the desired direction and, as previously stated, sometimes can obtain leads and hints about the source's stresses or weaknesses or other approach strategies that may be more successful.

### Sincere and Convincing

If an interrogator is using argument and reason to get the source to cooperate, he must be convincing and appear sincere. All inferences of promises, situations, and arguments, or other invented material must be believable. What a source may or may not believe depends on the interrogator's knowledge, experience, and training. A good source assessment is the basis for the approach and vital to the success of the interrogation effort.

### Recognize the Breaking Point

Every source has a breaking point, but an interrogator never knows what it is until it has been reached. There are, however, some good indicators the source is near his breaking point or has already reached it. For example, if during the approach, the source leans forward with his facial expression indicating an interest in the proposal or is more hesitant in his argument, he is probably nearing the breaking point. The interrogator must be alert to recognize these signs.

Once the interrogator determines the source is breaking, he should interject a question pertinent to the objective of the interrogation. If the source answers it, the interrogator can move into the questioning phase. If the source does not answer or balks at answering it, the interrogator must realize the source was not as close to the breaking point as thought. In this case, the interrogator must continue with his approach, or switch to an alternate approach or questioning technique and continue to work until he feels the source is near breaking.

The interrogator can tell if the source has broken only by interjecting pertinent questions. This process must be followed until the EPW or detainee begins to answer pertinent questions. It is possible the EPW or detainee may cooperate for a while and then balk at answering further questions. If this occurs, the interrogator can reinforce the approaches that initially gained the source's cooperation or move into a different approach before returning to the questioning phase.

At this point, it is important to note the amount of time spent with a particular source depends on several factors:

- The battlefield situation.
- Expediency which the supported commander's PIR and IR requirements need to be answered.
- Source's willingness to talk.

The number of approaches used is limited only by the interrogator's skill. Almost any ruse or deception is usable as long as the provisions of the GPW, as outlined in Figure 1-4, are not violated.

An interrogator must not pass himself off as a medic, chaplain, or as a member of the Red Cross (Red Crescent or Red Lion). To every approach technique, there are literally hundreds of possible variations, each of which can be developed for a specific situation or source. The variations are limited only by the interrogator's personality, experience, ingenuity, and imagination.

### APPROACH COMBINATIONS

With the exception of the direct approach, no other approach is effective by itself. Interrogators use different approach techniques or combine them into a cohesive, logical technique. Smooth transitions, sincerity, logic, and conviction almost always make a strategy work. The lack of will undoubtedly dooms it to failure. Some examples of combinations are—

- Direct—futility—incentive.
- Direct—futility—love of comrades.
- Direct—fear-up (mild)—incentive.

The number of combinations are unlimited. Interrogators must carefully choose the approach strategy in the planning and preparation phase and listen carefully

to what the source is saying (verbally or nonverbally) for leads the strategy chosen will not work. When this occurs, the interrogator must adapt to approaches he believes will work in gaining the source's cooperation.

The approach techniques are not new nor are all the possible or acceptable techniques discussed below. Everything the interrogator says and does must be in concert with the GWS, GPW, GC, and UCMJ. The approaches which have proven effective are—

- Direct.
- Incentive.
- Emotional.
- Increased fear-up.
- Pride and ego.

### Direct Approach

The interrogator asks questions directly related to information sought, making no effort to conceal the interrogation's purpose. The direct approach, always the first to be attempted, is used on EPWs or detainees who the interrogator believes will cooperate.

This may occur when interrogating an EPW or detainee who has proven cooperative during initial screening or first interrogation. It may also be used on those with little or no security training. The direct approach works best on lower enlisted personnel, as they have little or no resistance training and have had minimal security training.

The direct approach is simple to use, and it is possible to obtain the maximum amount of information in the minimum amount of time. It is frequently employed at lower echelons when the tactical situation precludes selecting other techniques, and where the EPW's or detainee's mental state is one of confusion or extreme shock. Figure C-3 contains sample questions used in direct questioning.

The direct approach is the most effective. Statistics show in World War II, it was 90 percent effective. In Vietnam and OPERATIONS URGENT FURY, JUST CAUSE, and DESERT STORM, it was 95 percent effective.

### Incentive Approach

The incentive approach is based on the application of inferred discomfort upon an EPW or detainee who lacks willpower. The EPW or detainee may display fondness for certain luxury items such as candy, fruit, or cigarettes. This fondness provides the interrogator with a positive means of rewarding the EPW or detainee for cooperation and truthfulness, as he may give or withhold such comfort items at his discretion. Caution must be used when employing this technique because—

- Any pressure applied in this manner must not amount to a denial of basic human needs under any circumstances. [NOTE: Interrogators may not withhold a source's rights under the GPW, but they can withhold a source's privileges.] Granting incentives must not infringe on these rights, but they can be things to which the source is already entitled. This can be effective only if the source is unaware of his rights or privileges.

- The EPW or detainee might be tempted to provide false or inaccurate information to gain the desired luxury item or to stop the interrogation.

The GPW, Article 41, requires the posting of the convention contents in the EPW's own language. This is an MP responsibility.

Incentives must seem to be logical and possible. An interrogator must not promise anything that cannot be delivered. Interrogators do not make promises, but usually infer them while sidestepping guarantees.

For example, if an interrogator made a promise he could not keep and he or another interrogator had to talk with the source again, the source would not have any trust and would probably not cooperate. Instead of clearly promising a certain thing, such as political asylum, an interrogator will offer to do what he can to help achieve the source's desired goal; as long as the source cooperates.

As with developing rapport, the incentive approach can be broken down into two incentives. The determination rests on when the source expects to receive the incentive offered.

- Short term—received immediately; for example, letter home, seeing wounded buddies.

- Long term—received within a period of time; for example, political asylum.

### Emotional Approach

Through EPW or detainee observation, the interrogator can often identify dominant emotions which motivate. The motivating emotion may be greed, love, hate, revenge, or others. The interrogator employs ver-

bal, and emotional ruses in applying pressure to the EPW's or detainee's dominant emotions.

One major advantage of this technique is it is versatile and allows the interrogator to use the same basic situation positively and negatively.

For example, this technique can be used on the EPW who has a great love for his unit and fellow soldiers. The interrogator may take advantage of this by telling the EPW that by providing pertinent information, he may shorten the war or battle in progress and save many of his comrades' lives, but his refusal to talk may cause their deaths. This places the burden on the EPW or detainee and may motivate him to seek relief through cooperation.

Conversely, this technique can also be used on the EPW or detainee who hates his unit because it withdrew and left him to be captured, or who feels he was unfairly treated in his unit. In such cases, the interrogator can point out that if the EPW cooperates and specifies the unit's location, the unit can be destroyed, thus giving the EPW an opportunity for revenge. The interrogator proceeds with this method in a very formal manner.

This approach is likely to be effective with the immature and timid EPW.

Emotional Love Approach. For the emotional love approach to be successful, the interrogator must focus on the anxiety felt by the source about the circumstances in which he finds himself. The interrogator must direct the love the source feels toward the appropriate object: family, homeland, or comrades. If the interrogator can show the source what the source himself can do to alter or improve his situation, the approach has a chance of success.

This approach usually involves some incentive such as communication with the source's family or a quicker end to the war to save his comrades' lives. A good interrogator will usually orchestrate some futility with an emotional love approach to hasten the source's reaching the breaking point.

Sincerity and conviction are critical in a successful attempt at an emotional love approach as the interrogator must show genuine concern for the source, and for the object at which the interrogator is directing the source's emotion.

If the interrogator ascertains the source has great love for his unit and fellow soldiers, the interrogator can ef-

fectively exploit the situation. This places a burden on the source and may motivate him to seek relief through cooperation with the interrogator.

Emotional Hate Approach. The emotional hate approach focuses on any genuine hate, or possibly a desire for revenge, the source may feel. The interrogator must ascertain exactly what it is the source may hate so the emotion can be exploited to override the source's rational side. The source may have negative feelings about his country's regime, immediate superiors, officers in general, or fellow soldiers.

This approach is usually most effective on members of racial or religious minorities who have suffered discrimination in military and civilian life. If a source feels he has been treated unfairly in his unit, the interrogator can point out that, if the source cooperates and divulges the location of that unit, the unit can be destroyed, thus affording the source revenge.

By using a conspiratorial tone of voice, the interrogator can enhance the value of this technique. Phrases, such as "You owe them no loyalty for the way they treated you," when used appropriately, can expedite the success of this technique.

Do not immediately begin to berate a certain facet of the source's background or life until your assessment indicates the source feels a negative emotion toward it.

The emotional hate approach can be used more effectively by drawing out the source's negative emotions with questions that elicit a thought-provoking response. For example, "Why do you think they allowed you to be captured?" or "Why do you think they left you to die?" Do not berate the source's forces or homeland unless certain negative emotions surface.

Many sources may have great love for their country, but may hate the regime in control. The emotional hate approach is most effective with the immature or timid source who may have no opportunity up to this point for revenge, or never had the courage to voice his feelings.

### Fear-Up Approach

The fear-up approach is the exploitation of a source's preexisting fear during the period of capture and interrogation. The approach works best with young, inexperienced sources, or sources who exhibit a greater than normal amount of fear or nervousness. A source's fear may be justified or unjustified. For example, a source who has committed a war crime may justifiably fear

prosecution and punishment. By contrast, a source who has been indoctrinated by enemy propaganda may unjustifiably fear that he will suffer torture or death in our hands if captured.

This approach has the greatest potential to violate the law of war. Great care must be taken to avoid threatening or coercing a source which is in violation of the GPW, Article 17.

It is critical the interrogator distinguish what the source fears in order to exploit that fear. The way in which the interrogator exploits the source's fear depends on whether the source's fear is justified or unjustified.

Fear-Up (Harsh). In this approach, the interrogator behaves in an overpowering manner with a loud and threatening voice. The interrogator may even feel the need to throw objects across the room to heighten the source's implanted feelings of fear. Great care must be taken when doing this so any actions would not violate the prohibition on coercion and threats contained in the GPW, Article 17.

This technique is to convince the source he does indeed have something to fear; that he has no option but to cooperate. A good interrogator will implant in the source's mind that the interrogator himself is not the object to be feared, but is a possible way out of the trap.

Use the confirmation of fear only on sources whose fear is justified. During this approach, confirm to the source that he does indeed have a legitimate fear. Then convince the source that you are the source's best or only hope in avoiding or mitigating the object of his fear, such as punishment for his crimes.

You must take great care to avoid promising actions that are not in your power to grant. For example, if the source has committed a war crime, inform the source that the crime has been reported to the appropriate authorities and that action is pending. Next inform the source that, if he cooperates and tells the truth, you will report that he cooperated and told the truth to the appropriate authorities. You may add that you will also report his lack of cooperation. You may not promise that the charges against him will be dismissed because you have no authority to dismiss the charges.

Fear-Up (Mild). This approach is better suited to the strong, confident type of interrogator; there is generally no need to raise the voice or resort to heavy-handed, table-banging.

For example, capture may be a result of coincidence—the soldier was caught on the wrong side of the border before hostilities actually commenced (he was armed, he could be a terrorist)—or as a result of his actions (he surrendered contrary to his military oath and is now a traitor to his country, and his forces will take care of the disciplinary action).

The fear-up (mild) approach must be credible. It usually involves some logical incentive.

In most cases, a loud voice is not necessary. The actual fear is increased by helping the source realize the unpleasant consequences the facts may cause and by presenting an alternative, which, of course, can be brought about by answering some simple questions.

The fear-up (harsh) approach is usually a dead end, and a wise interrogator may want to keep it in reserve as a trump card. After working to increase the source's fear, it would be difficult to convince him everything will be all right if the approach is not successful.

### Fear-Down Approach

This technique is nothing more than calming the source and convincing him he will be properly and humanely treated, or telling him the war for him is mercifully over and he need not go into combat again. When used with a soothing, calm tone of voice, this often creates rapport and usually nothing else is needed to get the source to cooperate.

While calming the source, it is a good idea to stay initially with nonpertinent conversation and to avoid the subject which has caused the source's fear. This works quickly in developing rapport and communication, as the source will readily respond to kindness.

When using this approach, it is important the interrogator relate to the source at his perspective level and not expect the source to come up to the interrogator's level.

If the EPW or detainee is so frightened he has withdrawn into a shell or regressed to a less threatening state of mind, the interrogator must break through to him. The interrogator can do this by putting himself on the same physical level as the source; this may require some physical contact. As the source relaxes and begins to respond to kindness, the interrogator can begin asking pertinent questions.

This approach technique may backfire if allowed to go too far. After convincing the source he has nothing

16

fear, he may cease to be afraid and may feel secure enough to resist the interrogator's pertinent question. If this occurs, reverting to a harsher approach technique usually will bring the desired result quickly.

The fear-down approach works best if the source's fear is unjustified. During this approach, take specific actions to reduce the source's unjustified fear. For example, if the source believes that he will be abused while in your custody, make extra efforts to ensure that the source is well cared for, fed, and appropriately treated.

Once the source is convinced that he has no legitimate reason to fear you, he will be more inclined to cooperate. The interrogator is under no duty to reduce a source's unjustified fear. The only prohibition is that the interrogator may not say or do anything that directly or indirectly communicates to the source that he will be harmed unless he provides the requested information.

These applications of the fear approach may be combined to achieve the desired effect. For example, if a source has justified and unjustified fears, you may initially reduce the source's unfounded fears, then confirm his legitimate fears. Again, the source should be convinced the interrogator is his best or only hope in avoiding or mitigating the object of his fear.

### Pride and Ego Approach

The strategy of this approach is to trick the source into revealing desired information by goading or flattering him. It is effective with sources who have displayed weakness or feelings of inferiority. A real or imaginary deficiency voiced about the source, loyalty to his organization, or any other feature can provide a basis for this technique.

The interrogator accuses the source of weakness or implies he is unable to do a certain thing. This type of source is also prone to excuses and reasons why he did or did not do a certain thing, often shifting the blame to others. An example is opening the interrogation with the question, "Why did you surrender so easily when you could have escaped by crossing the nearby ford in the river?"

The source is likely to provide a basis for further questions or to reveal significant intelligence information if he attempts to explain his surrender in order to vindicate himself. He may give an answer such as, "No one could cross the ford because it is mined."

This technique can also be employed in another manner--by flattering the source into admitting certain information in order to gain credit. For example, while interrogating a suspected saboteur, the interrogator states: "This was a smooth operation. I have seen many previous attempts fail. I bet you planned this. Who else but a clever person like you would have planned it? When did you first decide to do the job?"

This technique is especially effective with the source who has been looked down upon by his superiors. The source has the opportunity to show someone he is intelligent.

A problem with the pride and ego approach is it relies on trickery. The source will eventually realize he has been tricked and may refuse to cooperate further. If this occurs, the interrogator can easily move into a fear-up approach and convince the source the questions he has already answered have committed him, and it would be useless to resist further.

The interrogator can mention it will be reported to the source's forces that he has cooperated fully with the enemy, will be considered a traitor, and has much to fear if he is returned to his forces.

This may even offer the interrogator the option to go into a love-of-family approach where the source must protect his family by preventing his forces from learning of his duplicity or collaboration. Telling the source you will not report that he talked or that he was a severe discipline problem is an incentive that may enhance the effectiveness of the approach.

<u>Pride and Ego-Up Approach.</u> This approach is most effective on sources with little or no intelligence, or on those who have been looked down upon for a long time. It is very effective on low-ranking enlisted personnel and junior grade officers, as it allows the source to finally show someone he does indeed have some "brains."

The source is constantly flattered into providing certain information in order to gain credit. The interrogator must take care to use a flattering somewhat-in-awe tone of voice, and speak highly of the source throughout this approach. This quickly produces positive feelings on the source's part, as he has probably been looking for this type of recognition all of his life.

The interrogator may blow things out of proportion using items from the source's background and making them seem noteworthy or important. As everyone is eager to hear praise, the source will eventually reveal

pertinent information to solicit more laudatory comments from the interrogator.

Effective targets for a successful pride and ego-up approach are usually the socially accepted reasons for flattery, such as appearance and good military bearing. The interrogator should closely watch the source's demeanor for indications the approach is working. Some indications to look for are—

- Raising of the head.
- A look of pride in the eyes.
- Swelling of the chest.
- Stiffening of the back.

<u>Pride and Ego-Down Approach.</u> This approach is based on attacking the source's sense of personal worth. Any source who shows any real or imagined inferiority or weakness about himself, loyalty to his organization, or captured under embarrassing circumstances, can be easily broken with this approach technique.

The objective is for the interrogator to pounce on the source's sense of pride by attacking his loyalty, intelligence, abilities, leadership qualities, slovenly appearance, or any other perceived weakness. This will usually goad the source into becoming defensive, and he will try to convince the interrogator he is wrong. In his attempt to redeem his pride, the source will usually involuntarily provide pertinent information in attempting to vindicate himself.

A source susceptible to this approach is also prone to make excuses and give reasons why he did or did not do a certain thing, often shifting the blame to others. If the interrogator uses a sarcastic, caustic tone of voice with appropriate expressions of distaste or disgust, the source will readily believe him. Possible targets for the pride and ego-down approach are the source's—

- Loyalty.
- Technical competence.
- Leadership abilities.
- Soldierly qualities.
- Appearance.

The pride and ego-down approach is also a dead end in that, if unsuccessful, it is difficult for the interrogator to recover and move to another approach and reestablish a different type of rapport without losing all credibility.

## Futility

In this approach, the interrogator convinces the source that resistance to questioning is futile. When employing this technique, the interrogator must have factual information. These facts are presented by the interrogator in a persuasive, logical manner. He should be aware of and able to exploit the source's psychological and moral weaknesses, as well as weaknesses inherent in his society.

The futility approach is effective when the interrogator can play on doubts that already exist in the source's mind. There are different variations of the futility approach. For example:

- Futility of the personal situation—"You are not finished here until you answer the questions."
- Futility in that "everyone talks sooner or later."
- Futility of the battlefield situation.
- Futility in the sense if the source does not mind talking about history, why should he mind talking about his missions, they are also history.

If the source's unit had run out of supplies (ammunition, food, or fuel), it would be somewhat easy to convince him all of his forces are having the same logistical problems. A soldier who has been ambushed may have doubts as to how he was attacked so suddenly. The interrogator should be able to talk him into believing that the interrogator's forces knew of the EPW's unit location, as well as many more units.

The interrogator might describe the source's frightening recollections of seeing death on the battlefield as an everyday occurrence for his forces. Factual or seemingly factual information must be presented in a persuasive, logical manner, and in a matter-of-fact tone of voice.

Making the situation appear hopeless allows the source to rationalize his actions, especially if that action is cooperating with the interrogator. When employing this technique, the interrogator must not only have factual information but also be aware of and exploit the source's psychological, moral, and sociological weaknesses.

Another way of using the futility approach is to blow things out of proportion. If the source's unit was low on, or had exhausted, all food supplies, he can be easily

...led to believe all of his forces had run out of food. If the source is hinging on cooperating, it may aid the interrogation effort if he is told all the other source's have cooperated.

The futility approach must be orchestrated with other approach techniques (for example, love of comrades). A source who may want to help save his comrades' lives may be convinced the battlefield situation is hopeless and they will die without his assistance.

The futility approach is used to paint a bleak picture for the prisoner, but it is not effective in and of itself in gaining the source's cooperation.

### We Know All

This approach may be employed in conjunction with the "file and dossier" technique (discussed below) or by itself. If used alone, the interrogator must first become thoroughly familiar with available data concerning the source. To begin the interrogation, the interrogator asks questions based on this known data. When the source hesitates, refuses to answer, or provides an incorrect or incomplete reply, the interrogator provides the detailed answer.

When the source begins to give accurate and complete information, the interrogator interjects questions designed to gain the needed information. Questions to which answers are already known are also asked to test the source's truthfulness and to maintain the deception that the information is already known. By repeating this procedure, the interrogator convinces the source that resistance is useless as everything is already known.

After gaining the source's cooperation, the interrogator still tests the extent of cooperation by periodically using questions to which he has the answers; this is very necessary. If the interrogator does not challenge the source when he is lying, the source will know everything is not known, and he has been tricked. He may then provide incorrect answers to the interrogator's questions.

There are some inherent problems with the use of the "we know all" approach. The interrogator is required to prepare everything in detail, which is time consuming. He must commit much of the information to memory, as working from notes may show the limits of the information actually known.

### File and Dossier

The file and dossier approach is used when the interrogator prepares a dossier containing all available information obtained from documents concerning the source or his organization. Careful arrangement of the material within the file may give the illusion it contains more data than actually there. The file may be padded with extra paper, if necessary. Index tabs with titles such as education, employment, criminal record, military service, and others are particularly effective.

The interrogator confronts the source with the dossiers at the beginning of the interrogation and explains intelligence has provided a complete record of every significant happening in the source's life; therefore, it would be useless to resist. The interrogator may read a few selected bits of known data to further impress the source.

If the technique is successful, the source will be intimidated by the size of the file, conclude everything is known, and resign himself to complete cooperation. The success of this technique is largely dependent on the naivete of the source, volume of data on the subject, and skill of the interrogator in convincing the source.

### Establish Your Identity

This approach is especially adaptable to interrogation. The interrogator insists the source has been correctly identified as an infamous individual wanted by higher authorities on serious charges, and he is not the person he purports to be. In an effort to clear himself of this allegation, the source makes a genuine and detailed effort to establish or substantiate his true identity. In so doing, he may provide the interrogator with information and leads for further development.

The "establish your identity" approach was effective in Viet Nam with the Viet Cong and in OPERATIONS JUST CAUSE and DESERT STORM.

This approach can be used at tactical echelons. The interrogator must be aware if it is used in conjunction with the file and dossier approach, as it may exceed the tactical interrogator's preparation resources.

The interrogator should initially refuse to believe the source and insist he is the criminal wanted by the ambiguous higher authorities. This will force the source to give even more detailed information about his unit in order to convince the interrogator he is who he says he is. This approach works well when combined with the "futility" or "we know all" approach.

### Repetition

This approach is used to induce cooperation from a hostile source. In one variation of this approach, the interrogator listens carefully to a source's answer to a question, and then repeats the question and answer several times. He does this with each succeeding question until the source becomes so thoroughly bored with the procedure he answers questions fully and candidly to satisfy the interrogator and gain relief from the monotony of this method.

The repetition technique must be judiciously used, as it will generally be ineffective when employed against introverted sources or those having great self-control. In fact, it may provide an opportunity for a source to regain his composure and delay the interrogation. In this approach, the use of more than one interrogator or tape recorder has proven effective.

### Rapid Fire

This approach involves a psychological ploy based on the principles that—

- Everyone likes to be heard when he speaks.
- It is confusing to be interrupted in mid-sentence with an unrelated question.

This approach may be used by one or simultaneously two or more interrogators in questioning the same source. In employing this technique, the interrogator asks a series of questions in such a manner that the source does not have time to answer a question completely before the next one is asked.

This confuses the source and he will tend to contradict himself, as he has little time to formulate his answers. The interrogator then confronts the source with the inconsistencies causing further contradictions.

In many instances, the source will begin to talk freely in an attempt to explain himself and deny the interrogator's claims of inconsistencies. In this attempt, the source is likely to reveal more than he intends, thus creating additional leads for further exploitation. This approach may be orchestrated with the pride and ego-up or fear-up approaches.

Besides extensive preparation, this approach requires an experienced and competent interrogator, with comprehensive case knowledge and fluency in the source's language.

### Silent

This approach may be successful when used against the nervous or confident source. When employing this technique, the interrogator says nothing to the source, but looks him squarely in the eye, preferably with a slight smile on his face. It is important not to look away from the source but force him to break eye contact first.

The source may become nervous, begin to shift in his chair, cross and recross his legs, and look away. He may ask questions, but the interrogator should not answer until he is ready to break the silence. The source may blurt out questions such as, "Come on now, what do you want with me?"

When the interrogator is ready to break silence, he may do so with some nonchalant questions such as, "You planned this operation for a long time, didn't you? Was it your idea?" The interrogator must be patient when using this technique. It may appear the technique is not succeeding, but usually will when given a reasonable chance.

### Change of Scene

The idea in using this approach is to get the source away from the atmosphere of an interrogation room or setting. If the interrogator confronts a source who is apprehensive or frightened because of the interrogation environment, this technique may prove effective.

In some circumstances, the interrogator may be able to invite the source to a different setting for coffee and pleasant conversation. During the conversation in this more relaxed environment, the interrogator steers the conversation to the topic of interest. Through this somewhat indirect method, he attempts to elicit the desired information. The source may never realize he is being interrogated.

Another example in this approach is an interrogator poses as a compound guard and engages the source in conversation, thus eliciting the desired information.

## QUESTIONING PHASE

The interrogation effort has two primary goals: To obtain information and to report it. Developing and using good questioning techniques enable the interrogator to obtain accurate and pertinent information by following a logical sequence.